**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **LARBALL PUBLISHING COMPANY, INC.** and **SANDY LINZER PRODUCTIONS, INC.,**<br><br>        Plaintiffs,<br><br>  v.<br><br>**DUA LIPA,**<br>**JONATHAN LYNDALE KIRK ("DA BABY")**<br>**D/B/A BABY JESUS PUBLISHING,**<br>**BOSCO KANTE,**<br>**CLARENCE COFFEE, JR.,**<br>**SARAH HUDSON,**<br>**STEPHEN KOZMENIUK,**<br>**EMI MUSIC PUBLISHING LTD.,**<br>**SONY MUSIC PUBLISHING (US) LLC,**<br>**UNIVERSAL MUSIC CORPORATION,** and<br>**WARNER MUSIC CORP.,**<br><br>        Defendants. | **CASE NO. 22-cv-1872**<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

**I.**
**PRELIMINARY STATEMENT**

1.    The 2020 song "Levitating" and its remix "Levitating (Da Baby)"[1] (collectively, the "infringing works") are substantially similar to and infringe upon Plaintiffs' copyrighted work.

2.    L. Russell Brown and Sandy Linzer are the composers of the disco song "Wiggle and Giggle All Night," recorded by Cory Daye in 1979. Brown and Linzer also obtained the copyright to the song "Don Diablo," recorded by Miguel Bosé in 1980, which had infringed upon "Wiggle and Giggle All Night." These two songs are collectively referred to herein as the "original works" or the "BL songs." The copyrights of the BL songs have been assigned to Brown's company Larball Publishing Company, Inc. and Linzer's company Sandy Linzer Productions, Inc.

---

[1] Also referred to as "Levitating (feat. Da Baby)."

3.      The infringing works have compositional elements substantially similar to those of the BL songs. Most significantly, the first and defining melody (the "signature melody") in the infringing works is a duplicate of the opening melody from the BL songs. The signature melody is repeated six times in "Levitating" and three times in "Levitating (Da Baby)."

4.      Professionals and laypersons alike have noticed the substantial similarities between the infringing works and the BL songs. Writing for Indiespot, journalist Diego Rubio Mendez commented that "Levitating" is reminiscent of "Wiggle and Giggle All Night" and "Don Diablo."[2] Record producer Jerred Jermaine Gazarian's video highlighting the similarities between "Levitating" and "Don Diablo" received over 363,000 likes on TikTok.[3]

5.      Lipa admitted that she deliberately emulated prior eras of music to create *Future Nostalgia*, the aptly named album on which "Levitating" appears. Melissa Giannini of Elle magazine reported that "Lipa's intention for *Future Nostalgia* was to create a sound that felt familiar and brand-new."[4] Capital FM reported that Lipa "said she took inspiration from the 70s, 80s, 90s, and 00s" to create a "modern retro theme."[5] In seeking nostalgic inspiration, Defendants copied Plaintiffs' creation without attribution.

6.      The objective analysis of musical composition and the subjective listening experience of music lovers demonstrate that Defendants have levitated away Plaintiffs' intellectual property. Plaintiffs bring suit so that Defendants cannot wiggle out of their willful infringement.

---

[2] *Available at* https://indiespot.es/2020/04/05/una-oda-al-studio-54-las-influencias-de-dua-lipa-en-future-nostalgia/ (last accessed Mar. 1, 2022).

[3] *Available at* https://tinyurl.com/yksaa7jh (last accessed Mar. 1, 2022).

[4] *Available at* https://www.elle.com/culture/celebrities/a31943034/dua-lipa-future-nostalgia-interview/ (last accessed Mar. 1, 2022).

[5] *Available at* https://www.capitalfm.com/artists/dua-lipa/album-review-future-nostalgia/ (last accessed Mar. 1, 2022).

## II.
## JURISDICTION AND VENUE

7.      This is an action for copyright infringement brought under the Copyright Act of 1976, 17 U.S.C. §§ 101 *et seq.* (the "Copyright Act"), a federal statute. Accordingly, this Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

8.      The Court has personal jurisdiction over Defendants because Defendants are residents of, and/or are licensed to transact and do transact business in, this District. Defendants purposefully promoted and broadcasted the infringing works in this District.

9.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b), (c), and 1400 because Defendants can be found in, and transact or have transacted business in this District, and the events and omissions that give rise to these claims occurred in this District.

## III.
## THE PARTIES

**A.      Plaintiffs**

10.     Plaintiff Larball Publishing Company, Inc. ("Larball") is a music publisher with a principal place of business located at 1057 Baxter Lane, Gallatin, TN 37066.

11.     Larball's principal is L. Russell Brown, a composer whose 60-year career includes classic songs like "Tie a Yellow Ribbon Round the Ole Oak Tree," "Knock Three Times," and many others for Tony Orlando and Dawn; "C'mon Marianne" for the Four Seasons; and "I Woke up in Love this Morning" for the Partridge Family. Brown was nominated for induction into the Songwriters Hall of Fame in 2010 and 2020.

12.     Plaintiff Sandy Linzer Productions, Inc. ("SLP") is a music publisher with a principal place of business located at 23 Mayhew Drive, Livingston, NJ 07039.

13. SLP's principal is Sandy Linzer, a composer and producer known for hit songs including "A Lover's Concerto" for the Toys; "Working My Way Back to You," "Dawn (Go Away), and "Let's Hang On" for Frankie Valli and the Four Seasons; "Native New Yorker" for Odyssey; and "I Believe in You and Me" for the Four Tops and Whitney Houston. Linzer was nominated for induction into the Songwriters Hall of Fame in 2012.

14. Linzer wrote and produced numerous popular disco tracks in the 1970s, including "Cherchez La Femme," which earned a Grammy nomination for Dr. Buzzard's Original Savannah Band and its lead singer Cory Daye.

15. Brown and Linzer have collaborated on projects including "Bon Bon Vie (Gimme the Good Life" for Thelonius Monk III and "Use It Up and Wear It Out" for Odyssey.

16. Brown and Linzer's songs have been featured in over 50 motion pictures, including "Native New Yorker" by Odyssey in *Spiderman: No Way Home* and "Breakin' Down the Walls of Heartache" by the Bandwagon in Elton John's *Rocketman*.

17. Brown and Linzer co-authored and copyrighted Cory Daye's "Wiggle and Giggle All Night" in 1979.

18. Through assignment, Larball and SLP hold the copyright of the BL songs.

**B.   Defendants**

19. Defendant Dua Lipa is the primary performing artist of "Levitating" and "Levitating (Da Baby)." Lipa claims copyright and authorship credit for "Levitating." Lipa is credited as an author of pre-existing material used in "Levitating (Da Baby)."

20. Defendant Jonathan Lyndale Kirk (p/k/a Da Baby, d/b/a Baby Jesus Publishing) is a featured performer in, and claims copyright and authorship credit for, "Levitating (Da Baby)."

21.     Defendant Bosco Kante claims copyright and authorship credit for "Levitating." Kante is credited as an author of pre-existing material used in "Levitating (Da Baby)."

22.     Defendant Sarah Hudson claims copyright and authorship credit for "Levitating." Hudson is credited as an author of pre-existing material used in "Levitating (Da Baby)."

23.     Defendant Stephen Kozmeniuk claims copyright and authorship credit for "Levitating." Kozmeniuk is credited as an author of pre-existing material used in "Levitating (Da Baby)."

24.     Defendant EMI Music Publishing Ltd. is the publisher of and claims copyright for "Levitating" and "Levitating (Da Baby)." EMI is a subsidiary of Sony Music Publishing (US) LLC. EMI is domiciled at 25 Madison Avenue, New York, NY 10010, which is within this judicial district.

25.     Defendant Sony Music Publishing (US) LLC is headquartered at 25 Madison Avenue, New York, NY 10010, which is within this District.

26.     Defendant Universal Music Corporation a/k/a Universal Music Group ("UMG") claims copyright for "Levitating (Da Baby)." UMG's headquarters are located at 2220 Colorado Avenue, Santa Monia, CA 90404.

27.     Defendant Warner Music Group Corp. ("Warner") is the publisher of the infringing works and the album *Future Nostalgia*. Warner's headquarters are located at 1633 Broadway, New York, NY 10019, which is within this District.

28.     Sony Music, UMG, and Warner are the "Big Three" global music publishers.

# IV.
## STATEMENT OF FACTS

### A.     The "Don Diablo" Litigation

29.     Cory Daye's album *Cory and Me*, which featured "Wiggle and Giggle All Night," was published in 1979 by RCA Victor, now a Sony subsidiary.

30.     "Wiggle and Giggle All Night" was distributed internationally. Its success included a 9-week run on the Netherlands charts and an extensive tour in Dutch nightclubs.[6]

31.     "Don Diablo" was published in Spain in 1980 by Discos CBS, S.A., a subsidiary of CBS, Inc. and now a Sony subsidiary. Through various CBS subsidiaries and licensees, "Don Diablo" and its derivative works were subsequently distributed in more than dozen countries including the United States.

32.     In 1983, Plaintiff Larball brought a copyright infringement action in this District against Bosé and CBS.[7] In that action, Larball alleged that Bosé had infringed upon "Wiggle and Giggle All Night."

33.     CBS admitted that parts of the BL songs are identical.

34.     As a result of that lawsuit, Plaintiffs are copyright holders of both BL songs.

35.     The BL songs continue to be popular internationally. In 2018, Bosé performed "Don Diablo" live in Chile at the Viña del Mar International Song Festival, the oldest and largest music festival in Latin America.[8] "Don Diablo" has also been used in video advertisements, including recently for Falabella, the largest South American department store.

---

[6]  https://dutchcharts.nl/showitem.asp?interpret=Cory+Daye&titel=Wiggle+And+A+Giggle+All+Night&cat=s   (last accessed Mar. 1, 2022).
[7] *Larball Publishing Co. v. CBS, Inc.*, No. 83-cv-8329 (S.D.N.Y. 1983).
[8] https://www.youtube.com/watch?v=xfcYOndqum0 (last accessed Mar. 1, 2022).

**B.      The Levitating Songs have Objective and Substantial Similarities to the BL Songs**

36.      Like "Don Diablo" 40 years earlier, the infringing works begin with a signature melody copied from "Wiggle and Giggle All Night."

37.      The transcription below compares the compositions of "Don Diablo" ("DD"), "Levitating" ("LEV"), and "Wiggle and Giggle All Night" ("WG") with respect to the signature melody.[9]



38.      The signature melody appears in bars 10 and 11 of all three songs.[10] It then repeats, with some slight variation, in bars 12 and 13.

---

[9] A melody, or tune, is a linear succession of musical tones.

[10] A bar is a group of rhythmic beats. In written music, bars are separated by vertical lines, and each bar is identified by a superscript number at the beginning of the bar.

39.     It is apparent that all three iterations of the melody are substantially similar. The notes move in the same direction with evenly matched intervals or "steps," and almost identical rhythms.[11]

40.     The signature melody is repeated six times in "Levitating," comprising roughly one-third of the entire composition. It is repeated three times in "Levitating (Da Baby)."

41.     Furthermore, the infringing works copy a repetitive rhythm from the original works, consisting of a dotted eighth note followed by a sixteenth note tied to an eighth note.[12] The figure below depicts four instances of that rhythm, enclosed in parentheses.



42.     In the infringing works and the original works, this rhythm is accompanied by a bass drum.

43.     This rhythm is heard during the chorus of both the infringing works, and is repeated a total of sixteen times in each.

**C.     The Signature Melody is Beloved by Listeners and Recognized as Substantially Similar to the BL Songs**

44.     The signature melody is the most listened to and recognizable part of the infringing works and plays a crucial role in their popularity.

45.     A 13-second clip of "Levitating" on the short-form video app TikTok has been used to create about 1.5 million videos with hundreds of millions of views, helping elevate the song to

---

[11] An interval is the difference in pitch between two notes. In written music, the difference between the position of one note and the next on the five-line musical staff represents the interval between those notes.
[12] An eighth note is played for one-eighth the duration of one full note. A sixteenth note is, as expected, one-half the duration of an eighth note.

viral status. The signature melody is the first sound heard in this clip. Because video creators frequently truncate the already brief snippets of sound on TikTok, the signature melody often comprises fifty percent or more of these viral videos.[13]

46.     Defendants capitalized on the infringing works' popularity on TikTok by creating a music video featuring Lipa, Da Baby, and TikTok users who had won a contest.[14] This music video, released on October 2, 2020, has over 475 million views on YouTube.[15]

47.     Both professionals and laypersons have remarked on the unmistakable similarity between the infringing works and the BL songs.

48.     The immense popularity and financial success of the infringing works depend significantly upon the signature melody they copied from the BL songs.

**D.     Defendants Exploited the Infringing Levitating Songs
         Without Authorization from Plaintiffs**

49.     Lipa admitted that she purposefully sought influences from past eras for the album *Future Nostalgia*, which features "Levitating," as seen in the following interview with Variety Magazine.

> **[Q]Is it true you started from the title backward in making this album?**
> [Lipa] Yeah, I did. Around the time of the American Music Awards in 2018, when I did [the single] "Electricity," I had the album title. I kind of went backwards in making "future nostalgia" what I was aiming for — making it my genre. I wanted to make sure that every song touched on both the future aspects and the nostalgic aspects, to somehow bring something fresh and new to the table, but also something that reminds you of a time….

                                        * * *

---

[13] TikTok is designed around short attention spans. A study of TikTok advertisements found that "The average watch time per video view was 3.33s and the average watch time per person was 5.26s, both metrics far exceeding our benchmarks." *Available at* https://www.tiktok.com/business/en-US/inspiration/studiocanal-13 (last accessed Mar. 1, 2022). The signature melody, being at the spearhead of 1.5 million "Levitating" TikTok videos, thus has an outsized role in creating favorable impressions of the song.

[14] *Available at* https://newsroom.tiktok.com/en-gb/dua-lipa-lands-levitating-video-with-help-from-tiktok (last accessed Mar. 1, 2022). When this press release was published on October 2, 2020, there were only 150,000 TikTok videos featuring "Levitating," which had cumulatively generated over 300 million views. There are now more than 10 times as many such TikTok videos.

[15] *Available at* https://www.youtube.com/watch?v=TUVcZfQe-Kw (last accessed Mar. 1, 2022).

**[Q]A lot of the album seems to go even further back than that — to disco. There is so much real-sounding, heavy, melodic bass that we've rarely heard in pop since the late '70s, in your hit "Don't Start Now" but also album tracks like "Levitating," "Pretty Please," "Break My Heart" and "Love Again."**
[Lipa] I think it was trying to make the record sound as cohesive as possible, so that it all feels part of the same story. And alongside the bass in multiple songs, I also have strings in multiple songs….[16]

50.     In an interview for the podcast Song Exploder about the writing process for "Levitating," co-writer and Defendant Stephen Kozmeniuk states that he thought it would be "cool to do a … slinky disco track."[17]

51.     Writing for RollingStone, Jon Freeman describes *Future Nostalgia* as "an album of throwback bangers" and having "traces of those pop stars who previously looked to disco for inspiration."[18]

52.     "Wiggle and Giggle All Night," like many works recorded by Cory Daye, is part of the disco genre.

53.     Another song on *Future Nostalgia*, "Break My Heart," features similarities with "I Need You Tonight" recorded by INXS in 1987.[19] In an interview with Billboard, Lipa states that she and co-writers gave INXS writing credit to avoid litigation:

**Why the Writers of INXS' 'Need You Tonight' Are Credited on 'Break My Heart'**
While the 1987 INXS Hot 100 No. 1 isn't sampled on the Future Nostalgia song, Dua Lipa said she and her collaborators (eventually) noticed a similarity between the tracks. "When we were in the studio, we didn't quite connect the dots. We were just like, 'Oh yeah, this is great!' We were on such a high and we were just working on it, and then I listened back, and I was like 'Hold on, guys…' … The guys at INXS, the people that are looking after the publishing, were very nice and they really liked the song, so we gave them a publishing

---

[16] *Available at* https://variety.com/2020/music/news/dua-lipa-interview-future-nostalgia-album-1203550889/ (last accessed Mar. 1, 2022).
[17] *Available at* https://songexploder.net/dua-lipa (last accessed Mar. 1, 2022). Kozmeniuk's quote begins at 4:22 of the podcast.
[18] *Available at* https://www.rollingstone.com/music/music-features/dua-lipa-future-nostalgia-disco-987812/ (last accessed Mar. 1, 2022).
[19] *Supra* note 6.

credit, a writing credit on the track, because it was only fair, and it just brought nostalgia even more to the forefront, you know? It confirmed that part for us. …

"It was a funny moment when we were like, 'Eureka!' And then, 'Oh, wait a second…' … I'm not trying to get sued, is kind of the moral of the story," she laughs.[20]

54.    According to records from the United States Copyright Office, Defendants obtained rights and permissions for this sample from INXS songwriter Andrew Farris and the estate of Michael Hutchence.

55.    Defendants did not request or receive authorization from Plaintiffs or other copyright holders of the BL songs.

56.    Defendants had reasonable access to the BL songs, which can be found on popular streaming services including Spotify, Pandora, Amazon Prime Music, and YouTube. As part of the Sony music family, Defendants also have access to the BL songs, which were published by labels now under Sony's umbrella.

57.    On August 31, 2021, Plaintiffs sent a cease-and-desist letter to Defendants' representatives alerting them of Defendants' infringement. Plaintiffs demanded that Defendants cease and desist from further exploitation of the infringing works pending further negotiations.

58.    Defendants continued to knowingly and willfully exploit derivative works of the BL songs, including reproducing, distributing, and displaying the infringing works for substantial profit and fame.

59.    Dua Lipa and Da Baby performed and/or continue to perform the infringing works in concerts, personal appearances, and on media formats including radio and Internet streaming.

---

[20] *Available at* https://www.billboard.com/media/podcasts/dua-lipa-interview-future-nostalgia-quarantine-9362688/ ?curator=MusicREDEF (last accessed Feb. 2, 2022).

60.     Defendants have distributed, performed, marketed, and otherwise exploited the infringing works in this District. On March 1, 2022, Lipa held a live performance of "Levitating" in New York City as part of her *Future Nostalgia* tour.

61.     On information and belief, Defendants have authorized other artists to create additional remixes and collaborations that infringe upon Plaintiffs' copyright.

**FIRST CLAIM FOR RELIEF:**
**DIRECT, CONTRIBUTORY, AND VICARIOUS COPYRIGHT INFRINGEMENT**

62.     Plaintiffs hold the copyright of "Wiggle and Giggle All Night" and "Don Diablo."

63.     Defendant did not seek or receive permission from Plaintiffs or any other copyright holders of the BL songs to copy or use any portion of these songs.

64.     Defendants have directly infringed upon Plaintiffs' copyright through the reproduction, distribution, performance, display, and creation of derivative works of the BL songs in violation of the Copyright Act.

65.     Defendants have induced, caused, or materially contributed to the infringement of Plaintiffs' copyright, including through their authorization of further remixes of "Levitating" by other artists. Accordingly, Defendants are contributorily liable for such infringement.

66.     Defendants have the right to control other infringers and have received direct benefit from that infringement. Accordingly, Defendants are vicariously liable for such infringement.

67.     Defendants' infringement of Plaintiffs' copyright is ongoing, as the infringing works continue to be licensed for sale, streaming, and other exploitations by Defendants or their agents.

68.     Defendants' wrongful conduct was and is knowing and willful.

12

69.     As a direct and proximate cause of Defendants' wrongful conduct, Plaintiffs have suffered damages including lost profits to be proven at trial. Plaintiffs demand full compensatory and/or statutory damages, in addition to punitive damages.

70.     Defendants are co-infringers of Plaintiffs' copyright and are jointly and severally liable for all damages owed.

## SECOND CLAIM FOR RELIEF:
## DECLARATORY AND INJUNCTIVE RELIEF

71.     Plaintiffs seek declaratory judgment that (a) Defendants do not have the right to exploit the infringing works without Plaintiffs' written approval; and (b) any further unauthorized exploitation of the infringing works constitute willful copyright infringement.

72.     Plaintiffs seek a permanent injunction enjoining further reproduction, sale, performance, or other use or exploitation of the infringing works and all other derivative works.

73.     Plaintiffs seek the foregoing declaratory and injunctive relief pursuant to 17 U.S.C § 502.

## THIRD CLAIM FOR RELIEF:
## ACCOUNTING

74.     Under the causes of action set forth herein, Plaintiffs may recover any and all profits of Defendants attributable to their misappropriation and conversion of Plaintiff's property rights.

75.     Plaintiffs are entitled to and demand that Defendants render a full accounting of all net profits received by Defendants in connection with the creation, marketing, sale, and other exploitations of the infringing works.

**WHEREFORE**, Plaintiffs respectfully request that this Court enter judgment in their favor and against all Defendants, granting the following relief:

(A)     an award for damages pursuant to 17 U.S.C. § 504(b), or in the alternative an award for the maximum statutory damages of $150,000 per infringement pursuant to 17 U.S.C. § 504(c);

(B)     a declaration that all profits derived by Defendants from their infringement shall be deemed to be held in constructive trust for the benefit of Plaintiffs;

(C)     an order that Defendants provide to Plaintiffs a complete and accurate accounting of any and all profits earned in connection with their exploitation of the infringing works;

(D)     an award for punitive damages for Defendants' willful disregard of Plaintiffs' rights;

(E)     an award for costs and reasonable attorney's fees pursuant to 17 U.S.C. § 505;

(F)     a permanent injunction prohibiting the reproduction, sale, public performance or other use or exploitation of the infringing works and all other derivative works; and

(G)     an award of such other and further relief as this Court may deem to be just, proper, and equitable.

## <u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand trial by jury on all questions of fact raised by the Complaint.

Dated: March 4, 2022

Respectfully submitted,

**BROWN, LLC**

**By:** *<u>/s/ Jason T. Brown</u>*
Jason T. Brown (JB6579)
Benjamin Lin
      (*pro hac vice* application forthcoming)
Pat Almonrode (PA0428)
111 Town Square Place, Suite 400
Jersey City, NJ 07310
(877) 561-0000 (office)
(855) 582-5297 (fax)
*jtb@jtblawgroup.com*
*ben.lin@jtblawgroup.com*
*patalmonrode@jtblawgroup.com*