UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

LARBALL PUBLISHING COMPANY, INC. and
SANDY LINZER PRODUCTIONS, INC.,

Plaintiffs,

-v.-

DUA LIPA, JONATHAN LINDALE KIRK ("DA
BABY") d/b/a BABY JESUS PUBLISHING,
CLARENCE COFFEE, JR., SARAH HUDSON,
STEPHEN KOZMENIUK, SONY MUSIC
PUBLISHING (US) LLC, UNIVERSAL MUSIC
CORPORATION, and WARNER RECORDS INC.,

Defendants.

22 Civ. 1872 (KPF)

**OPINION AND ORDER**

---

KATHERINE POLK FAILLA, District Judge:

Plaintiffs Larball Publishing Company, Inc. ("Larball") and Sandy Linzer

Productions, Inc. ("SLP"), authored the 1979 disco song *Wiggle and Giggle All*

*Night* ("*Wiggle*") and became copyright holders over a second song, *Don Diablo*,

through a separate litigation.  In this copyright infringement action, they argue

that Defendants — a group of artists, producers, and publishing companies —

infringed on both copyrights through creating and performing the more recent,

and very popular, song *Levitating* and its derivative works.  Defendants now

move to dismiss Plaintiffs' *Wiggle*-related claims pursuant to Federal Rule of

Civil Procedure 12(b)(6).  For the reasons that follow, the Court denies

Defendants' motion.

**BACKGROUND**[1]

**A.    Factual Background**

**1.    The Parties**

Plaintiff Larball is a Tennessee-based music publisher whose principal, L. Russell Brown, is a longtime composer.  (FAC ¶¶ 24-25).  Plaintiff SLP is a New Jersey-based music publisher whose principal, Sandy Linzer, is also a composer and producer and has collaborated with Brown on several songs.  (*Id.* ¶¶ 26-27, 29).  Brown and Linzer co-authored the disco song *Wiggle* in 1979. (*Id.* ¶ 31).  Plaintiffs allege that Brown and Linzer have been both prolific and successful in their other musical endeavors.  (*See, e.g., id.* ¶¶ 25, 27, 30). Plaintiffs acquired the copyright to *Wiggle* through assignment from Brown and Linzer and acquired the copyright to *Don Diablo*, another song of the relevant era, through a separate copyright infringement action.  (*Id.* ¶¶ 32, 49-51).

Defendant Dua Lipa is the primary recording artist of, and claims copyright and authorship credit for, the 2020 pop song *Levitating*.  (FAC ¶¶ 8, 33).  Defendants Sarah Hudson and Stephen Kozmeniuk likewise claim copyright and authorship credit for *Levitating*.  (*Id.* ¶¶ 35-36).  Defendant Jonathan Lyndale Kirk is a featured performer on, and claims copyright and authorship credit for, a remix entitled *Levitating (Da Baby)*; as detailed later in

---

[1]    This Opinion draws its facts from the First Amended Complaint ("FAC" (Dkt. #51)), the well-pleaded allegations of which are taken as true for purposes of this Opinion.

For ease of reference, the Court refers to Defendants' memorandum of law in support of their motion to dismiss as "Def. Br." (Dkt. #54); to Plaintiffs' memorandum of law in opposition to Defendants' motion to dismiss as "Pl. Opp." (Dkt. #59); and to Defendants' reply memorandum of law as "Def. Reply" (Dkt. #63).

this Opinion, Plaintiffs have voluntarily dismissed the claims against him.  (*Id.* ¶ 34; *see also* Notice of Voluntary Dismissal (Dkt. #72)).  Defendant Coffee, Jr., is a co-writer with Lipa on at least one separate song, *Un Día (One Day)*, which is not directly at issue in this action.  (FAC ¶¶ 74, 77).

Defendant Warner Records Inc. ("Warner") published both *Levitating* and *Future Nostalgia*, the album on which *Levitating* appears.  (FAC ¶ 39).  Defendant Universal Music Corporation ("Universal"), another publisher, claims copyright credit for the *Levitating (Da Baby)* remix.  (*Id.* ¶ 38).  Defendant Sony Music Publishing (US) LLC ("Sony") is yet another music publisher.  (*Id.* ¶ 37).  Curiously, however, Sony is not alleged to have published *Levitating*, *Future Nostalgia*, or any components or remixes thereof.  (*See id.*).  Instead, Plaintiffs simply note that Defendants Warner, Sony, and Universal collectively comprise the "Big Three" music publishers worldwide.  (*Id.* ¶ 40).

### 2.    The Allegedly Infringed Works

*Wiggle* was recorded by Cory Daye and published by record label RCA Victor on Daye's 1979 album *Cory and Me*.  (FAC ¶ 41).  RCA Victor now shares a parent company, Sony Music Entertainment, with Defendant Sony.  (*Id.* ¶¶ 31, 41).  In the late 1970s and early 1980s, *Wiggle* "enjoyed a nine-week run on the Netherlands charts and significant popularity in Dutch nightclubs."  (*Id.* ¶ 43).

*Don Diablo*, which was recorded by Miguel Bosé, was published in Spain in 1980 by Discos CBS, S.A., then a subsidiary of CBS, Inc. ("CBS") and now a subsidiary of Sony Music Entertainment.  (FAC ¶¶ 2, 44).  While *Don Diablo*

was eventually distributed in the United States and globally, it was not initially published in the United States. (*Id.* ¶¶ 44-48). In 1983, Larball sued CBS and Bosé, alleging that *Don Diablo* infringed *Wiggle*. (*Id.* ¶ 49). In that litigation, CBS allegedly admitted that *Wiggle* and *Don Diablo* shared identical elements. (*Id.* ¶¶ 49-50). As a result of that lawsuit, Larball (and now Plaintiffs) acquired the copyright to *Don Diablo*. (*Id.* ¶ 51). Defendant Sony is the current administrator of *Don Diablo*'s royalties on behalf of Plaintiff SLP. (*Id.* ¶ 52). In this capacity, it collects payments from users of *Don Diablo* and transfers them to SLP after taking a commission. (*Id.* ¶¶ 52-54).

Plaintiffs allege that *Don Diablo* has enjoyed international acclaim, noting that (i) "one version had more than 11 million [YouTube] views as of July 3, 2019," and "more than 15 million views" as of October 28, 2022; (ii) the various versions on YouTube have collectively amassed more than 21 million views; (iii) it has been used in video advertisements, including for a prominent South American department store; and (iv) it was performed at "the oldest and largest music festival in Latin America." (FAC ¶¶ 57, 61, 65, 70). Plaintiffs also allege that Bosé has enjoyed a storied career beyond *Don Diablo*, noting that he (i) "is a Latin Grammy-nominated performer who received a Billboard Latin Music Lifetime Achievement Award"; (ii) "remains a fixture of the global music community"; (iii) "is the subject of an upcoming documentary by major film studio Paramount"; (iv) has performed at the aforementioned Latin American music festival "at least 10 times between 1981 and 2018"; and (v) is a fixture at a Spanish radio station's awards show. (*Id.* ¶¶ 68-71, 73, 80).

### 3.     The Alleged Infringement

Plaintiffs assert that Defendants were inspired by past musical eras in composing the music on *Future Nostalgia*.  In support of this contention, they cite statements from a magazine interview with Lipa, a podcast interview with Kozmeniuk, and third-party media observations; they also note Defendants' admissions that after noticing a similarity between their work on a separate *Future Nostalgia* song and a 1987 disco hit, they credited that disco song's authors.  (FAC ¶¶ 100-102, 105-106).

As to *Levitating* specifically, Plaintiffs allege a host of similarities shared with *Wiggle* and *Don Diablo*.  Like *Wiggle* and *Don Diablo*, *Levitating* begins with a "signature melody" that Plaintiffs claim Defendants copied; Plaintiffs state this melody appears in bars 10 and 11 of all three songs and then repeats "with some slight variation" in bars 12 and 13.  (FAC ¶¶ 85-86).  The notes within this melody each move in the same direction with evenly matched intervals and "almost identical" rhythms.  (*Id.* ¶ 87).  *Levitating* also allegedly copies a repetitive rhythm from the prior works in which "a dotted eighth note [is] followed by a sixteenth note tied to an eighth note," and in all three songs the rhythm is accompanied by a bass drum.  (*Id.* ¶¶ 89, 92).  The allegedly-infringing melody occurs six times in *Levitating*, accounting for around one-third of the total work, while the rhythm repeats a total of sixteen times.  (*Id.* ¶¶ 88, 93).

The image below, provided in the First Amended Complaint, purports to show the melodic similarities between and among *Don Diablo* (top), *Levitating* (middle), and *Wiggle* (bottom).  (*Id.* ¶ 85).



The second image, also provided in the First Amended Complaint, compares the repetitive rhythm in *Don Diablo* and *Wiggle* (top) with the rhythm in *Levitating* (bottom), arguing that the latter copies the former.  (FAC ¶ 91).



Plaintiffs describe the melody as the "most listened to and recognizable part" of *Levitating* and allege that is has played a "crucial role" in its popularity.  (FAC ¶ 94).  They point to approximately 1.5 million TikTok videos that use the

melody as an audio backdrop and note that *Levitating*'s creators used that TikTok success as promotional fuel.  (*Id.* ¶¶ 94-96).  This viral popularity, Plaintiffs allege, has also led "professionals and laypersons alike" to comment on the similarities between *Levitating*, *Wiggle*, and *Don Diablo*.  (*Id.* ¶ 98).

Plaintiffs seek to draw several other connections between Lipa and Bosé. *First*, they note that José Balvin, a "six-time Latin Grammy winner," has collaborated with Lipa on a separate song and is tied to Bosé through (i) a pair of photographs Balvin posted side-by-side to Facebook, seemingly demonstrating the similarities between himself and Bosé, and (ii) the pair "embracing" at a 2018 awards show.  (FAC ¶¶ 74-77).  *Second*, they note that Lipa performed at a different 2018 awards show with Pablo Alborán, a musician who has performed with Bosé on two named occasions; that specific awards show is one Bosé is also alleged to regularly attend.  (*Id.* ¶¶ 78-81). From this, Plaintiffs conclude that Lipa has "one degree of separation (or less) from Bosé."  (*Id.* ¶ 82).

## B.    Procedural Background

Plaintiffs initiated this action by filing the Complaint on March 4, 2022. (Dkt. #1).  Some delay ensued as a result of Plaintiffs' efforts to effectuate service on Defendants.  (*See, e.g.*, Dkt. #12).  Defendants (other than Kirk)[2] promptly entered their appearances.

---

[2]    The original complaint names Bosco Kante as an additional defendant.  (*See* Dkt. #1 at ¶ 21).  He is not named as a defendant in the FAC, however, and so the Court considers any claims against him to have been dismissed without prejudice and does not recount procedural history unique to Kante.

On August 30, 2022, the answer deadline to which the parties stipulated (Dkt. #19), Defendants (other than Kirk) filed a letter indicating their intention to move to dismiss the Complaint (Dkt. #33). Plaintiffs filed a response detailing their intended opposition on September 2, 2022. (Dkt. #37). On September 27, 2022, the Court held a pre-motion conference at which it set a schedule for Plaintiffs to file an amended complaint and for briefing on Defendants' anticipated motion to dismiss. (Dkt. #43).

Pursuant to that schedule, on October 28, 2022, Plaintiffs filed the First Amended Complaint (the "FAC"). (Dkt. #51). Defendants then filed their motion to dismiss and supporting papers on November 30, 2022. (Dkt. #53-55). Plaintiffs filed their opposition on January 6, 2023. (Dkt. #59). Defendants filed a reply in further support of their motion and accompanying papers on January 20, 2023. (Dkt. #63-64).

During the course of that briefing, Plaintiffs sought leave to serve Kirk by alternate means (Dkt. #47, 49), which request the Court granted in part (Dkt. #50). Kirk subsequently appeared and filed his own letter detailing his intended motion to dismiss (Dkt. #56), to which Plaintiffs promptly replied (Dkt. #60). Citing its familiarity with the issues in this case, the Court dispensed of its usual practice of holding a pre-motion conference and set a schedule for briefing on Kirk's motion. (Dkt. #62).

On January 30, 2023, Kirk filed his own motion to dismiss and supporting materials (Dkt. #65-67), to which Plaintiffs filed an opposition on February 21, 2023 (Dkt. #70). Kirk filed a reply in further support of his

motion on March 17, 2023.  (Dkt. #71).  On July 7, 2023, Plaintiffs filed a notice of voluntary dismissal of their claims against Kirk (Dkt. #72), and thereby mooted his pending motion to dismiss.  The Court dismissed the claims against Kirk without prejudice.  (Dkt. #73).

## DISCUSSION

In the FAC, Plaintiffs assert direct, contributory, and vicarious copyright infringement claims against Defendants under the Copyright Act of 1976, 17 U.S.C. ch. 1-15 (the "Copyright Act").  Defendants now move to dismiss Plaintiff's claims involving *Wiggle*.[3]  The Court sets forth the applicable legal standards for a motion to dismiss before assessing the viability of Plaintiffs' claims.

### A.     Motions to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)).  "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Allco Fin. Ltd.* v. *Klee*, 861 F.3d 82, 94-95 (2d Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678).  "[A]lthough a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and

---

[3]     Defendants do not move to dismiss the claims relating to *Don Diablo* at this time.  (Def. Br. 2 n.3 & n.4).

threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Harris* v. *Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (internal quotation marks and citation omitted and alterations adopted); *see also Rolon* v. *Henneman*, 517 F.3d 140, 149 (2d Cir. 2008) (explaining that a court need not accept "conclusory allegations or legal conclusions masquerading as factual conclusions").

A court adjudicating a motion to dismiss under Rule 12(b)(6) "may review only a narrow universe of materials." *Goel* v. *Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016). This narrow universe includes the "facts stated on the face of the complaint, documents appended to the complaint or incorporated in the complaint by reference, and matters of which judicial notice may be taken." *Id.* (internal citation omitted and alternations adopted); *see also United States ex rel. Foreman* v. *AECOM*, 19 F.4th 85, 106 (2d Cir. 2021). Where the disputed works in a copyright action are attached to or incorporated by reference in the complaint, a district court can "consider the similarity between those works in connection with a motion to dismiss, because the court has before it all that is necessary in order to make such an evaluation." *Peter F. Gaito Architecture, LLC* v. *Simone Dev't Corp.*, 602 F.3d 57, 64 (2d Cir. 2010).

## B.   Plaintiff Has Adequately Alleged Copyright Infringement as to *Wiggle*

### 1.   Applicable Law

For each allegedly infringed work, "a plaintiff must show: [i] ownership of a valid copyright; and [ii] unauthorized copying of the copyrighted work." *Jorgensen* v. *Epic/Sony Recs*, 351 F.3d 46, 51 (2d Cir. 2003) (citing *Feist*

*Publ'ns, Inc.* v. *Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)).  A certificate of copyright registration is *prima facie* evidence of ownership.  *Id.* (citing 17 U.S.C. § 410(c)).

As to the second element, once valid copyright ownership has been established, the plaintiff must allege (i) the "defendant has actually copied the plaintiff's work" and (ii) "the copying is illegal because a substantial similarity exists between the defendant's work and the protectable elements of plaintiff's." *Ritani, LLC* v. *Aghjayan*, 880 F. Supp. 2d 425, 441-42 (S.D.N.Y. 2012) (quoting *LaChapelle* v. *Fenty,* 812 F. Supp. 2d 434, 438 (S.D.N.Y. 2011)); *see also Jorgensen*, 351 F.3d at 51 ("To satisfy the second element of an infringement claim — the 'unauthorized copying' element — a plaintiff must show both that his work was 'actually copied' and that the portion copied amounts to an 'improper or unlawful appropriation.'" (quoting *Castle Rock Entm't, Inc.* v. *Carol Publ'g Grp., Inc.*, 150 F.3d 132, 317 (2d Cir. 1998))).  Since direct evidence of actual copying is often unavailable, a plaintiff may instead provide circumstantial evidence that "the person who composed the defendant's work had access to the copyrighted material, and that there are similarities between the two works that are probative of copying." *Jorgensen*, 351 F.3d at 51 (internal citations and quotations omitted); *see also Hines* v. *W Chappell Music Corp.*, No. 20 Civ. 3535 (JPO), 2021 WL 2333621, at *2 (S.D.N.Y. June 8, 2021).[4]  Similarities between two works are probative only if those similarities

---

[4]     In *Repp* v. *Webber*, 132 F.3d 882, 889 n.1 (2d. Cir. 1997), the Second Circuit noted that a longtime source of "considerable confusion" in copyright law had been the use of the term "substantial similarity" at multiple steps in the infringement analysis.  In a

"would not be expected to arise if the works had been created independently." *O'Keefe* v. *Ogilvy & Mather Worldwide, Inc.,* 590 F. Supp. 2d 500, 517 (S.D.N.Y. 2008) (quoting *Velez* v. *Sony Discos,* No. 05 Civ. 615 (PKC), 2007 WL 120686, at *6 (S.D.N.Y. Jan. 16, 2007)).

Access means that the "alleged infringer had a 'reasonable possibility' — not simply a 'bare possibility' — of hearing the prior work." *Jorgensen*, 351 F.3d at 51 (quoting *Gaste* v. *Kaiserman*, 863 F.2d 1061, 1066 (2d Cir. 1988)). A plaintiff may show "access" by presenting facts showing either (i) "a particular chain of events by which the defendant might have gained access to the work," or (ii) "that plaintiff's work was widely disseminated" such that the Court can infer access. *Clanton* v. *UMG Recs., Inc.*, 556 F. Supp. 3d 322, 328 (S.D.N.Y. 2021) (internal quotations omitted and alteration adopted). As to the latter, "[a] work is widely disseminated when it has had considerable commercial success or is readily available on the market." *Webb* v. *Stallone*, 910 F. Supp. 2d 681, 686 (S.D.N.Y. 2012) (internal quotation omitted), *aff'd on other grounds*, 555 F. App'x 31 (2d Cir. 2014) (summary order).

"There is an inverse relationship between access and probative similarity such that the stronger the proof of similarity, the less the proof of access is required." *Jorgensen*, 351 F.3d at 56 (internal quotation omitted). And a plaintiff may bypass showing access altogether by demonstrating that the two

---

clarifying footnote, the *Repp* court explained: "the term 'probative similarity' should be used when referring to the initial burden of proving copying by establishing access and/or similarities. After a plaintiff has proved copying, he must then show that the copying was unlawful by establishing 'substantial similarity' between the works at issue." *Id.* (internal citation omitted).

works are "strikingly" similar, a level of similarity necessarily higher than the "probative" similarity ordinarily required to prove copying. *Id.*; *see also Klauber Bros., Inc.* v. *M.J.C.L.K., LLC,* No. 21 Civ. 4523 (PGG), 2022 WL 5108902, at *3 (S.D.N.Y. Oct. 4, 2022).  This standard requires that the works in question be "so strikingly similar as to preclude the possibility of independent creation." *Jorgensen*, 351 F.3d at 56 (quoting *Lipton* v. *Nature Co.*, 71 F.3d 464, 471 (2d Cir. 1995)); *see Gal* v. *Viacom Int'l, Inc.*, 518 F. Supp. 2d 526, 537 (S.D.N.Y. 2007) ("[S]triking similarity exists when two works are so nearly alike that the *only reasonable explanation* for such a great degree of similarity is that the later was copied from the first." (emphasis added) (internal quotation omitted)); *see also* 4 MELVILLE NIMMER & DAVID NIMMER, NIMMER ON COPYRIGHT § 13.02 (2021) ("At base … in human experience, it is virtually impossible that the two works could have been independently created.").

The "strikingly similar" test is a "stringent" one, *Vargas* v. *Transeau*, 514 F. Supp. 2d 439, 445 (S.D.N.Y. 2007) (internal quotation omitted), *aff'd sub nom. Vargas* v. *Pfizer, Inc.*, 352 F. App'x 458 (2d Cir. 2009) (summary order), and "is applied with *particular* stringency" in cases involving music, *Tisi* v. *Patrick*, 97 F. Supp. 2d 539, 548 (S.D.N.Y. 2000) (emphasis added).  In such cases, the Second Circuit has instructed courts to be "mindful of the limited number of notes and chords available to composers and the resulting fact that common themes frequently appear in various compositions[.]" *Id.* (quoting *Gaste*, 863 F.2d at 1068).  Absent such "striking similarity," the plaintiff must

allege access and must do so with facts that go beyond "mere speculation or conjecture." *Stallone*, 910 F. Supp. 2d at 686-87.

### 2. Analysis

Defendants' motion focuses on the sufficiency of Plaintiffs' allegations regarding copyright ownership and actual copying of *Wiggle*; it does not emphasize the "substantial similarity" sub-element of the unauthorized copying analysis. More specifically, regarding actual copying, Defendants primarily argue that Plaintiffs failed to plausibly allege access (Def. Br. 11-14), and in their reply to Plaintiffs' opposition brief they argue that Plaintiffs also failed to allege striking similarity as an alternative to claiming actual copying (Def. Reply 7-9). In addition, as the Court will explore first, Defendants argue that Plaintiffs improperly fail to differentiate their allegations as to *Wiggle* and *Don Diablo*. (Def. Br. 3, 5, 10). For the reasons discussed below, the Court agrees with Defendants that Plaintiffs have failed to allege access to *Wiggle*, but finds that Plaintiffs have set forth enough facts to render it plausible that *Levitating* is strikingly similar to the disco-era bop.

### a. The FAC Sufficiently Differentiates Plaintiffs' Allegations as to *Wiggle* and *Don Diablo*

As a preliminary matter, Defendants argue that, throughout the FAC, Plaintiffs impermissibly conflate the allegations as to each of the allegedly infringed songs. (*See, e.g.,* Def. Br. 5). While is true that Plaintiffs occasionally refer to *Wiggle* and *Don Diablo* collectively as the "Original Works," that labeling does not defeat their claims.

Where a plaintiff alleges infringement of multiple distinct works, the plaintiff must specify exactly which works were infringed and plead the elements of infringement as to each. *See Cole* v. *John Wiley & Sons, Inc.*, No. 11 Civ. 2090 (DF), 2012 WL 3133520, at *12-13 (S.D.N.Y. Aug. 1, 2012) (dismissing copyright claims because plaintiff failed to plead each infringed work separately); *Dean* v. *Cameron*, 53 F. Supp. 3d 641, 647 (S.D.N.Y. 2014) (cautioning that when analyzing similarity, "a court must not 'aggregate' a plaintiff's work, but must consider each allegedly infringed work independently") (internal quotation omitted).

Plaintiffs meet that burden. Contrary to Defendants' assertion, Plaintiffs pleaded that Defendants infringed each of *Wiggle* and *Don Diablo* and did not merely allege infringement of some amorphous collective. More specifically, they name the two works of which they allege infringement; they set forth facts pertaining to each work's allegedly-infringed components; and they argue the means by which Defendants purportedly accessed each one. (*See, e.g.*, FAC ¶¶ 42, 67, 84, 103, 110 (detailing claims regarding *Wiggle*); *id.* ¶¶ 14, 57, 61, 65, 68-70, 82, 84-85, 110 (detailing claims regarding *Don Diablo*)). The specificity and differentiation of the allegations provided by Plaintiffs considerably exceed that found lacking in other cases. *Cf. Cole,* 2012 WL 3133520, at *12 (dismissing complaint where plaintiffs presented a set of 66 photographs and alleged access to the set as a whole but did not specify any specific photograph that was allegedly infringed); *DiMaggio* v. *Int'l Sports Ltd.*, No. 97 Civ. 7767 (HB), 1998 WL 549690, at *2 (S.D.N.Y. Aug. 31, 1998)

(dismissing complaint where plaintiff alleged "nebulous multiple images" were infringed upon but failed to state specifically which works were allegedly infringed).

As noted, Defendants' argument primarily focuses on Plaintiffs using the term "Original Works" to reference both allegedly infringed songs simultaneously. (*See* Def. Br. 10). This labeling does not in itself undercut Plaintiffs' claims, as Plaintiffs typically follow the term with an explanation of how the given allegation applies to each of the allegedly infringed works. (*See, e.g.,* FAC ¶¶ 66-68). Plaintiffs use the phrase "Original Works" when comparing the "signature melod[ies]" and "repetitive rhythm[s]" of each of the three songs, but the phrasing makes logical sense in that context given that Plaintiffs allege that they only came to own the *Don Diablo* copyright after its melody and rhythm were deemed to be unlawful copies of the corresponding portions of *Wiggle*.

Thus, to the extent Defendants argue that the Court should analyze the sufficiency of the claims as to each allegedly infringed work separately, rather than, for example, adding up the sum total of allegations and determining their sufficiency as if there were a single prior work, they are correct. But to the extent that they argue that Plaintiffs' use of a collective term in allegations that apply to both *Wiggle* and *Don Diablo* somehow disqualifies those allegations from consideration, they are not. Having settled this threshold matter, the Court turns to the merits.

16

### b.     The Court Takes Judicial Notice of *Wiggle*'s Copyright Registration

Defendants argue that Plaintiffs have failed to satisfy the threshold requirement of owning a valid and registered copyright.  *See Ritani*, 880 F. Supp. 2d at 441-42.  In particular, Defendants contest Plaintiffs' satisfaction of the copyright ownership prong as to *Wiggle*, noting that the FAC omits *Wiggle*'s copyright registration information.  (Def. Br. 14-16).[5]  As the Court will explain, it declines to dismiss the claim on this basis and takes judicial notice of *Wiggle*'s copyright information.

Section 411(a) of the Copyright Act provides that "no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title."  17 U.S.C. § 411(a)).  Therefore, "unless certain exceptions apply, copyright registration is a condition that a plaintiff 'must satisfy before filing an infringement claim and invoking the [Copyright] Act's remedial provisions.'"  *Thomas* v. *Carter*, 581 F. Supp. 3d 651, 655 (S.D.N.Y. 2022) (quoting *Reed Elsevier, Inc.* v. *Muchnick*, 559 U.S. 154, 158 (2010)).  Courts in this District have thus required plaintiffs in an infringement action to allege in the complaint that such registration has occurred.  *Architectural Body Rsch. Found.* v. *Reversible Destiny Found.*, 335 F. Supp. 3d 621, 643 (S.D.N.Y. 2018) ("[A] copyright infringement plaintiff must allege, among other things,

---

[5]     Defendants note their concern about *Don Diablo*'s registration status as well, but do not presently move on that issue.  (*See* Def. Br. 2 n.4 (explaining that Defendants "intend to revisit [the issue] after further investigation")).

'that the copyrights have been registered in accordance with the statute.'" (quoting *Gattoni* v. *Tibi, LLC*, 254 F. Supp. 3d 659, 661 (S.D.N.Y. 2017))).  This is "normally accomplished" by "identifying each allegedly infringed work" and "providing the copyright registration number for that work."  *Id.* at 645 n.15 (citing *Schneider* v. *Pearson Educ., Inc.*, No. 12 Civ. 6392 (JPO), 2013 WL 1386968, at *2 (S.D.N.Y. Apr. 5, 2013)).

Defendants are correct that the FAC does not include *Wiggle*'s copyright registration number.  Instead, it merely alleges the existence of such registration and states that *Wiggle* was copyrighted in 1979.  (FAC ¶ 31). Plaintiffs supply *Wiggle*'s registration number — PA0000049875 — in their opposition brief and seek leave to amend their pleading to include it.  (Pl. Opp. 3, 14-15).

Repleading is not necessary, however, because the Court can and does take judicial notice of *Wiggle*'s registration number and consequently finds that Plaintiffs have adequately alleged the existence of a valid copyright.  In adjudicating a motion to dismiss, a court may consider the pleadings, their exhibits, and documents of which the court may take judicial notice.  *L-7 Designs* v. *Old Navy LLC*, 647 F.3d 419, 422 (2d Cir. 2011).  The court may take judicial notice of any fact that "is not subject to reasonable dispute" and "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b)(2).  That includes "federal copyright registrations, as published in the Copyright Office's registry." *Island Software & Comput. Serv. Inc.* v. *Microsoft Corp.*, 413 F.3d 257, 261 (2d

Cir. 2005).  As is common practice, the Court takes judicial notice of *Wiggle*'s copyright registration.  *See, e.g., Peretti Acuti* v. *Authentic Brands Grp. LLC*, No. 20 Civ. 6570 (NRB), 2021 WL 3604382, at *2 (S.D.N.Y. Aug. 13, 2021), *aff'd sub nom. Peretti* v. *Authentic Brands Grp. LLC*, 33 F.4th 131 (2d Cir. 2022); *Goodman* v. *Universal Beauty Prod. Inc.*, No. 17 Civ. 1716 (KBF), 2018 WL 1274855, at *5 (S.D.N.Y. Mar. 9, 2018); *Grecco* v. *Assoc. Press*, No. 16 Civ. 6240 (VEC), 2017 WL 2913501, at *3 (S.D.N.Y. July 7, 2017) (all taking judicial notice of copyright registration numbers).  And in any event, any deficiency in Plaintiffs' allegations regarding *Wiggle*'s registration could be easily cured with repleading.

Plaintiffs will ultimately have to substantiate their allegations regarding *Wiggle*'s registration.  But at this stage in the proceeding, they have met their pleading burden, and the Court does not dismiss the *Wiggle*-related claims for failure to allege ownership of a valid copyright.

### c. Plaintiffs Adequately Allege a Striking Similarity Theory of Actual Copying

Having found Plaintiffs' pleading of copyright ownership to be sufficient, the Court turns to the second requirement of a copyright infringement claim, which requires an allegation of "unauthorized copying."  *See Jorgensen*, 351 F.3d at 51.  Recall that actual copying can be established through indirect evidence, by means of proof that (i) the composer of the challenged work had access to the challenged material and (ii) there are similarities between the two works that are probative of copying.  *Repp* v. *Webber*, 132 F.3d 882, 889 (2d

Cir. 1997).  Defendants argue that Plaintiffs have failed as a matter of law to allege access to *Wiggle* (Def. Br. 11-14), and in response to Plaintiffs' opposition argue that Plaintiffs have also failed to allege the "striking similarity" between *Wiggle* and *Levitating* that would excuse the access requirement (Def. Reply 7-10).  The Court agrees with Defendants on the former point, but disagrees on the latter:  Although Plaintiffs failed to allege access to *Wiggle*, their allegations render it plausible that the two works are strikingly similar.  Thus, Plaintiffs' failure to plead access is nonfatal, and their copyright claims as to *Wiggle* may proceed to discovery.[6]

### i.     Plaintiffs Fail to Allege Defendants' Access to *Wiggle*

Plaintiffs offer two theories of Defendants' access to *Wiggle*: a theory of corporate receipt through Sony's corporate umbrella (Pl. Opp. 12-14), and a wide dissemination theory (*id.* at 2, 6-8).  As the Court will explain, neither of these attempts alleges a "reasonable possibility" that Defendants had access to *Wiggle*.  *See Stallone*, 910 F. Supp. 2d at 686.

### (a)     Plaintiffs Do Not Adequately Allege Access to *Wiggle* Through Corporate Receipt

Plaintiffs' first attempt at pleading access relies on a "corporate receipt" theory that purports to show access through Sony's relationship with *Wiggle*. The corporate receipt doctrine allows a copyright plaintiff to allege access by pleading that the defendant's organization was in possession of or had received

---

[6]     Again, Defendants reserve their right to contest access as to *Don Diablo* at a later date. (Def. Br. 2, 10).

the allegedly infringed work.  *See, e.g., Hogan* v. *DC Comics*, 983 F. Supp. 82, 85 (N.D.N.Y. 1997) (finding access adequately pleaded where the plaintiffs alleged "that in August 1994, they submitted a draft copy of three issues of [the allegedly infringed work] to [defendant]").  "Bare" corporate receipt, the most forgiving version of this doctrine, allows a plaintiff to clear their pleading hurdle by alleging no more than that any person within the defendant's organization or enterprise received the work in some form.  *See, e.g., Bevan* v. *Columbia Broad. Sys., Inc.*, 329 F. Supp. 601, 609 (S.D.N.Y. 1971).  While courts in this Circuit may have previously accepted corporate receipt allegations of that level, *see id.,* they now, as noted, ask for more; plaintiffs are required to provide some "allegation of a nexus between the recipients and the alleged infringers," *Jorgensen*, 351 F.3d at 53; *see also Muller* v. *Twentieth Cent. Fox Film Corp.*, 794 F. Supp. 2d 429, 442 (S.D.N.Y. 2011), *aff'd sub nom. Muller* v. *Anderson*, 501 F. App'x 81 (2d Cir. 2012) (summary order) (dismissing complaint where "at best [plaintiff] alleges only 'bare corporate receipt' of the Screenplay by [defendants]"); *Price* v. *Fox Ent. Grp., Inc.*, No. 05 Civ. 5259 (SAS), 2007 WL 241389, at *6 (S.D.N.Y. Jan. 27, 2007) (same).

As it must at this stage of the litigation, the Court accepts Plaintiffs' factual allegations as true.  Plaintiffs allege that RCA Victor, *Wiggle*'s publisher, is now a Sony subsidiary (FAC ¶ 41); that CBS, S.A., *Don Diablo*'s publisher, is also a Sony subsidiary (*id.* ¶ 44); that Sony distributes royalties from *Don Diablo* to Plaintiff Linzer (*id.* ¶¶ 52-54); and finally, that by virtue of (i) RCA Victor and CBS, S.A. being Sony subsidiaries and (ii) Defendants being "part of

the Sony music family" (*id.* ¶ 110), Defendants had access to *Wiggle* and *Don Diablo*.

Fatal to Plaintiffs' theory is the fact that the allegations do not fully connect the dots between *Wiggle* and its alleged infringers.  That is, the FAC neither establishes a connection between Sony and the allegedly infringing work nor explains how Defendants Lipa, Hudson, Coffee, Kozmeniuk, Warner, or Universal are part of the "Sony music family" in any way, let alone a way that would allow the Court to infer their access to *Wiggle*.  Indeed, Plaintiffs merely allege that Defendant Lipa is the primary performing artist of, and claims copyright and authorship credit for, *Levitating*; Defendants Hudson and Kozmeniuk likewise claim copyright and authorship credit for *Levitating*; Defendant Coffee, Jr. has co-written a song with Lipa and is an alleged Bosé admirer; Defendant Universal claims copyright ownership for *Levitating (Da Baby)*; and Defendant Warner is the publisher of *Levitating*, *Levitating (Da Baby)*, and *Future Nostalgia*.  (FAC ¶¶ 33-36, 38-39).  And apparently as atmospherics for their claims, Plaintiffs assert that Defendants Sony, Universal, and Warner are the "Big Three" global music publishers.  (*Id.* ¶ 40).

Missing from all of this is any explanation of how Sony (or RCA Victor, its subsidiary with rights in *Wiggle*) is related to *Levitating* or any one of the other Defendants.  Failing to connect the alleged infringers even loosely to the original work forecloses this path to establishing access.  *See Clonus Assocs.* v. *Dreamworks, LLC*, 457 F. Supp. 2d 432, 439 (S.D.N.Y. 2006) ("In the Second Circuit, a plaintiff must generally prove that the creators themselves, and not

only an affiliated corporation, had access to the work that was allegedly copied." (citing *Jorgenson*, 351 F.3d at 59)); *Klauber Bros., Inc.* v. *URBN US Retail LLC*, No. 21 Civ. 4526 (GHW), 2022 WL 1539905, at *10 (S.D.N.Y. May 14, 2022) (deeming "vague" and "conclusory" allegations regarding the roles that the defendants played in any alleged infringement insufficient to support a corporate receipt theory); *Palmer Kane LLC* v. *Scholastic Corp.*, No. 12 Civ. 3890 (TPG), 2013 WL 709276, at *3 (S.D.N.Y. Feb. 27, 2013) ("[T]he complaint needs to contain some factual allegations to narrow the infringing acts beyond broad conclusory statements of infringement.").  The FAC fails to differentiate among the various Defendants' connections (or lack thereof) to Sony and RCA Victor, and fails to draw any connections between the Defendants and the alleged infringement, and as a result, Plaintiffs fail to plead access through a supposed corporate receipt.

What is more, even if Plaintiffs had explained *how* the non-Sony Defendants were "part of the Sony music family" alongside RCA Victor and CBS, S.A. (FAC ¶ 110),[7] that would not necessarily suffice to state a claim of corporate receipt, as simply locating two works under the same corporate umbrella does not in and of itself create a plausible allegation of access.  To the contrary, courts in this Circuit have frequently rejected allegations of access by reasoning that the alleged corporate relationships are too attenuated.

---

[7]     Although Plaintiffs list factual allegations that they would add to their pleading if granted leave to do so (Pl. Opp. 3-4), none of those proposed amendments is pertinent to the corporate receipt issue.

In *Silberstein* v. *Fox Entertainment Group, Inc.,* for example, a screenwriter claimed that alleged infringers had access to a film script that she pitched to employees of Fox Family Worldwide ("FFW"), which she claimed had "a relationship" with Fox Family Films, the producer of the allegedly infringing film.  424 F. Supp. 2d at 624-25.  In support of this theory, she cited only to a Form 10-K establishing that FFW was partially owned by Fox Entertainment Group, Inc., of which Fox Family Films was a wholly owned subsidiary.  *Id.* These allegations were insufficient to support a corporate receipt theory as a matter of law, as the plaintiff made no showing that, for instance, FFW and Fox Family Films shared an office building or had any employees in common, or that FFW had any involvement with the film's production.  *Id.*  The court specifically noted the "highly attenuated" corporate relationship and the "apparent lack of nexus" between the alleged recipients of the author's materials and the eventual film's creators.  *Id.* at 625.

Again, at least as set forth in the FAC, there is no corporate relationship between Sony/RCA Victor and Defendants, much less a "highly attenuated" one.  Weak as the link between the entities in *Silberstein* may have been, there was at least a link offered; here, nothing explains how the Sony corporate umbrella covers *Levitating*'s creators, and the allegations lack the specifics the *Silberstein* court requested.  While it is true that the *Silberstein* holding was issued in a different procedural posture and that the Court here must accept all of Plaintiffs' well-pleaded allegations as true, in terms of corporate ties

between *Levitating* and Sony, Plaintiffs do not provide anything for the Court to accept that would make their theory plausible.

Plaintiffs identify cases supposedly showing that corporate receipt allegations have a low pleading standard (Pl. Opp. 12-13), but those cases are not particularly helpful.  Not only do Plaintiffs begin with a cite to a case from outside this Circuit, but the court in that case actually declined to apply the corporate receipt doctrine.  (*Id.* at 12 (citing *Jones* v. *Blige*, 558 F.3d 485, 492 (6th Cir. 2009))).  Further, in so doing, that court cited a prior ruling in which it affirmed a district court's rejection of an attempted corporate receipt allegation by noting that the plaintiff's logic required an inferential "quantum leap."  *Blige*, 558 F.3d at 492-93 (citing *Glanzmann* v. *King*, No. 88 Civ. 70491 (DT), 1988 WL 212507, at *2 (E.D. Mich. Aug. 29, 1988), *aff'd and remanded*, 887 F.2d 265 (6th Cir. 1989))).

And while Plaintiffs' second cited case, *Bevan* v. *Columbia Broadcasting Systems, Inc.,* is from this District, the principle for which its 1971 holding is cited — that an allegation of "bare corporate receipt" is sufficient to establish a *prima facie* access claim — is taken from an out-of-Circuit decision that the Second Circuit has since explicitly declined to accept, including in its 2003 *Jorgensen* holding.  (Pl. Opp. 12 (citing *Bevan*, 329 F. Supp. at 609-10)).  *See Jorgensen*, 351 F.3d at 53 n.5 ("Although the *Bevan* court seemed to anticipate that the Second Circuit would eventually adopt the bare corporate receipt rule outlined in [a 1967 First Circuit case], we have not done so and we decline to do so today." (citation omitted)); *see also* WILLIAM PATRY, 3 PATRY ON COPYRIGHT

§ 9:30 ("The Second Circuit has expressly rejected *Bevan* ...  This does not mean that the corporate receipt doctrine always fails, only that the facts rarely support it.").  Plaintiff's remaining citations are similarly inapposite, as they place even more weight on *Bevan*'s shoulders and were decided prior to the Second Circuit's clarification of the standard in *Jorgensen*.  (See Pl. Opp. 12 (citing *DC Comics*, 983 F. Supp. at 85; *Merritt Forbes & Co.* v. *Newman Inv. Sec., Inc.*, 604 F. Supp. 943, 957 (S.D.N.Y. 1985))).

In sum, Plaintiffs ask the Court to make the type of inferential leap their cited authority cautions against, and fail to demonstrate a factual nexus between Sony and the creation of *Levitating*.  Their corporate receipt theory of access thus fails as a matter of law.

### (b) Plaintiffs Fail to Allege That *Wiggle* Was Widely Disseminated Such That Access Can Be Inferred

The Court now turns to Plaintiffs' attempt to plead that *Wiggle* has been widely disseminated such that Defendants' access to it may be properly inferred.  In alleging wide dissemination, Plaintiffs principally rely on *Wiggle* enjoying a "nine-week run" on the Dutch music charts from 1979 to 1980 and its "significant popularity in Dutch nightclubs" (FAC ¶ 43; Pl. Opp. 4-5),[8] but also raise several ancillary arguments including that *Wiggle* presently exists on several popular streaming sites (FAC ¶ 109); that *Wiggle*'s performers achieved

---

[8]     In a similar vein, Plaintiffs seek leave to amend their pleading to add that *Wiggle* charted for four weeks in Belgium in 1979 and that Defendant Lipa performed in the Netherlands "numerous times" between 2016 and the release of *Future Nostalgia*.  (Pl. Opp. 3-4).  Consideration of these additional facts would not change the Court's ultimate conclusion.

success in other, entirely separate musical endeavors (*see, e.g., id.* ¶¶ 67, 103-104, 111); and that Defendants admitted to seeking inspiration from prior eras' music.  None of these arguments is availing.

A work is "widely disseminated" if, and only if, it has had "considerable commercial success" or is "readily available on the market."  *Stallone*, 910 F. Supp. 2d at 686; *Silberstein*, 424 F. Supp. 2d at 627.  To be clear, however, the latter language has not been interpreted or applied to its literal bounds, particularly given the ease with which, in the digital age, content may be "readily available" in a technical sense while having actually achieved minimal popular success.  *See Clanton*, 556 F. Supp. 3d at 328 ("As a matter of law, the fact that the [allegedly infringed work] was posted on the internet is insufficient on its own to show wide dissemination." (internal quotation marks omitted)); *O'Keefe*, 590 F. Supp. 2d at 515 ("[T]he mere fact that [the plaintiff's] work was posted on the internet prior to the creation of defendants' work is insufficient by itself to demonstrate wide dissemination.").  "Were it otherwise, any work that any person uploaded publicly to the internet would have to be considered sufficiently 'widely disseminated' to give rise to an inference that every person had heard it — an inference that would be plainly unreasonable."  *Clanton*, 556 F. Supp. 3d at 328.  Instead, more than literal availability on the public marketplaces is required; given that "wide dissemination" is merely an alternative way to demonstrate access, courts have required allegations of dissemination that is so contemporaneously pervasive as to allow an inference

that it was "reasonabl[y] possible" for the defendant to encounter the prior work.  *Webb*, 910 F. Supp. 2d at 686-87.

Successful wide dissemination pleadings have thus offered facts suggesting that the alleged infringer had a realistic likelihood of coming across the allegedly-infringed work.  In *Acuff-Rose Music, Inc.* v. *Jostens, Inc.*, for example, the copyrighted work was a "top five" country hit at the exact time when, and in the same national market where, the defendant allegedly copied it.  988 F. Supp. 289, 293 (S.D.N.Y. 1997), *aff'd,* 155 F.3d 140 (2d Cir. 1998). The court's finding that access was sufficiently pleaded was premised on the song's contemporaneous popularity, which provided the defendant with "ample opportunity to see or hear [it]."  *Id.*  A comparable scenario does not exist here, as none of the allegations regarding *Wiggle*'s popularity leads the Court to believe it likely that any Defendant heard it.  None of the Defendants is alleged to be from — or live in — the Netherlands; none is alleged to have been musically active during *Wiggle*'s peak popularity; and Defendant Lipa was not even born until fifteen years *after Wiggle*'s two-month run on Dutch charts. *See Clonus*, 417 F. Supp. 2d at 251 ("Access to a copyrighted work may be inferred from the fact that a work was widely disseminated *at the time of copying*." (emphasis added)); *see also Guzman* v. *Hacienda Recs. & Rec. Studio, Inc.*, No. 12 Civ. 42 (GJC), 2014 WL 6982331, at *7 (S.D. Tex. Dec. 9, 2014) (concluding that a song was not "widely disseminated" in part because its peak popularity predated the alleged infringers' musical careers), *aff'd sub nom. Guzman* v. *Hacienda Recs. & Rec. Studio, Inc.*, 808 F.3d 1031 (5th Cir. 2015).

By comparison, Plaintiffs' suggestion that *Wiggle*'s mere availability on streaming sites renders it "widely disseminated" (*see* FAC ¶ 109; Pl. Opp. 7-8), runs counter to the clear weight of authority in this Circuit.  *See, e.g., Silberstein,* 424 F. Supp. 2d at 626-27 (dismissing complaint where plaintiff alleged the infringed work was published in industry magazines); *Clanton*, 556 F. Supp. 3d at 328 (finding wide dissemination insufficiently pleaded where plaintiff alleged that infringed work was posted on multiple hip-hop sites, was posted on YouTube, and "ha[d] been widely shared and listened to online and on social media").

Here, too, Plaintiffs' cited cases are largely unhelpful.  Plaintiffs cite *ABKCO Music, Inc.* v. *Harrisongs Music, Ltd.*, 722 F.2d 988, 998 (2d Cir. 1983), for the proposition that "access could be inferred where a song was on popular music charts for weeks" (Pl. Opp. 7), but a deeper dive into *ABKCO*'s facts makes clear the analogy's flaws.  For starters, the inference of access in *ABKCO* was made easier by the defendant explicitly admitting that he accessed the copyrighted work.  *ABKCO*, 722 F.2d at 997-98.  And in the very same year as that admitted access and only six years prior to the alleged infringement, the copyrighted work held the number one spot in the United States musical charts and enjoyed overseas success comparable to *Wiggle*'s.  *Id.*  There is not a strong comparison to be made between the marketplace presences of a recent domestic chart-topper and a song that briefly charted in the Netherlands over four decades prior to the alleged infringement.

Plaintiffs also rely on *Clonus Associates* v. *Dreamworks, LLC*, 457 F. Supp. 2d at 442, for the proposition that a work needs "only" be "readily available" on the marketplace for a party to show wide dissemination. (Pl. Opp. 7). But contrary to Plaintiffs' framing, the court in *Clonus* did not find the film at issue to be widely disseminated based on its existence in the public marketplace. *Clonus*, 457 F. Supp. 2d at 442. Instead, it found that while a reasonable fact-finder could find the defendant had a "bare possibility" of seeing the film, summary judgment was unwarranted due in part to the parties disputing the frequency with which the award-winning film was aired on TV. *Id.* Plaintiffs' third case, *Manno* v. *Campbell*, is likewise distinguishable in that the plaintiff there specifically alleged the size of her online following; alleged she had that following throughout the time period of defendant's alleged infringement; and alleged that she and the defendant had conducted their respective activities within the same market. No. 21 Civ. 10642 (DLC), 2022 WL 2237470 at *1, *4. Plaintiffs make no similar allegations as to *Wiggle*.

Plaintiffs next emphasize that Defendants have admitted to being inspired by older decades' musical stylings in creating the *Future Nostalgia* album. (*See, e.g.*, FAC ¶ 83). Even accepted as true, the allegation is not determinative because the cited statements are general and do not admit inspiration from *Wiggle* specifically. At most, these facts establish a "bare possibility" that Defendants accessed *Wiggle*, and not the "reasonable possibility" required to state a claim of infringement. *See Gal*, 518 F. Supp. 2d at 543; *see also Laureyssens* v. *Idea Grp., Inc.*, 964 F.2d 131, 140 (2d Cir.

1992) ("Copying may be established either by direct evidence of copying or by indirect evidence, including access to the copyrighted work[.]"), *as amended* (June 24, 1992); *Walker* v. *Time Life Films, Inc.*, 784 F.2d 44, 48 (2d Cir. 1986) ("Copying may be inferred where a plaintiff establishes that the defendant had access to *the copyrighted work*[.]" (emphasis added)); *Int'l Diamond Imps., Inc.* v. *Oriental Gemco (N.Y.), Inc.*, 64 F. Supp. 3d 494, 511 (S.D.N.Y. 2014) ("Access means that an alleged infringer had a 'reasonable possibility' — not simply a 'bare possibility' — of hearing [or seeing] the prior work." (alteration in original) (internal citation and quotation marks omitted)).  Providing a link between the defendants and a musical genre spanning multiple decades, within which the allegedly infringed song sits alongside countless others, simply cannot suffice.

Finally, Plaintiffs offer an array of allegations regarding the popularity of *other* works affiliated with *Wiggle*'s performers or authors and the career accolades they have collected.  (*See, e.g.,* FAC ¶¶ 27, 30, 67, 104).  While not always overtly stating that these facts contribute to wide dissemination, the implication seems to be that the musicians' general levels of fame or overall career accomplishments somehow nudge *Wiggle* toward wide dissemination. To the extent that is part of Plaintiffs' argument, it fails; for the same general reasons as noted above, the Court's analysis is properly limited to the copyrighted works that are the subject of this action, not unrelated accolades its creators may have collected.[9]

---

[9]     The same is true for Plaintiffs' allegations regarding personal and professional relationships between *Levitating*'s creators and artists who are acquainted with *Don*

In sum, while the Court appreciates *Wiggle*'s brief dominance of the Dutch dance scene, Plaintiffs present no allegations of the song's commercial success after 1980 or outside of the Netherlands.  Without such allegations, the Court cannot reasonably infer that *Levitating*'s creators had access to the prior work.  And none of the other indicators Plaintiffs offer of *Wiggle*'s popularity satisfies the "wide dissemination" threshold.

> ### ii.   Plaintiffs Sufficiently Allege Striking Similarity

Despite failing to plead access, Plaintiffs have alleged just enough facts to proceed to discovery on a theory of "striking similarity."  *See Jorgensen*, 351 F.3d at 56 (explaining that copyright infringement plaintiffs need not prove access if they can show that the works are "so strikingly similar as to preclude the possibility of independent creation").  To be sure, *proving* striking similarity as a factual matter will be a tall task; Plaintiffs will need to demonstrate not just that the works are similar, but that their similarities are "so striking so as to compel the conclusion that 'copying is the only realistic basis for them.'" *Krisko* v. *Marvel Ent., LLC*, 473 F. Supp. 3d 288, 305 (S.D.N.Y. 2020) (quoting *Gal*, 518 F. Supp. 2d at 543).  As the Court noted previously, a striking similarity between two works "in essence" means that independent creation is a virtual impossibility, 4 NIMMER ON COPYRIGHT § 13.02(B), and Plaintiff's ultimate burden here will be particularly high given the Court's recognition of the

---

*Diablo* singer Bosé.  (*See* FAC ¶¶ 74-81).  But because the instant motion concerns only *Wiggle*, the Court does not discuss those allegations in detail.

limited repertoire of notes and chords available to composers, *see Tisi,* 97 F. Supp. 2d at 548.

But while Plaintiffs' bar is a daunting one, it would be improper for the Court, at this stage, to foreclose the possibility of their clearing it.  As courts in this District have noted, "at the motion to dismiss stage, an allegation of striking similarity need only be *plausible* to survive."  *Krisko,* 473 F. Supp. 3d at 305 (emphasis added); *see also L.A. T-Shirt & Print, Inc.* v. *Rue 21, Inc.,* No. 16 Civ. 5400 (RA), 2017 WL 3575699, at *7 (S.D.N.Y. Aug. 17, 2017) (denying motion to dismiss where "it [was] at least plausible that Defendants' designs are 'strikingly similar' to the protected elements of Plaintiffs' works" and "it [was] plausible to infer that Defendants could not have independently created their works").  And while the Second Circuit has held that striking similarity can be foreclosed as a matter of law even at the pleading stage, it has indicated that such a determination is appropriate only when "'no reasonable jury, properly instructed, could find that the two works' are strikingly similar."  *Wager* v. *Littell,* 549 F. App'x 32, 34 (2d Cir. 2014) (summary order) (quoting *Peter F. Gaito Architecture, LLC,* 602 F.3d at 63-64).  The Court is unable to go so far in this case.

The recent approach taken by a sister court in this District is informative.  In *Krisko* v. *Marvel Entertainment, LLC,* Judge Woods found that a plaintiff plausibly alleged striking similarity, and thus established a *prima facie* case of copyright infringement, by listing a series of similarities between the two musical compositions at issue.  *See* 473 F. Supp. 3d at 304.  The

similarities included, among others, that the songs' melody, tempo, harmonization, and key were the same, and that both used a synthesizer and contained similar sound effects. *Id. Krisko* emphasized the high bar that the plaintiffs would need to meet at later stages of the litigation, contrasted that bar with the mere "plausibility" required on the motion to dismiss, and reasoned that the similarities alleged, taken together, sufficed to clear Rule 12(b)(6). *Id.* Importantly, the *Krisko* court gave particular weight to the melody-related allegations, noting that "numerous courts in this district have recognized that 'it is the melody which is the most important feature of the music.'" *Id.* at 305 (quoting *Siskind* v. *Newton-John*, No. 84 Civ. 2634 (TPG), 1987 WL 11701, at *5 (S.D.N.Y. May 22, 1987)).

Here, Plaintiffs provide side-by-side comparisons of each work's sheet music with respect to both a "repetitive rhythm" and a "signature melody." (FAC ¶¶ 85-93). They allege that *Levitating* "cop[ies] a repetitive rhythm" from *Wiggle* and detail the note structure of that rhythm while also noting that a bass drum accompanies the rhythm in both songs. (*Id.* ¶¶ 89-92 ("[T]he Infringing Works copy a repetitive rhythm from the Original Works, consisting of a dotted eighth note followed by a sixteenth note tied to an eighth note[.]")). Also importantly, Plaintiffs allege that the copied "signature melody" comprises approximately one-third of the total *Levitating* composition (*id.* ¶ 88), and provide a side-by-side comparison of the works' rhythms and the melodies, describing the latter as "nearly identical" and "essentially unchanged" (Pl. Opp. 2-3, 8).

The Court recognizes that the allegations of musical similarity that defeated the motion to dismiss in *Krisko* are a bit more robust than Plaintiffs provide here.  But given (i) the specificity and technical nature of these allegations; (ii) Plaintiffs' focus on the song's melodies, which the *Krisko* court emphasized in its analysis and described as music's "most important feature," 473 F. Supp. 3d at 304; and (iii) Plaintiffs' allegations that industry commentators and lay listeners alike have independently observed similarities between the works (FAC ¶¶ 13-15), the Court cannot confidently claim that no reasonable jury could find a strikingly similarity.

So too does the Court recognize Defendants' argument in their reply brief that Plaintiffs did not explicitly allege "striking similarity" in the FAC.  (Def. Reply 7-9).  It is correct that the FAC lacks that precise verbiage, but the Court takes the facts as pleaded, in conjunction with the arguments made in Plaintiffs' opposition brief grounded in those same facts, to place striking similarity at issue.  (*See, e.g.*, FAC ¶ 86 ("The signature melody appears in bars 10 and 11 of all three songs.  It then repeats, with some slight variation, in bars 12 and 13."); *id.* ¶ 87 ("The notes move in the same direction with evenly matched intervals or 'steps,' and almost identical rhythms[.]"); Pl. Opp. 8 ("As the [FAC]'s side-by-side music notation comparison among '*Don Diablo*' (DD), '*Wiggle*' (WG), and '*Levitating*' (LEV) demonstrates, these songs are nearly identical with regard to the 'signature melody' at issue.")).  It is unnecessary to require a repleading merely for Plaintiffs to attach a substituted phrase to the same collection of facts.  Defendants' cases in support of this argument are

unhelpful, as in none of the three was the issue that the plaintiffs failed to use the term "striking similarity"; the problems were instead that in each case the court found the respective set of facts to not add up to a plausible allegation. *See M.J.C.L.K., LLC*, 2022 WL 5108902, at *7; *Wager* v. *Littell*, No. 12 Civ. 1292 (TPG), 2013 WL 1234951, at *4 (S.D.N.Y. Mar. 26, 2013), *aff'd,* 549 F. App'x 32 (2d Cir. 2014) (summary order); *Peters* v. *West*, 776 F. Supp. 2d 742, 748 (N.D. Ill. 2011), *aff'd,* 692 F.3d 629 (7th Cir. 2012).

Finally, Defendants note that the works at issue here are not purely identical, and there is case law, albeit out-of-Circuit case law, where even completely identical works were not deemed strikingly similar.  (Def. Reply 8-9 (citing, *e.g.*, *Turner* v. *SAMSUNG Telecomms. Am., LLC*, No. 13 Civ. 629 (MWF), 2014 WL 11456606, at *7 (C.D. Cal. Aug. 4, 2014))).  While true, Defendants overlook *this* District's clear precedent that complete identity is not required to plausibly plead striking similarity.  *See L.A. T-Shirt & Print, Inc.,* 2017 WL 3575699, at *8 ("[T]he differences between [p]laintiffs' designs and [d]efendants' do not undermine the Court's conclusion that their works are strikingly similar[.]").  Similarly, Defendants' argument that "expert testimony is generally necessary to establish striking similarity" in technical areas such as music, (Def. Reply 7 (quoting *Gray* v. *Perry*, No. 15 Civ. 5642 (CAS), 2019 WL 2992007, at *3 (C.D. Cal. July 5, 2019)), does not aid their cause as much as undercut it, as that necessity is a core reason why this claim should proceed to discovery.

In sum, in light of Plaintiffs' allegations of precise similarities between *Levitating* and *Wiggle*, the Court cannot foreclose the possibility of Plaintiffs meeting the undoubtedly high bar of proving striking similarity.  Therefore, even though Plaintiffs' attempts at pleading access to *Wiggle* have failed, they have met their burden of alleging striking similarity.

## CONCLUSION

For the reasons detailed above, Plaintiffs have failed to allege a claim of copyright infringement as to *Wiggle* under an access theory, but are entitled to proceed to discovery on their striking similarity theory.  Consequently, Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is DENIED.  Defendants shall file an answer on or before **August 29, 2023**.  Additionally, the parties are ORDERED to confer and submit a proposed case management plan on or before **September 12, 2023**.

The Clerk of Court is directed to terminate the motion at docket entry 53.

SO ORDERED.

Dated:      August 8, 2023
            New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge