**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LARBALL PUBLISHING COMPANY, INC. and SANDY LINZER PRODUCTIONS, INC., | CASE NO. 22-CV-1872-KPF |
| Plaintiffs, | **ORAL ARGUMENT REQUESTED** |
| v. | |
| DUA LIPA, JONATHAN LYNDALE KIRK ("DA BABY") D/B/A BABY JESUS PUBLISHING, CLARENCE COFFEE, JR., SARAH HUDSON, STEPHEN KOZMENIUK, SONY MUSIC PUBLISHING (US) LLC, UNIVERSAL MUSIC CORPORATION, and WARNER RECORDS INC., | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

By:   MITCHELL SILBERBERG & KNUPP, LLP
      Christine Lepera (ctl@msk.com)
      Bradley Mullins (bym@msk.com)
      Elaine Nguyen (eln@msk.com)
      437 Madison Avenue, 25th Floor
      New York, NY 10022
      Tel: (212) 509-3900
      Fax: (212) 509-7239

      *Attorneys for Defendants Dua Lipa, Clarence Coffee, Jr., Sarah Hudson, Stephen Kozmeniuk, Sony Music Publishing (US) LLC, Universal Music Corporation, and Warner Records Inc.*

# TABLE OF CONTENTS

**Page**

I.     **PRELIMINARY STATEMENT** ........................................................................1

II.    **STATEMENT OF FACTS UNDERLYING THIS MOTION** .......................3

    A.    Plaintiffs and Plaintiffs' Compositions.....................................................3

    B.    The Allegedly Infringing Work(s)..............................................................4

    C.    Plaintiffs' Designated Experts and Their Admissions..............................4

    D.    The Unrebutted Testimony of Defendants' Expert Dr. Lawrence Ferrara.............8

III.   **PROCEDURAL HISTORY**........................................................................11

    A.    Defendants' Motion to Dismiss................................................................12

    B.    The Parties' Proposal to Bifurcate ..........................................................12

IV.    **ARGUMENT** ...............................................................................................13

    A.    Standard of Review ..................................................................................13

        1.    Summary Judgment Standard.................................................13

        2.    Summary Judgment Standard In Music Copyright Infringement Actions ...............................................................14

    B.    Plaintiffs Cannot Establish Copyright Infringement As A Matter Of Law. ..........16

        1.    Plaintiffs' Burden To Identify Probative and Substantial Similarities In Protectable Expression Supported By A Musicological Analysis Through Expert Testimony Was Not Met .................................................16

        2.    Defendants Are Entitled To Summary Judgment As To *Wiggle*...............19

        3.    The Undisputed Facts Establish That *Levitating* And *Don Diablo* Are Not Substantially Similar In Protectable Expression ...............................20

    C.    Plaintiffs' Declaratory Relief and Accounting Claims Must Be Dismissed .........25

V.     **CONCLUSION** ............................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ...........................................................................................13

*Arnstein v. Edward B. Marks Music Corp.*,
82 F.2d 275 (2d Cir. 1936) ................................................................................16

*Baiul v. NBC Sports*,
708 F. App'x 710 (2d Cir. 2017) .......................................................................25

*Bryant v. Maffucci*,
923 F.2d 979 (2d Cir. 1991) ..............................................................................13

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ...............................................................................13, 14, 20

*Clanton v. UMG Recordings, Inc.*,
556 F. Supp. 3d 322 (S.D.N.Y. 2021) ...............................................................15

*Dressler v. MV Sandpiper*,
331 F.2d 130 (2d Cir. 1964) ..............................................................................13

*El-Nahal v. Yassky*,
835 F.3d 248 (2d Cir. 2016) ..............................................................................13

*Est. of Detwiler v. Offenbecher*,
728 F. Supp. 103 (S.D.N.Y. 1989) .....................................................................14

*Evans v. Mentor Corp.*,
2005 WL 1667661 (E.D. Va. June 28, 2005) .....................................................19

*Farkas v. Addition Mfg. Techs., LLC*,
952 F.3d 944 (8th Cir. 2020) .............................................................................14

*Francescatti v. Germanotta*,
2014 WL 2767231 (N.D. Ill. June 17, 2014).....................................................22

*Frisby v. Sony Music Ent.*,
2021 WL 2325646 (C.D. Cal. Mar. 11, 2021), *aff'd in part, dismissed in part*, 2022
WL 2045340 (9th Cir. June 7, 2022).................................................................17

*Gray v. Hudson*,
28 F.4th 87 (9th Cir. 2022) ................................................................................21

*Gray v. Perry*,
2020 WL 1275221 (C.D. Cal. Mar. 16, 2020)..............................................16, 21

**TABLE OF AUTHORITIES**
<u>(continued)</u>

<u>Page(s)</u>

*HEALTHeSTATE, LLC v. United States*,
    168 Fed. Cl. 624 (2023) ........................................................................................17

*Hines v. BMG Rts. Mgmt. (US) LLC*,
    -- F. Supp. 3d --, 2023 WL 6214264 (S.D.N.Y. Sept. 25, 2023)...........................................21

*In re Plavix Mktg., Sales Pracs. & Prod. Liab. Litig. (No. II)*,
    2017 WL 3531684 (D.N.J. Aug. 17, 2017) ...........................................................19

*Intersong-USA v. CBS, Inc.*,
    757 F. Supp. 274 (S.D.N.Y. 1991) ................................................................20, 22

*Johannsongs-Publ'g, Ltd. v. Lovland*,
    2021 WL 5564626 (9th Cir. Nov. 29, 2021) ........................................................17

*Kalra v. Adler Pollock & Sheehan, P.C.*,
    2022 WL 280180 (D. Conn. Jan. 31, 2022) .........................................................18

*Kreppel v. Guttman Breast Diagnostic Inst., Inc.*,
    1999 WL 1243891 (S.D.N.Y. Dec. 21, 1999) ......................................................18

*Major League Baseball Prop. v. Salvino, Inc.*,
    542 F.3d 290 (2d Cir. 2016) ...........................................................................14

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) ....................................................................................14

*McDonald v. West*,
    138 F. Supp. 3d 448 (S.D.N.Y. 2015), *aff'd*, 669 F. App'x 59 (2d Cir. 2016) ...............15, 24

*McRae v. Smith*,
    968 F. Supp. 559 (D. Colo. 1997) .....................................................................17

*Nichols v. Am. Risk Mgmt.*,
    2000 WL 97282 (S.D.N.Y. Jan. 28, 2000) ..........................................................18

*Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*,
    602 F.3d 57 (2d Cir. 2010) .........................................................................14, 15

*Raskin v. Wyatt Co.*,
    125 F.3d 55 (2d Cir. 1997) ............................................................................14

*SAS Inst. Inc. v. World Programming Ltd.*,
    496 F. Supp. 3d 1019 (E.D. Tex. 2020), *aff'd*, 64 F.4th 1319 (Fed. Cir. 2023).....................17

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Savant Homes, Inc. v. Collins*,
    809 F.3d 1133 (10th Cir. 2016) ............................................................................16

*Selle v. Gibb*,
    741 F.2d 896 (7th Cir. 1984) ..........................................................................16, 17

*Sheldon Abend Revocable Trust v. Spielberg*,
    748 F. Supp. 2d 200 (S.D.N.Y. 2010) ..................................................................15

*Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*,
    952 F.3d 1051 (9th Cir. 2020) ........................................................................20, 21

*Structured Asset Sales, LLC v. Sheeran*,
    673 F. Supp. 3d 415 (S.D.N.Y. 2023) ............................................................16, 21

*Tisi v. Patrick*,
    97 F. Supp. 2d 539 (S.D.N.Y. 2000) ......................................................15, 16, 17

*U.S. Bank Nat. Ass'n ex rel. Lima Acquisition LP v. PHL Variable Ins. Co.*,
    2014 WL 998358 (S.D.N.Y. 2014) .......................................................................25

*Velez v. Sony Discos*,
    2007 WL 120686 (S.D.N.Y. 2007) .......................................................................16

*Walkie Check Prods., LLC v. ViacomCBS Inc.*,
    2022 WL 2306943 (Jun. 26, 2022) .......................................................................15

*Weber v. Geffen Records, Inc.*,
    63 F. Supp. 2d 458 (S.D.N.Y. 1999) ....................................................................25

**OTHER AUTHORITIES**

3 Nimmer on Copyright § 12.11 (2019) .......................................................................16

Fed. R. Civ. P.
    56 .............................................................................................................................1
    56(c) ......................................................................................................................13

Fed. R. Evid.
    702 ...........................................................................................................................2
    801 .........................................................................................................................18

Defendants Dua Lipa, Clarence Coffee, Jr., Sarah Hudson, Stephen Kozmeniuk, Sony Music Publishing (US) LLC, Universal Music Corporation and Warner Records Inc. (collectively "Defendants") submit this Memorandum in support of their Motion, pursuant to Fed. R. Civ. P. 56, for summary judgment dismissing the claims of Larball Publishing Company, Inc. and Sandy Linzer Productions, Inc. ("Plaintiffs"), as Plaintiffs cannot meet their burden or raise a genuine issue of fact as to the alleged infringement of their copyrighted musical compositions *Wiggle and Giggle All Night* ("*Wiggle*") and *Don Diablo* ("*Don Diablo*") (together, "Plaintiffs' Works") by Defendants' musical composition and recording, *Levitating*.[1]

## I.       PRELIMINARY STATEMENT

In this case, Plaintiffs have asserted copyright infringement claims improperly seeking to monopolize one of the most commonplace and rudimentary elements of music: the use of a minor scale. Plaintiffs' expert, Barbara Salani ("Salani"), literally drew a box around the *only* music in *Levitating* admittedly at issue in this case: the use of repeated 16th notes descending stepwise down a minor scale. (*See* SUF 26-28, 33; Decl. of Christine Lepera, ("Lepera Decl.") Exs. 8-9.)



A minor or major scale, comprised of seven notes, is not copyrightable and cannot be monopolized; the U.S. Copyright Office makes that clear, as do numerous judicial holdings discussed below. It is undisputed that each note in a scale has a scale step number assigned to it, from 1-7. It is undisputed that the above phrase in *Levitating* descends down scale steps 5-4-3-2-1 on a B minor scale (5 out of the 7 scale steps). Each of those five scale steps is simply repeated.

---

[1] This Motion is based on this Court's Order (Dkt. 87) bifurcating discovery to allow an expert discovery phase and summary judgment directed at the music issues underlying Plaintiffs' claims.

Critically, Salani was compelled to admit that this transcribed phrase in *Levitating* was nothing more than a stepwise descent down a minor scale, ending on the root "1" step (a frequent resolution). She further admitted that even though the scale steps repeated and were on a 16th note rhythm, it was still, fundamentally, a scale.[2]

It is also undisputed and unrebutted that a musical phrase descending stepwise down a minor (or major) scale ***on repeated 16th notes***—*i.e.*, the length of the phrase in *Levitating*—is unsurprisingly common in music literature, including in basic piano exercise books from over 100 years ago. Salani admitted such patterns could be freely used and published in exercise books, and she even had her own piano students play such scale-based phrases on different keys. Salani further admitted the phrase transcribed above from *Levitating* is undisputedly different from the descending scale phrase in *Wiggle* and *Don Diablo*. Among other things, in *Levitating*, the descending scale moves along steps 5-4-3-2-1 of a minor scale, while in *Wiggle* and *Don Diablo,* the descending scale moves along steps 3-2-1-7-6 of a major scale.

As to *Wiggle* specifically, Plaintiffs can raise no proof in support of their claim of infringement ***because they did not even conduct a musical comparison with Levitating***. This Court found that claim hung essentially by a thread under the high bar of ***striking*** similarity given the lack of sufficient access allegations. Dkt. 72. Plaintiffs have cut off that thread completely by failing to offer ***any*** expert musical comparison of *Wiggle* and *Levitating*. Plaintiffs' experts instead try to conflate *Wiggle* as supposedly "identical" to *Don Diablo*—and bootstrap it onto a comparison of *Don Diablo* to *Levitating*—but this tactic backfired. At her deposition, Salani was compelled to admit that *Wiggle* and *Don Diablo* are not identical with respect to the phrase at

---

[2] Defendants are separately moving to exclude both of Plaintiffs' experts under *Daubert* and its progeny and the amended Rule 702 of the Federal Rules of Evidence. However, solely for purposes of this Motion, Defendants assume that the testimony of both of those individuals will be allowed, and indeed cite to it, relying on their admissions and methodological failings in support of this Motion.

issue and instead reflect 13 differences. Thus, there can be no question that Plaintiff cannot prove any similarity—much less *striking* similarity—between *Wiggle* and *Levitating*.

In all events, Plaintiffs cannot prove copying or substantial similarity in protectable expression with respect to *Don Diablo* (or *Wiggle*) based on their admissions as to the nature of the music at issue in *Levitating.* As discussed in detail below, Plaintiffs' experts' admissions establish that the phrase at issue in *Levitating* is comprised of a basic minor scale and that there are numerous differences between it and the descending major scale pattern in *Don Diablo*.[3] Unrebutted, Defendants' expert (who followed proper methodology and conducted a thorough comparison and prior art search) confirmed that the similarity at issue between *Levitating* and either of Plaintiffs' Works is the unremarkable use of a descending scale pattern of repeated 16th notes—with differences. Defendants' expert also detailed the common nature of such a phrase, illustrating that undisputed fact with numerous prior art works.

As it is axiomatic that copyright infringement cannot be found absent copying of and substantial similarity in *protectable expression*. Based on undisputed facts, Plaintiffs cannot, as a matter of law, meet their burden to establish that *Levitating* infringed either *Wiggle* or *Don Diablo*. Summary judgment should be entered for Defendants.

## II.     STATEMENT OF FACTS UNDERLYING THIS MOTION[4]

### A.     <u>Plaintiffs and Plaintiffs' Compositions</u>

Plaintiffs Larball Publishing Company, Inc., ("Larball") and Sandy Linzer Productions ("SLP") claim to co-own *Wiggle*, authored by Sandy Linzer ("Linzer") and L. Russell Brown

---

[3] Plaintiffs' experts failed to follow the proper methodology established by the courts requiring a plaintiff to filter out unprotectable expression on any claim of substantial similarity.

[4] The concurrently filed Statement of Undisputed Facts ("SUF"), supported by the evidentiary record, contains all of the material undisputed facts upon which Defendants rely; this statement of facts is drawn therefrom in a summarized fashion, consistent with this Court's rules.

("Brown"). SUF 1. *Wiggle* was recorded by the musical artist Cory Daye, which was featured on the album entitled *Cory and Me* and released in 1979. SUF 2.

In 1983, Larball initiated an infringement action relating to *Don Diablo*, a song recorded by Miguel Bosé in 1980. SUF 3-4. Subsequently, Plaintiffs were assigned the copyright to the *Don Diablo* composition. SUF 5. Both *Wiggle* and *Don Diablo* are in major keys. SUF 6.[5]

## B.     The Allegedly Infringing Work(s)

*Levitating*, was released in 2020 on Dua Lipa's album titled *Future Nostalgia*. SUF 7. Each of the Defendants named in this action is either a co-writer of, or otherwise has exclusive rights to exploit, copyrights in, *Levitating* or its remix, *Levitating (Da Baby)*.[6] SUF 8-9. Both *Levitating* and *Levitating (Da Baby)* are in minor keys. SUF 10.

## C.     Plaintiffs' Designated Experts and Their Admissions

Plaintiffs served reports of two individuals designated as experts, Salani and Charles Calello ("Calello").[7] SUF 11. As detailed below, Plaintiffs' experts failed to raise any material issue of fact that could dispute that the music claimed in common between their works and *Levitating* is commonplace expression, and failed to rebut the irrefutable facts set forth in the reports of Defendants' expert, Dr. Lawrence Ferrara, that demonstrate that conclusion through unrebutted thorough analysis and depiction of unrebutted prior art therein. Plaintiffs' experts were also compelled to make several critical admissions when deposed that soundly defeat Plaintiffs' infringement claims.

---

[5] Plaintiffs allege ownership solely of the *Wiggle* and *Don Diablo* musical compositions, not of any sound recordings that embody performances of those compositions. *See* SUF 1-8.

[6] Neither of Plaintiffs' experts offered any analysis or opinion concerning *Levitating (Da Baby)*, which contains no musical expression at issue not already in *Levitating*. SUF 10, 20.

[7] As discussed in Defendants' *Daubert* Motion, filed concurrently with this Motion, neither Salani nor Calello have the requisite experience in analytical musical dissection and theory. Calello also has a decades-long relationship with one of the Plaintiffs, Linzer, and recruited Salani in this case, whose first exposure to the case was through her reviewing Calello's draft expert report.

***First***, both Salani and Calello admittedly failed to provide any direct comparative analysis of *Wiggle* and *Levitating*. SUF 12-14. Salani's excuse was that *Don Diablo* and *Wiggle* had an "identical nature" in the relevant measures, a conclusion she based on Plaintiffs' ownership of *Don Diablo* through litigation learned only via conversation with Calello. SUF 15-16. When deposed, however, Salani had to retract that conclusion, and identified 13 differences in the relevant four-measure phrases of *Don Diablo* and *Wiggle*, none of which were identified in her report. SUF 17-19. Salani testified her incorrect statement that *Wiggle* was identical to *Don Diablo* should be removed from her report (SUF 17; *see* Lepera Decl., Ex. 5).

***Second***, Plaintiffs' experts conceded that the sole musical phrase at issue in *Levitating* is a sequence of repeated 16th notes in a descending scale, which is heard in the verse section of *Levitating*. SUF 25-29. Salani described this in her Report (the "Salani Report") as "four repeated 16th notes for every beat, moving in a descending motion," as reflected in the red boxes in the transcription below; the top staff line is for *Don Diablo* and the bottom staff line is for *Levitating* (SUF 26-27):



Figure 3: Comparison between DD and LEV: the matching melodic motives in common

***Third***, Salani conceded her analysis contained numerous errors and omissions with respect to her Figure 3 above, including the omission of significant differences between *Don Diablo* and *Levitating* in the relevant measures.[8] Salani also contradicted her own report, ultimately

---

[8] These errors and omissions apply to all of her figures comparing *Don Diablo* to *Levitating* reflecting these measures. *See* SUF 26-28.

conceding that *Don Diablo* and *Levitating* do not open with descending patterns of 16th notes, and instead have introductions, each of different lengths, although her transcriptions erroneously suggested them to have the same length. SUF 30. Ultimately, Salani edited her own Figure 3 as set forth below, admitting that the five groupings of repeated notes in *Levitating* are simply scale steps 5-4-3-2-1 descending down a minor scale (SUF 31, 33),[9] and that the repeated 16th notes at issue in the verse of *Don Diablo* instead descend along steps 3-2-1-7-6 of a major scale (SUF 34). These differences, not addressed in her report, were brought out at the deposition, through Salani's annotations on her Figure 3 below (*see* SUF 34):



By these red-pen annotations, Salani also conceded that the modalities of the scales in the relevant verse portions of *Don Diablo* and *Levitating* placed in red boxes, are different—as are the scale steps. She wrote out the different scales and scale steps as reflected above. SUF 35. She also admitted that she had erroneously identified the verse in *Levitating* as starting on measure 10 (to align it with *Don Diablo*); she scratched that out and the other erroneous measure numbers and wrote in the correct measure numbers starting with measure "5" and following with measures 6-8 below the staff. *See* SUF 34. She also conceded under oath that *Don Diablo* (like *Wiggle*), contains a second phrase of repeated 16th notes starting on its measure 12, which phrase is (as she

---

[9] Salani admitted that there is an inherent tendency to resolve down to a scale step 1 as that is the pitch center or "tonic" of the scale. SUF 32.

wrote out) entirely different in both pitches and scale steps as compared to the corresponding set of 16th notes in the red box in *Levitating* below. SUF 36-38.

*Fourth,* and ultimately, Plaintiffs' experts made numerous additional concessions about the commonplace nature of the music at issue.[10] There is no dispute that major and minor scales each have seven notes (SUF 39), and that music scales go one of two ways—up or down (SUF 40). As conceded by Salani, going "up and down a scale" is a "rudimentary process." SUF 41. Further, 16th notes are one of the basic rhythmic values in 4/4 time. SUF 43. It is common for piano students (including Salani's own) to practice scales repeating the notes, including on 8th and/or 16th notes. SUF 42. C.L. Hanon's "The Virtuoso Pianist" (1900) contains repeated 16th-note exercises including going up a scale, which Salani testified his publisher is free to sell and anyone can use. SUF 44. Transposed into C major and A minor, respectively, the descending five-note groupings at issue in *Don Diablo* and *Levitating* can be seen for their simplicity by playing them on all white keys: A, B, C, D, and E. SUF 45. Stating the obvious, Salani was compelled to acknowledge that designing this sequence of five notes "is not that complicated." *Id.* These factual concessions, coupled with the undisputed admissions that the music at issue in *Levitating* is a descending minor scale (5-4-3-2-1) on repeated 16th notes—with differences from *Don Diablo*'s major-scale descending pattern—establish under governing law that Plaintiffs' claim cannot be sustained as its not based on Defendants' use of any protectable expression owned by Plaintiffs. The commonplace nature of the music at issue is even further established by the unrebutted conclusions and analysis by Dr. Lawrence Ferrara.

---

[10] Neither the Calello nor Salani Reports properly analyze or reflect any independent investigation into extant music literature to filter out any of the elements of music at issue that comprise commonplace expression. SUF 21. Nor do their reports contain any discussion of the overall melodies of the compositions (beyond the verse passage they focus on), SUF 22, any discussion comparing the compositions' overall harmonies, SUF 23, or, with the exception of a "four-on-the-floor rhythm," any discussion of the compositions' overall rhythms (SUF 24).

**D.      The Unrebutted Testimony of Defendants' Expert Dr. Lawrence Ferrara**

On December 22, 2023, Defendants served three reports from their expert, Dr. Lawrence Ferrara: an affirmative report, and separate rebuttals to the Salani and Calello Reports.[11] SUF 46. Dr. Ferrara is a musicologist on the full-time faculty at New York University where his rank is Professor of Music, and title is Director Emeritus of all studies (B.M. through Ph.D.) in Music and the Performing Arts at NYU's Steinhardt School. SUF 47. Dr. Ferrara has been an active music copyright consultant for record companies, music publishers, motion picture companies, artists, songwriters and others in the United States and abroad for over 25 years. SUF 48.

Dr. Ferrara conducted a comparative analysis of *Wiggle*, *Don Diablo*, and *Levitating* in their entireties, by transcribing the works into musical notation,[12] reviewing and transcribing prior art, and identifying commonplace expression present in prior or relevant art (the "Ferrara Report"). SUF 49. The Ferrara Report examined the elements of structure, harmony, rhythm, melody, and lyrics in comparisons of (1) *Wiggle* with *Levitating*, and (2) *Don Diablo* with *Levitating*. SUF 50.

Based on his analyses, Dr. Ferrara concluded that there were no significant structural, harmonic, melodic, rhythmic, or lyrical similarities, either individually or in the aggregate, between *Wiggle* and *Levitating*. SUF 54-56, 58-62. There are multiple structural differences between *Wiggle* and *Levitating* in terms of the placement and duration of various commonplace structural elements, such as their respective introductions, verses, choruses, and bridges. SUF 55-

---

[11] Defendants also retained another expert Paul Geluso, who provided an expert report on limited production related issues unrelated to the grounds for this motion; he was deposed on February 2, 2024.

[12] There are two principal ways of comparing musical works in different modes (*i.e.*, major and minor) by transposing them into comparable keys: "parallel" keys and "relative" keys. Using <u>parallel keys</u>, works are transposed to have the same pitch center. Using <u>relative keys,</u> the works are transposed into the corresponding "relative" keys in major and minor modes. SUF 51. Dr. Ferrara supplied transcriptions in both parallel keys and relative keys; a feature of using parallel keys to compare melodies in major and minor keys is that the melodic function of corresponding scale degrees is maintained. SUF 52-53.

56. *Wiggle* and *Levitating* are both in 4/4 meter, also known as "common time," which is a commonplace musical building block shared by countless musical compositions over centuries. SUF 57. The similarity between the verse portions of *Levitating* and *Wiggle* consists of repeated notes descending stepwise down a scale in which notes are iterated four times on each scale degree, but they are different scale degrees on different scales, with differences of contour and rhythm. SUF 62-67. And there are differences between the developments of even that verse melody of *Wiggle* as compared with the verse melody of *Levitating*. SUF 65-67.

Dr. Ferrara similarly concluded that there were no significant structural, harmonic, melodic, rhythmic, or lyrical similarities, either individually or in the aggregate, between *Don Diablo* and *Levitating*. SUF 69. There are multiple structural differences between *Don Diablo* and *Levitating* in terms of the placement and duration of various building block structural elements, such as their respective introductions, verses, choruses, and bridges. SUF 70. The introduction section of *Levitating* is significantly different from the introduction of *Don Diablo*, both in terms of structure and expression. SUF 71. The chord progressions and harmonic rhythms in *Levitating* are significantly different from those in *Don Diablo*. SUF 72. *Don Diablo* and *Levitating* are unremarkably in 4/4 meter, *i.e.*, "common time." SUF 73. The lyrics in *Don Diablo* and *Levitating* are significantly different; as with *Wiggle,* the only lyrical similarity is a commonplace patter-style "performance" of different lyrics in a portion of their verses, a standard device in songs with rapid, repeating notes. SUF 59-60, 74. While there are no notable rhythmic similarities, there are significant differences between the drumbeats in *Levitating* and those in *Don Diablo*. The only rhythmic similarity in the drumbeats and percussion rhythms in the works is four quarter-beats per bar on the kick (bass) drum, termed a "four-on-the-floor" rhythm, which is a commonplace and basic rhythm pattern popularized in disco music of the 1970s, before the release of Plaintiffs' Works. SUF 75.

Ultimately, the similarity between the verse portions of *Levitating* and *Don Diablo* consists of a stepwise descending scale in which five notes are iterated four times on each scale degree, which is a commonplace musical element. SUF 76. But as with *Wiggle*, the verse melodies of *Don Diablo* and *Levitating* occur in different modalities (major vs. minor) and on different scale degrees. SUF 77. There are also differences between the developments of the verse melodies of *Don Diablo* as compared with the verse of *Levitating*. SUF 78. Comparing the verse melodies of *Levitating* and *Don Diablo* in parallel keys, ***45*** out of 46 of the notes (crossed out) are not the same in pitch, scale degree, rhythmic duration and metric placement. SUF 79.[13]



Viewing the works in their totalities, Dr. Ferrara concluded *Levitating* to be significantly different from both *Wiggle* and *Don Diablo*. SUF 68, 81. He also identified at least ***nine*** works of prior art that contained similar descending melodies based on patterns of repeated 16th notes moving down a scale, illustrative of its commonplace expression. SUF 82. These were in diverse genres, including popular works composed and released in several countries, a scouting song, and piano and trumpet exercises from the nineteenth century, including one by Carl Czerny (renowned for his 19th-century piano exercise books, and whose work Salani conceded was

---

[13] Comparing the verse melodies of *Levitating* and *Don Diablo* in relative keys, even when disregarding the different scale degrees (which are almost completely different), 25 out of 46 of the notes are not the same in pitch, scale degree, rhythmic duration and metric placement leaving only a descending scale on repeated notes, again with different scale degrees. SUF 80.

public domain) featuring the precise descending pattern of 16th notes. *See* SUF 83-120. *Contestación a La Casa en el Aire*, released in 1958, and popularly re-recorded and released in the 1970s, contains a vocal melody comprised of five groups of four repeated 16th notes (20 notes) moving stepwise down the scale that is almost identical to that in *Levitating*. SUF 83-88. Similarly, *El Cafetal – El Caiman* (1975) contains four groups of descending 16th notes moving in a descending scale. SUF 89-91. *Ging Gang Goolie*, a scouting song created no later than in 1920, contains sets of four repeated 16th notes that descend along scale degrees 5-4-3-2 before descending to scale degree 1 in the next measure (SUF 108-110); and the bridge section of *Se Dice De Mi* (1943) is in a major key, like the verse melodies of *Wiggle* and *Don Diablo*, and contains a descending sequence on the scale degree pattern 3-2-1-7-6, where all except the final note are groups of four repeated 16th notes. SUF 111-114. Even the 1978 hit song *Stayin' Alive* from the *Saturday Night Fever* soundtrack, which predated *Wiggle* by one year, featured a rapidly sung descending pattern plus a "four-on-the-floor" disco beat. SUF 102-107. Beyond such pre-existing works, Dr. Ferrara also noted at least 11 popular songs released after 1979 but before the release of *Levitating* that reflected the commonplace nature of songs featuring repeated notes descending stepwise, often in a "patter song" style, including a 2016 Ricky Martin song and a 2003 song recorded by the Isley Brothers. SUF 121-122.

## III.    PROCEDURAL HISTORY

Plaintiffs filed this action on March 4, 2022. The Complaint alleged *Levitating* infringed both *Wiggle* and *Don Diablo* and asserted claims for copyright infringement, declaratory relief, and an accounting. Dkt. 1. The First Amended Complaint was filed on October 28, 2022, asserting the same claims for relief. Dkt. 51 ("FAC").

### A. **Defendants' Motion to Dismiss**

On November 30, 2022, Defendants moved to dismiss the FAC as to *Wiggle* on grounds that, *inter alia*, it failed to plausibly allege that the writers of *Levitating* had access to *Wiggle*. Dkt. 54. The Court held that Plaintiffs failed to allege access through corporate receipt or wide dissemination, but alleged "just enough facts" to survive dismissal under a claim of "striking similarity." Dkt. 74, at 32. The Court noted, however, that "*proving* striking similarity as a factual matter" would be "a tall task," since it would require Plaintiffs to "demonstrate not just that the works are similar, but that their similarities are 'so striking' so as to compel the conclusion that 'copying is the only realistic basis for them,'" since "striking similarity between two works 'in essence' means that independent creation is a virtual impossibility." *Id.* (emphasis in original) (citations omitted). As the Court noted, "Plaintiffs' ultimate burden … will be particularly high given the Court's recognition of the limited repertoire of notes and chords available to composers." *Id.* (citing *Tisi v. Patrick*, 97 F. Supp. 2d 539, 548 (S.D.N.Y. 2000)).

### B. **The Parties' Proposal to Bifurcate**

The parties thereafter jointly proposed a scheduling order under which discovery would be bifurcated, commencing with expert testimony and then summary judgment solely on music issues, "i.e., ***whether or not there are any probative substantial or striking similarities in the music at issue which constitute protectible expression***." Dkt. 86 at 3-4 (emphasis added). On September 21, 2023, the Court entered the parties' case management plan and proposed order. Dkt. 87 ("Sched. Order"). Beginning in November 2023, the parties exchanged expert reports in accordance with the entered schedule, followed by expert depositions, which concluded on February 2, 2024. *Id.* at 4; Lepera Decl. ¶¶ 3-4, 14-15, 18, 35-36. A schedule for the instant summary judgment briefing was then set. Dkt. 95, 97.

## IV.    ARGUMENT

### A.    <u>Standard of Review</u>

#### 1.    **Summary Judgment Standard**

Summary judgment is appropriate where, drawing all reasonable inferences in favor of the nonmoving party, the evidence demonstrates that "there is no genuine issue as to any material fact and [that] the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "Once the movant has established a prima facie case demonstrating the absence of a genuine issue of material fact, the nonmoving party must come forward with enough evidence to support a jury verdict in its favor." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991). The nonmovant cannot defeat the motion simply by presenting "metaphysical doubt" regarding the facts or "conjecture or surmise," *id.*, or "conclusory allegations." *Dressler v. MV Sandpiper*, 331 F.2d 130, 133 (2d Cir. 1964).

"Upon proper motion, Rule 56(c) of the Federal Rules of Civil Procedure mandates the entry of summary judgment 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *El-Nahal v. Yassky*, 835 F.3d 248, 252 (2d Cir. 2016) (quoting *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 743 (2d Cir. 2003)). "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* To meet its initial burden, a defendant moving for summary judgment need only make a prima facie showing of the absence of a genuine issue of material fact on a dispositive issue as to which the plaintiff will bear the burden of proof at trial. Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). That "burden … may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's

case." *Id.* at 325. The burden then shifts to the plaintiff to establish there is a factual dispute on a dispositive issue that a reasonable jury could resolve in the nonmovant's favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

With respect to expert testimony, a court functions as the "gatekeeper," including "in connection with a motion for summary judgment." *Major League Baseball Prop. v. Salvino, Inc.*, 542 F.3d 290, 311 (2d Cir. 2016). "[P]roffered 'expert testimony should be excluded if it is speculative or conjectural,'" and opinions "that are without factual basis and are based on speculation or conjecture are … inappropriate material for consideration on a motion for summary judgment," as too are "conclusory opinions." *Id.* (quoting *Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir.1996)). Even when properly admitted, "an expert's report is not a talisman against summary judgment." *Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997). Courts properly hold that conclusory or unsupported expert opinions do not create an issue of fact, nor do opinions that fail to meet a party's burden. *Major League Baseball*, 542 F.3d at 311-12; *Farkas v. Addition Mfg. Techs., LLC*, 952 F.3d 944, 949 (8th Cir. 2020) (absent "relevant inquiry[,]" expert failed to raise issue of fact); *Est. of Detwiler v. Offenbecher*, 728 F. Supp. 103, 140 (S.D.N.Y. 1989) ("summary judgment is appropriate where the nonmoving party relies solely on an expert opinion ... that makes unsupported assumptions or ignores important facts.").

> ### 2.    Summary Judgment Standard In Music Copyright Infringement Actions

To establish copyright infringement, a plaintiff "must demonstrate that: (1) the defendant has actually copied the plaintiff's work; and (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectible elements of plaintiff's." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 63 (2d Cir. 2010) ("*Gaito*") (quotation omitted, emphasis added). When faced with works that have both protectable and

unprotectable elements, a court "must attempt to extract the unprotectable elements from [its] consideration and ask whether the protectable elements, ***standing alone***, are substantially similar." *Id.* at 66 (emphasis added, internal quotations and citations omitted). Put otherwise, the court must "filter out from consideration any non-protectible elements," and only "[t]he remaining, protectible elements are then analyzed for substantial similarity." *Sheldon Abend Revocable Trust v. Spielberg*, 748 F. Supp. 2d 200, 204 (S.D.N.Y. 2010). As a result, "similarities between unprotectible elements in the disputed works may not contribute to a determination of substantial similarity." *Id.*; *see also Walkie Check Prods., LLC v. ViacomCBS Inc.*, 2022 WL 2306943, *7 (Jun. 26, 2022) (Failla, J.) (similarity must be to protectable expression); *Clanton v. UMG Recordings, Inc.*, 556 F. Supp. 3d 322, 331 (S.D.N.Y. 2021) ("[O]nly the protectable portions of the copyrighted works are compared…."). Where filtering non-protectable elements is required—as it is here—it is "entirely appropriate for a district court to resolve [this] question as a matter of law, 'either because the similarity between the two works concerns only non-copyright-able elements of the plaintiff's work**,** or because no reasonable jury, properly instructed, could find that the two works are substantially similar.'" *Gaito*, 602 F.3d at 63-64 (citation omitted).[14]

      Courts are guided by several additional principles regarding substantial similarity claims. For one, "major differences" between works "detract from any plausible claim of substantial similarity[.]" *McDonald v. West*, 138 F. Supp. 3d 448, 455, 460-61 (S.D.N.Y. 2015)*, aff'd*, 669 F. App'x 59 (2d Cir. 2016) ("Where any reasonable juror would conclude—as here—that the differences are many, and what similarities exist are based on unprotectable elements, the two works are not substantially similar as a matter of law."). Also, particular care must be given to

---

[14] ***All*** tests for actionable copyright infringement—including "striking similarity"—require filtering out unprotectable elements. *See, e.g., Tisi*, 97 F. Supp. 2d at 548 (songs "not strikingly similar as a matter of law" where "striking similarity theory [was] based solely on basic, non-protectible musical elements").

claims of *musical* similarity, since similarities between musical elements cannot be proof of copying where they are "basic, non-protectible musical elements" common to other popular music compositions (*Tisi*, 97 F. Supp. 2d at 548), and because similar melodies may occur in unrelated works. *Arnstein v. Edward B. Marks Music Corp.*, 82 F.2d 275, 277 (2d Cir. 1936) ("[T]he seven notes available do not admit of so many agreeable permutations that we need be amazed at the re-appearance of old themes, even though the identity extends through a sequence of twelve notes."); *see also Structured Asset Sales, LLC v. Sheeran*, 673 F. Supp. 3d 415, 423 (S.D.N.Y. 2023) ("All songs … are made up of the 'limited number of notes and chords available to composers.' Within that limited number, there are even fewer ways to combine the elements in a manner that is pleasing to the ears.") (quoting *Gaste v. Kaiserman*, 863 F.2d 1061, 1068 (2d Cir. 1988)).

### B.   Plaintiffs Cannot Establish Copyright Infringement As A Matter Of Law.

#### 1.   Plaintiffs' Burden To Identify Probative and Substantial Similarities In Protectable Expression Supported By A Musicological Analysis Through Expert Testimony Was Not Met

It is not the task of the Court nor the Defendants to identify protectable elements of Plaintiffs' works upon which an infringement claim could be premised. The ultimate burden falls on plaintiffs, who must come forward with such evidence. *See Gray v. Perry*, 2020 WL 1275221, at *5 (C.D. Cal. Mar. 16, 2020) ("It is plaintiffs' burden to establish the protected elements of their allegedly infringed work.") (quoting 3 Nimmer on Copyright § 12.11 (2019)); *Savant Homes, Inc. v. Collins*, 809 F.3d 1133, 1137, 1144 (10th Cir. 2016) ("It was [the plaintiff's] burden, not the court's, to identify what content was protectable under copyright law."). Courts also recognize that expert testimony may be necessary to satisfy this burden, particularly in the context of music. *See Velez v. Sony Discos*, 2007 WL 120686, at *6 (S.D.N.Y. 2007) ("expert testimony in a music plagiarism case such as this … may be necessary to resolve claims of copyright infringement."); *Selle v. Gibb*, 741 F.2d 896, 905 (7th Cir. 1984) ("in a field such as

that of popular music in which all songs are relatively short and tend to build on or repeat a basic theme, [expert] testimony would seem to be particularly necessary"); *Frisby v. Sony Music Ent.*, 2021 WL 2325646, at *18 (C.D. Cal. Mar. 11, 2021), *aff'd in part, dismissed in part*, 2022 WL 2045340 (9th Cir. June 7, 2022) (expert testimony "required" where "the songs at issue … utilized common practices in the hip-hop/rap genres.").

However, in a music case, even if asserted by an expert, "an issue of fact cannot be created by merely reciting the magic words 'strikingly similar' and 'no possibility of independent creation.'" *Tisi*, 97 F. Supp. 2d at 548-49 (citation omitted). Similarly, expert opinions that do not speak to what is protectable in an allegedly infringed work fail to meet a plaintiff's burden. *McRae v. Smith*, 968 F. Supp. 559, 567 (D. Colo. 1997) (granting summary judgment where "[t]he similarities that plaintiff's experts do identify fail to filter out the nonprotectable components of the songs from the original expression that is protectable."); *Selle*, 741 F.2d at 905 (plaintiff failed to meet its burden where plaintiff "failed to elicit any testimony from his expert witness about" an exhibit that compared the works at issue "to other pieces of contemporary, popular music"). Such opinions are unhelpful and unsound, and are properly excluded by the Court. *See Johannsongs-Publ'g, Ltd. v. Lovland*, 2021 WL 5564626, at *1 (9th Cir. Nov. 29, 2021) (proper to "exclude[] [Plaintiff's] expert reports because they failed to filter out similarities that are attributable to prior art…."); *HEALTHeSTATE, LLC v. United States*, 168 Fed. Cl. 624, 659 (2023) ("[R]regardless of what methodology is utilized *some protectability analysis* is required, and here [the expert's] reports indicate none." (emphasis in original)); *SAS Inst. Inc. v. World Programming Ltd.*, 496 F. Supp. 3d 1019, 1028 (E.D. Tex. 2020), *aff'd*, 64 F.4th 1319 (Fed. Cir. 2023) (excluding expert for "failure to filter out unprotectable elements").

Here, consistent with Plaintiffs' burden and these principles, the parties agreed to focus on that core threshold issue, namely: "whether or not there are any probative substantial or striking

similarities in the music at issue which constitute protectible expression." Dkt. 86 at 3-4 (emphasis added). Nonetheless, Plaintiffs' experts entirely failed to engage in that focus, conducting no independent investigation or analysis whatsoever on the issue of protectable expression, instead rendering opinions with blinders on to that critical assessment—irrespective of their burden. As Defendants address in a separate motion, such testimony is properly excluded for failure to comport with the applicable standards. Exclusion of this unsound testimony would create an evidentiary void entitling Defendants to summary judgment. *See Kalra v. Adler Pollock & Sheehan, P.C.*, 2022 WL 280180, at *1, 9 (D. Conn. Jan. 31, 2022) (summary judgment appropriate "where expert testimony, though necessary to prevail, is absent.") (citing, *inter alia*, *Buckley v. Deloitte & Touche USA LLP*, 541 F. App'x 62, 64 (2d Cir. 2013)).

This Motion, however, is not predicated on such exclusion, and instead demonstrates that the opinions of Salani and Calello nonetheless fail to raise any genuine issue of fact to defeat it even if considered. Indeed, their conclusory opinions without proper analysis have in fact been substantially eviscerated by ***the sworn admissions*** discussed herein. Whether or not their testimony is formally excluded, such admissions are admissible in support of summary judgment for Defendants. *See Kreppel v. Guttman Breast Diagnostic Inst., Inc*., 1999 WL 1243891, at *1 (S.D.N.Y. Dec. 21, 1999) (report of opposing expert was admissible as adoptive admission); *Nichols v. Am. Risk Mgmt.*, 2000 WL 97282, at *2 (S.D.N.Y. Jan. 28, 2000) (noting courts "permit[ting] use of opposing party's expert's deposition testimony … as a party admission").[15]

Additionally, while Plaintiffs' experts failed in their burden, that core issue of protectibility has been thoroughly addressed by the well-supported conclusions of Defendants'

---

[15] Exclusion does not foreclose treating expert testimony as admissions because admissions are not governed by *Daubert* standards; instead, "their admissibility . . . is the result of the adversary system." Fed. R. Evid. 801, Advisory Committee Notes.

own expert unrebutted by Plaintiffs. His conclusions and prior art establish as a matter of undisputed fact the basic and commonplace nature of the similarity at issue. SUF 54-122. A court properly grants summary judgment where, as here, such unrebutted expert testimony forecloses any fact dispute. *In re Plavix Mktg., Sales Pracs. & Prod. Liab. Litig. (No. II)*, 2017 WL 3531684, at \*9 (D.N.J. Aug. 17, 2017) (collecting cases); *Evans v. Mentor Corp.*, 2005 WL 1667661, at \*3 (E.D. Va. June 28, 2005) (summary judgment warranted where "Plaintiff's speculative evidence [was] countered by unrebutted expert testimony" of defendant's expert).

Here, on the basis of the undisputed facts and foregoing legal principles Plaintiffs cannot claim infringement under any theory, because the similarity at issue does not constitute *protectable* expression belonging to the Plaintiffs.[16]

### 2.   Defendants Are Entitled To Summary Judgment As To *Wiggle*

Plaintiffs did not even attempt to support their infringement claim as to Wiggle—which this Court has said requires proof of striking similarity—with any direct musicological comparison to *Levitating*. SUF 12-14. Rather than actually compare the verse melody of *Levitating* with the verse melody of *Wiggle*—the only point of similarity contended to be at issue––the Salani and Calello Reports try an obviously improper sleight of hand. Professing that *Wiggle* and *Don Diablo* can be treated as "identical" (later admitted to be untrue), the only comparison made is between the verse melodies in *Don Diablo* and *Levitating*. *See* SUF 15-19.

Of course, there is no justification for omitting a musicological comparison based on an *ipse dixit*, and there cannot conceivably be any successful claim regarding *Wiggle* absent a proper

---

[16] Indeed, apart from ***actionable*** copying of protected expression, Plaintiffs cannot raise a genuine issue of fact even on the threshold question of ***probative*** copying. "Similarities between two works are probative only if those similarities 'would not be expected to arise if the works had been created independently.'" Dkt. 74 at 11-12 (quoting *O'Keefe v. Ogilvy & Mather Worldwide, Inc.*, 590 F. Supp. 2d 500, 517 (S.D.N.Y. 2008)). In light of the undisputed facts, as a matter of law, it can hardly be "unexpected" for a song to be independently created using repeated 16th notes descending on a B minor scale.

analysis. Indeed, the bald conclusion of identity between *Wiggle* and *Don Diablo* was forcefully dispelled when Salani was compelled to admit the verse melodies of *Wiggle* and *Don Diablo* were ***not*** identical, and had more than a ***dozen*** differences her report omitted. SUF 18-19.

Ultimately, Salani's and Calello's decision to avoid any direct comparison of the relevant portions of *Wiggle* with *Levitating* is fatal to Plaintiffs' claim as to *Wiggle*. Their conclusory assertions regarding the infringement of *Wiggle* holds no weight against the admissions made and the unchallenged testimony of Dr. Ferrara. Certainly, nothing was offered to identify any similarities between *Wiggle* and *Levitating* in ***protectable expression***. In short, there is "an absence of evidence to support [their] case." *Celotex*, 106 U.S. at 325.

Of course, this failure of proof with respect to *Wiggle* must also be assessed through the lens of Plaintiffs' high bar to prove striking similarity. As this Court held, that task requires "demonstrat[ing] not just that the works are similar, but that their similarities are ***so striking so as to compel the conclusion that copying is the only realistic basis for them***," and, "in essence," that independent creation was a "virtual impossibility." Dkt. 74 at 32 (emphasis added, internal quotation marks omitted). Plaintiffs wholly fail to adduce any proof that could meet that "tall task" for striking similarity, the sole avenue remaining for this claim.

    **3.**    **The Undisputed Facts Establish That *Levitating* And *Don Diablo* Are Not Substantially Similar In Protectable Expression**

    **a.**    **Commonplace Expression in Music Such as Scales**

When "common elements are found in many other well-known songs," they "are unoriginal and constitute 'scenes a faire,' or ordinary, unprotectible expression," requiring that they be filtered out in conducting a proper substantial similarity analysis. *Intersong-USA v. CBS, Inc.*, 757 F. Supp. 274, 282 (S.D.N.Y. 1991). In other words, substantial similarity cannot be premised on the shared usage of musical "building blocks." *See, e.g.*, *Skidmore as Tr. for Randy*

*Craig Wolfe Tr. v. Led Zeppelin*, 952 F.3d 1051, 1069 (9th Cir. 2020) (Copyright does not "extend to 'common or trite' musical elements … or commonplace elements that are firmly rooted in the genre's tradition," since "these building blocks belong in the public domain and cannot be exclusively appropriated by any particular author.") (internal quotations and citations omitted). As put recently by one court in this District:

> Authors and artists cannot claim copyright in "the raw materials of art," such as "previous creative works that have fallen into the public domain," as well as "the basic building blocks of music, including tempo and individual notes.". . . . Under that principle, "[p]hrases that 'enjoy[] a robust existence in the public domain' are not protectible." As a result, courts have found that "common melodies" are "unprotectable elements" under copyright law.

*Hines v. BMG Rts. Mgmt. (US) LLC*, -- F. Supp. 3d --, 2023 WL 6214264, at *5 (S.D.N.Y. Sept. 25, 2023) (citations omitted).

Both courts and the U.S. Copyright Office have made clear that, like other musical building blocks, scales – descending or ascending – are unprotectable. As noted in *Gray v. Hudson*, 28 F.4th 87, 98 (9th Cir. 2022), "[p]lainly, no person may copyright the minor scale, as such scales are common musical building blocks belonging to the public." *Gray* found too that using a "'sequence[s] of eight notes', played in an even rhythm" descending along a minor scale was "a similarly 'trite' musical choice outside the protection of copyright law." *Id.* at 94, 99. Treating scales-based elements, this way "has been reinforced by the Copyright Office, which lists '[d]iatonic or chromatic scales' . . . as common property musical material." *Skidmore*, 952 F.3d at 1070 (quoting *Copyright Office Compendium* § 802.5(A) (3d ed. 2017)). In *Skidmore*, this led the Court to conclude that "[j]ust as we do not give an author a monopoly over the note of B-flat," the descending scales at issue in that case could not be "copyrighted by any particular composer[.]" *Id.* at 1070-71 (quotation omitted); *see also Sheeran*, 673 F. Supp. 3d at 424 (finding unprotectable "chord progression and harmonic rhythm" where "taught for many years

… as a popular chord progression in introductory books on how to play guitar and piano");

*Francescatti v. Germanotta*, 2014 WL 2767231, at \*19 (N.D. Ill. June 17, 2014) (repetition of

note "four times does not make it protectable because it is not a unique combination").

In *Intersong-USA*,[17] plaintiffs' work and defendant's work shared a "descending scale step

motive in the verse." 757 F. Supp. at 282. The court stated:

> [T]here is similarity between the music of "Es" and "Hey." They do sound
> and are similar in some respects because they both use a descending scale
> step motive in the verse. ***Such a descending scale step motive, however, is
> not uncommon and has often been used as a compositional device*** . . .

*Id.* at 280 (emphasis added, citations omitted); *see also id.,* at 282. The Court found the plaintiffs

had "not met their burden of proving substantial similarity of protectible expression," since the

"elements and techniques used in the compositions . . . are unoriginal and constitute 'scenes a

faire,' or ordinary, unprotectible expression." *Id.* (citation omitted). The same is true here.

### b.     The Music At Issue Is Undisputedly Not Protectable Expression By Plaintiffs' Experts' Own Admissions

As discussed above, there were many admitted errors and omissions in Plaintiffs' analysis

of *Don Diablo* and *Levitating*, including the failure to analyze many differences. *See* SUF 12-24,

30-38. But ultimately the issue that dictates dismissal of Plaintiffs' claims here is their concession

that the only musical phrase shared by *Levitating* and *Don Diablo* consists of non-protectible

***descending scales***: five groupings of repeated 16th notes descending on a B minor scale in

*Levitating* but on a D major scale in *Don Diablo*. SUF 31-35, 39-44.

Transposed to the key of C and its relative minor A, the simple passage at issue is well

illustrated by the below graphic, shown to Salani at her deposition.

---

[17] This was a bench trial, although there appears to have been no prior summary judgment motion on plaintiffs' similarity allegations. The court's holdings as to the plaintiff's burden to show protectability and description of commonplace music elements that cannot be monopolized, is nevertheless on point.



The five notes at issue are shown on adjacent white keys of a piano. As *Levitating* is in a minor

key, the scale step descent in A minor is 5-4-3-2-1, or simply going from E down to A on the

piano, repeating each note 4 times on a 16th-note rhythm for a total of 20 notes. As Salani

admitted, this "is not that complicated" to design and was fundamentally still a scale, and going

"up and down a scale" is a "rudimentary process." SUF 31, 41, 45. Salani made numerous other

concessions that establish that this pattern is, in effect, a descending scale exercise found in piano

books which she used and taught to her students. SUF 42, 44. The simplicity and commonplace

nature of this passage is undisputed.

### c.   Defendants' Expert's Unrebutted Report Further Establishes That the Music at Issue is Unprotectable

Dr. Ferrara's unrebutted analysis and prior art works add further undisputed facts to

cement the conclusion that the music at issue constitutes commonplace expression available to all

creators—not expression that can be monopolized by Plaintiffs. It is an unremarkable descending

scale pattern on repeated 16th notes, with dissimilar lyrics in a common patter-song style. The

descending scale pattern is found in centuries-old exercise books, and extensive other prior art.

Critically here, the admittedly public domain studies by Carl Czerny, in his 19th century piano

exercise books, include **both** the descending scale pattern of 20 notes, on repeated 16th notes,

found in *Don Diablo* (3-2-1-7-6), ***verbatim*** (SUF 95), ***as well as*** a descending scale pattern of 20

notes that is exactly like the passage in *Levitating* (5-4-3-2-1) except that the 3 is an E flat in

*Levitating* (due to the minor key) and an E natural in Czerny (SUF 96):

 

Other long-existing musical practice books, such Albert Loeschhorn's *Universal Studies* and

Jean-Baptiste Arban *Complete Conservatory Method for Trumpet*, #83 (from 1864), contain

similar descending sequences of repeated 16th notes. SUF 115-120.

Similarly, the Latin song *Contestación*, originally released in 1958, contains a vocal

melody comprised of five groups of four repeated 16th notes (20 notes) moving stepwise down

the scale, remarkably similar to that in *Levitating*. SUF 85-87:



Variations on this same basic musical expression are found in many works pre-dating *Wiggle* and

*Don Diablo*, including *El Cafetal – El Caiman* (released in 1975), *Ging Gang Goolie* (released no

later than 1920), and *Se dice de mi* (released in 1943). SUF 89-91, 108-114. *Stayin' Alive*, a #1 hit

**the year before Wiggle's release**, contains remarkably similar musical elements. SUF 102-107.

As do numerous songs since. SUF 121-122. Dr. Ferrara's prior art also contains examples of

descending scales set to rapid, patter-style lyrics, including Latin American songs from the 1970s.

SUF 60, 86, 91, 121. There is no dispute that other elements of the works are ***dissimilar***, and Dr.

Ferrara's findings as to the works as a whole are unrebutted. SUF 26-30, 33-38, 49-81.

*McDonald*, 138 F. Supp. 3d at 460-61.

Accordingly, on this record, there is no genuine issue of fact that could support that the descending scale at issue in *Levitating* is probatively or substantially similar to any protectable expression in *Don Diablo* (or *Wiggle*). The scales in the two works are not the same, are in different modalities (minor vs. major), on different scale steps (5-4-3-2-1 vs. 3-2-1-7-6), occur in works with many significant differences, and in all events are found in prior art. SUF 25-122. This undisputedly unprotectable commonplace musical building block cannot as a matter of law support Plaintiffs' claim of infringement, and judgment should be entered for the Defendants.

### C.   Plaintiffs' Declaratory Relief and Accounting Claims Must Be Dismissed

In addition to its claim for copyright infringement, Plaintiffs have also asserted claims for declaratory relief and for an accounting. FAC ¶¶ 126, 130. None of these claims stand independent of the copyright claim, are entirely derivative thereof, and thus must be dismissed in all events. *Id.*, at ¶ 126 (seeking declaration that exploitation of *Levitating* "constitute[s] willful copyright infringement"); ¶ 190 (seeking accounting of profits received from "exploitations of the Infringing Works"). Plaintiffs' duplicative declaratory relief claim "seeks no relief that is not implicitly sought in the other causes of action." *U.S. Bank Nat. Ass'n ex rel. Lima Acquisition LP v. PHL Variable Ins. Co.*, 2014 WL 998358, at *9 (S.D.N.Y. 2014). Plaintiffs' accounting claim, which merely seeks profits attributable to alleged infringement is preempted by the Copyright Act. *Weber v. Geffen Records, Inc.*, 63 F. Supp. 2d 458, 463 (S.D.N.Y. 1999) (accounting claim preempted because "[i]t [was] only through th[e] basic [copyright] claim ... that anyone profiting must account to plaintiff"), *accord Baiul v. NBC Sports*, 708 F. App'x 710, 712 (2d Cir. 2017).

## V.   CONCLUSION

Defendants' motion should be granted in its entirety, and Plaintiffs' claims should be dismissed.

DATED:  New York, New York
         April 12, 2024

Respectfully submitted,
MITCHELL SILBERBERG & KNUPP LLP


By:   /s/ Christine Lepera
     Christine Lepera (ctl@msk.com)
     Bradley Mullins (bym@msk.com)
     Elaine Nguyen (eln@msk.com)
     437 Madison Ave., 25th Floor
     New York, New York 10022-7001
     Telephone: (212) 509-3900
     Facsimile: (212) 509-7239

*Attorneys for Defendants Dua Lipa,*
*Clarence Coffee, Jr., Sarah Hudson,*
*Stephen Kozmeniuk, Sony Music*
*Publishing (US) LLC, Universal Music*
*Corporation, and Warner Records Inc.*