**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LARBALL PUBLISHING COMPANY, INC. and SANDY LINZER PRODUCTIONS, INC., <br><br>        Plaintiffs, <br>   v. <br><br> DUA LIPA, JONATHAN LYNDALE KIRK ("DA BABY") D/B/A BABY JESUS PUBLISHING, CLARENCE COFFEE, JR., SARAH HUDSON, STEPHEN KOZMENIUK, SONY MUSIC PUBLISHING (US) LLC, UNIVERSAL MUSIC CORPORATION, and WARNER RECORDS INC., <br><br>        Defendants. | CASE NO. 1:22-CV-01872-KPF |

**DEFENDANTS' REPLY IN FURTHER SUPPORT OF THEIR STATEMENT OF UNDISPUTED FACTS, AND RESPONSE TO PLAINTIFFS' COUNTER-STATEMENTS OF UNDISPUTED MATERIAL FACTS PURSUANT TO LOCAL CIV. R. 56.1**

Defendants Dua Lipa, Clarence Coffee, Jr., Sarah Hudson, Stephen Kozmeniuk, Sony

Music Publishing (US) LLC, Universal Music Corporation, and Warner Records Inc. respectfully

submit this reply in support of their Statement of Undisputed Facts ("SUF") pursuant to Local Civ.

R. 56.1, and in response to Plaintiffs' purported "Counter-Statements of Undisputed Material

Fact."

**Introductory Statement**

Neither Plaintiffs' admission-filled responses to Defendants' Statement of Undisputed

Facts pursuant to Local Civ. R. 56.1, nor their purported (and erroneously headed) "counter-

statements of undisputed material fact" (hereinafter collectively their "Counterstatement"), raise

any genuine issue of material fact that could avoid summary judgment in Defendants' favor on the issue presented: whether *Levitating* is probatively, substantially, or strikingly similar to any copyrightable, protectable expression in either *Wiggle* or *Don Diablo*. The answer is that it indisputably is not. Plaintiffs ***admit*** the overwhelming majority of Defendants' statements of fact—82 out of 122 total—including dispositive facts confirming that any claimed similarities between *Levitating* and Plaintiffs' works are commonplace musical elements and unprotectable expression.

With respect to the 40 statements of fact not admitted outright, and even some statements that are admitted outright, Plaintiffs disingenuously seek to dispute them. However, the purported "disputes" are either not genuine, not supported by evidence, and/or wholly irrelevant to the issue on the motion. Plaintiffs' efforts to create the specter of a disputed fact fail, because they are comprised of tactical machinations, not *evidence* that raises any legitimate genuine dispute as to the material fact cited. They fall into the following unavailing categories of tactics:

- purporting to "dispute" unnumbered section *headings* above the stated fact in Defendants' SUF (5 instances; *see infra* CSUF ¶¶ 11, 12, 15, 46, 82), but not the actual statements of fact themselves;[1]

- asserting a "dispute" based on non-responsive facts or argument, including talking past the stated fact (27 instances; *see* CSUF ¶¶ 13, 14, 20, 21, 22, 26, 34, 54, 59, 66, 67, 69, 70, 72, 74, 75, 79-82, 97, 99, 101, 106, 112, 117, 120);

- asserting a "dispute" that is controverted by a prior statement or admission (8 instances; *see* CSUF ¶¶ 26, 28, 61, 64, 76, 101, 106, 122);

---

[1] The abbreviation "CSUF" herein denotes paragraphs in Plaintiffs' Counterstatement.

- asserting a "dispute" only as to a specific term used in a statement (such as "building block"), or a supposed "implication" of the statement (5 instances; *see* CSUF ¶¶ 57, 73, 91, 99, 122);

- asserting a "dispute" when the Plaintiffs' response itself admits the substance of the fact (at least 5 instances; *see* CSUF ¶¶ 15, 46, 112, 117, 120); and

- asserting a "dispute" by mischaracterizing evidence or citing evidence that otherwise does not support Plaintiffs' assertion (at least 4 instances; *see* CSUF ¶¶ 23 55, 58, 70).

Each one of these obvious diversionary tactics fails to raise any genuine dispute because no evidence was offered to dispute the ***actual fact*** stated. The statements of fact are thus properly treated as admitted. *See*, *e.g.*, L.R. 56.1(d) ("Each statement . . . must be followed by citation to evidence that would be admissible"); *Risco v. McHugh*, 868 F.Supp.2d 75, 87 n.2 (S.D.N.Y. 2012) (disregarding "averments in Plaintiff's 56.1 Statement that are not denials of the specific[] facts asserted by Defendant, or not supported by citations to admissible evidence in the record, or that are contradicted by other admissible evidence in the record, or that are improper legal arguments"); *Baity v. Kralik*, 51 F.Supp.3d 414, 418 (S.D.N.Y. 2014) (rejecting "purported denials" that "improperly interject arguments and/or immaterial facts in response to facts asserted by Defendants, often speaking past Defendants' asserted facts without specifically controverting those same facts"); *Campbell v. Rite Aid Corp.*, 2020 WL 5554645, at *3 (E.D.N.Y. Sept. 17, 2020) ("To specifically controvert a statement of material fact, a nonmovant must do so with ***specific*** citation to admissible evidence.") (emphasis added).

As demonstrated in specific detail below, Plaintiffs have, by their own admissions and other responses, offered no evidence that could raise any legitimate dispute of material fact as to

3

any of Defendants' 122 Statements of Undisputed Facts. Plaintiffs have instead proffered on this Motion 79 additional facts (CSUF ¶¶ 123-201) that they claim defeat the motion, under a heading entitled "Counter-Statements of Material Undisputed Facts." The proffered Statement provides no evidence that could raise any dispute as to any material fact on the issues presented on the Motion.[2] Instead, the proffered "factual" statements are clearly designed to burden the Court and Defendants unnecessarily, to avoid the core issue at hand and to advance matters extraneous to the motion, including regarding alleged access issues that have no bearing on this Motion whatsoever. *See* Dkt. 116 at pp. 44-56 and *infra,* ¶¶ 123-201. Plaintiffs list irrelevant background facts that, even if disputed, have no relevance to the decisive issues in Defendants' Motion. As with their response to Defendants' Statement of Undisputed Facts, Plaintiffs offer "facts" that contradict their admissions, including as to the basic and commonplace nature of descending scales played on repeated notes and their broad existence in prior art, while positing other facts that are rendered irrelevant *by* such admissions. In contravention of the Local Rules, Plaintiffs go so far as to offer irrelevant "undisputed facts" citing only to hearsay *allegations* in Plaintiffs' First Amended Complaint. None of these purported additional "undisputed facts" remotely raises any genuine issue precluding summary judgment for Defendants and should thus be disregarded.

---

[2] While the Local Rules permit the filing of "a statement of additional material facts *as to which it is contended that there exists a genuine issue to be tried*" (Local Civ. R. 56.1(b), emphasis added), Plaintiffs filed no statement fitting this description.

20037732.1

I.    **DEFENDANTS' REPLY TO PLAINTIFFS' RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED FACTS**

A.    <u>**The Plaintiffs and Their Musical Compositions** *Wiggle and Giggle All Night* **and** *Don Diablo*</u>

1.    Plaintiffs Larball Publishing Company, Inc. ("Larball") and Sandy Linzer Productions ("SLP," collectively, "Plaintiffs") co-own the copyright in the musical composition *Wiggle and Giggle All Night* ("*Wiggle*") co-authored by Plaintiffs' respective principals, Sandy Linzer and Russell Brown.[3] First Amended Complaint (Dkt. 51) ("FAC") ¶¶ 1, 4, 7.

**RESPONSE:** Undisputed.

<u>**Counter-response**</u>: No response is necessary.

2.    *Wiggle* was recorded by the musical artist Cory Daye and released on the album entitled *Cory and Me* in 1979. FAC ¶¶ 1, 41; *see* Declaration of Christine Lepera in Support of Defendants' Motion for Summary Judgment ("Lepera Decl."), ¶ 20 & Ex. 18 (Ferrara Report Audio Exhibit 1) ("Audio Exhibit 1") at Track 1.

**RESPONSE:** Undisputed.

<u>**Counter-response**</u>: No response is necessary.

3.    The musical composition entitled *Don Diablo* was recorded by Miguel Bosé in 1980. FAC ¶ 2; *see* Audio Exhibit 1 at Track 2.

**RESPONSE:** Undisputed.

<u>**Counter-response**</u>: No response is necessary.

---

[3] Certain facts stated herein from Defendants' original SUF are undisputed by Defendants solely for the purposes of this Summary Judgment Motion, namely, SUF ¶¶ 1-5.

4.      In 1983, Larball initiated a copyright infringement action in this District, in which it claimed that Bosé (and others) infringed the copyright in the musical composition *Wiggle*. FAC ¶ 49.

**RESPONSE:** Undisputed.

**Counter-response**: No response is necessary.

5.      In a settlement of that lawsuit, the current Plaintiffs were assigned and became the co-owners of the copyright in the musical composition *Don Diablo*. FAC ¶¶ 2, 32, 49, 51; *see also* Dkt. 64, 64-1 (case docket).

**RESPONSE:** Undisputed.

**Counter-response**: No response is necessary.

6.      Both *Wiggle* and *Don Diablo* are in major keys. Declaration of Christine Lepera ("Lepera Decl."), ¶ 4 & Ex. 2 (Deposition Transcript of Barbara Salani) ("Salani Tr.")[4] at 110:4-11, 135:4-12, 147:19-23.

**RESPONSE:** Undisputed.

**Counter-response**: No response is necessary.

---

[4] It has come to Defendants' attention that due to a technical error, the filed copy of the Salani deposition transcript in the Lepera Declaration (Dkt. 104-2) does not display page numbers. Defendants thus intend to file a notice of errata supplying a corrected copy of the transcript.  In the interim, page numbers appear in other copies of this transcript filed on this motion and in Defendants' accompanying motion to exclude. *See* Dkt. 100-7; Dkt. 117-3.

B.    **Defendants and the Musical Composition** *Levitating*

7.    In this action, Plaintiffs assert copyright infringement claims against the Defendants claiming that that the musical composition and sound recording entitled *Levitating*, released in 2020 by performing artist and Defendant Dua Lipa and appearing on her album entitled *Future Nostalgia*, infringes on the musical composition copyrights owned by Plaintiffs in both *Wiggle* and *Don Diablo*. FAC ¶¶ 8, 33, 35-39, 58, 100, 117-125; *see* Audio Exhibit 1 at Track 3.

**RESPONSE:** Undisputed.

**Counter-response**: No response is necessary.


8.    Plaintiffs also assert infringement claims as to a remix version of *Levitating* entitled *Levitating (Da Baby)*. Defendants Dua Lipa, Sarah Hudson, Clarence Coffee, Jr. and Stephen Kozmeniuk are co-authors of *Levitating* and *Levitating (Da Baby)*. FAC ¶¶ 8, 33, 35-39, 58, 117-125; *see* Audio Exhibit 1 at Track 4.

**RESPONSE:** Undisputed.

**Counter-response**: No response is necessary.


9.    The corporate Defendants Sony Music Publishing (US) LLC, Universal Music Corporation, and Warner Records Inc. participated in the exploitation of *Levitating* and/or *Levitating (Da Baby)*. FAC ¶¶ 37-39, 119.

**RESPONSE:** Undisputed.

**Counter-response**: No response is necessary.


10.    *Levitating* and its remix *Levitating (Da Baby)* are both in minor keys, and aside from certain structural differences, there is no musical expression at issue in *Levitating (Da Baby)*

7

that is not already in *Levitating*. Salani Tr. 110:4-11, 135:4-9; FAC ¶¶ 8, 58; Expert Report of

Lawrence Ferrara, Ph.D. (Lepera Decl., ¶ 18 & Ex. 16) at ¶ 2 and fn. 2.[5]

**RESPONSE:** Undisputed.

**Counter-response**: No response is necessary.


     **C.**     **Plaintiffs' Claims of Infringement Are Based Upon the Opinions of Barbara Salani and Charles Calello**

11.     Plaintiffs produced in expert discovery the reports of Barbara Salani and Charles

Calello in support of their claims in this case. Lepera Decl., ¶¶ 3-5 & Ex. 1 ("Salani Report"), Ex.

2 (Salani Tr.) at 79:7-24 & Depo. Ex. 5 (Lepera Decl. Ex. 3) (marked and paginated Salani Report);

Lepera Decl. ¶¶ 14-16 & Ex. 12 ("Calello Report"), Ex. 13 (Deposition Transcript of Charles

Calello) ("Calello Tr.") at 77:23-79:23 & Depo. Ex. 7 (Lepera Decl. Ex. 14) (marked Calello

Report).

**RESPONSE:** Disputed as to header "C." Plaintiffs' claims of infringement are based on the law

and may be decided with or without the assistance of experts. Expert opinion is helpful but not

essential.  Undisputed as to paragraph 11.

**Counter-response:** This fact is undisputed, as Plaintiffs concede.

     As is apparent, headers used in this document are not the facts stated; thus Header "C" is

not a fact presented as to which Plaintiffs can assert any dispute. Moreover, legal arguments and

quibbles as to language are not a proper basis for a dispute. *See Baity*, 51 F.Supp.3d at 418

(rejecting "purported denials" that "improperly interject arguments and/or immaterial facts in

---

[5] As it is undisputed that there are no relevant musicological differences between *Levitating* and *Levitating (Da Baby)* at issue, the remainder of this Statement refers to *Levitating* to denote both works. *See infra* ¶ 20.

response to facts asserted by Defendants, often speaking past Defendants' asserted facts without specifically controverting those same facts").

> **a)**    **Neither the Salani Report Nor the Calello Report Contain Any Musicological Analysis Comparing Any Music in *Wiggle* to Any Music In *Levitating***

12.    Salani did not transcribe any music in her report comparing *Wiggle* to *Levitating*. Salani Tr. 112:9-13 ("Q. So there's no transcriptions whatsoever in your report showing any comparison between *Wiggle* and *Levitating*, correct? A. Correct.").

**RESPONSE:** Disputed as to subhead "a)"; undisputed as to paragraph 12.

**Counter-response:** This fact is undisputed, as Plaintiffs concede.

Headings such as Subheading "a" are not the fact statements. Even if it was, Plaintiffs provide no evidence to dispute it. *See Risco*, 868 F.Supp.2d at 87 n.2 (disregarding "averments in Plaintiff's 56.1 Statement that are not denials of the specific[] facts asserted by Defendant, or not supported by citations to admissible evidence in the record, or that are contradicted by other admissible evidence in the record, or that are improper legal arguments").

13.    Salani provided no analysis in her report comparing any melody, rhythm, harmony, or harmonic rhythm between *Wiggle* and *Levitating*. Salani Tr. 112:19 -113:12; 134:15-20 ("Q. … we already established there's no comparison between Wiggles [sic]… and *Levitating*, correct? A. That's correct."); *see also generally* Salani Report.

**RESPONSE:** Disputed. Salani compared the melodies, rhythms, harmonies, and harmonic rhythms of *Wiggle* and *Don Diablo*, and then referred to that comparison in her discussion *Don Diablo* and *Levitating*.  Declaration of Patrick Almonrode in Support of Plaintiffs' Opposition to

Defendants' Motion for Summary Judgment ("Almonrode Decl."), Ex. F (report of Plaintiffs' expert witness Ms. Barbara Salani) ("Salani Report"), at 2-4.

**Counter-response:** Plaintiffs fail to create a genuine issue of disputed fact with respect to this statement. First, Plaintiffs' response is not responsive to the fact, as it talks past it, thus conceding that Salani did not compare *Wiggle* with *Levitating*. Second, and critically, the response also ignores but does not and cannot dispute the dispositive evidence cited—namely the admission of the fact by Salani herself that she did not compare *Wiggles* and *Levitating*. The statement is therefore properly treated as if admitted. *See Risco*, 868 F.Supp.2d at 87 n.2 (disregarding "averments in Plaintiff's 56.1 Statement that are not denials of the specific[] facts asserted by Defendant . . . or that are contradicted by other admissible evidence in the record").


14.     Calello did not provide any comparative analysis of *Wiggle* to *Levitating* in his report. Calello Tr. 95:25-96:5 ("Q. Just initially, these four pages of your report do not contain a direct comparison comparing Wiggle and Giggle to Levitating, is that correct? A. That is correct.").

**RESPONSE:** Disputed. Calello makes several comparisons between *Wiggle* and *Levitating* in his report. See Almonrode Decl., Ex. A (report of Plaintiffs' expert witness Dr. Charles Calello) ("Calello Report"), at 2 (comparing melodies), 2-3 (comparing lyric rhythms), 3 (noting that six bars of *Levitating* are "a direct copy of" *Wiggle* and *Don Diablo*), 4 (comparing tempo and beat).

**Counter-response:** Plaintiffs fail to create a genuine issue of disputed fact with respect to this statement. First, Plaintiffs' response is not responsive to the fact asserted, thus conceding it. Second, and critically, the response ignores but does not and cannot controvert the dispositive evidence cited of Calello's own admission. *See Risco*, 868 F.Supp.2d at 87 n.2 (disregarding "averments in Plaintiff's 56.1 Statement that are not denials of the specific[] facts asserted by

Defendant . . . or that are contradicted by other admissible evidence in the record"). In the cited testimony, Calello **admitted** that it was "correct" that the four pages of his report did "not contain a direct comparison" comparing *Wiggle and Giggle* to *Levitating*. Calello Tr. 95:25-96:5.

            **b)**      **Plaintiffs' Effort to Conflate *Don Diablo* with *Wiggle* to Excuse the Lack of Analysis of *Wiggle* Fails**

15.      The Salani Report states that *Don Diablo* and *Wiggle* have an "identical nature" in a four measure phrase in their respective verses. Salani Tr. 114: 3-14; Salani Report at 2-3 (*see especially* at 3, following Figure 2A).

**RESPONSE:** Disputed. Subhead "b)" contains improper argument. The Salani Report states, "Outside of basic lyrical differences that force rhythmic changes and minor variations, the feeling, the drive and the melodic phrases are *virtually* identical." Salani Report at 2 (emphasis added). The Salani Report does refer to "the identical nature of DD and WG," *id.* at 3, but Salani clarified at her deposition that this reference was due to a misunderstanding of the legal effect of the resolution of Larball Publishing's earlier infringement action against CBS, 83-cv-8329 (SDNY). Almonrode Decl., Ex. C (transcript of deposition of Ms. Barbara Salani) ("Salani Tr."), at 93:13-94:11; 123:12-25.

**Counter-response:** Plaintiff fail to create a genuine issue of disputed fact as to this statement. Instead, Plaintiffs **admit** that the Salani Report refers to what she stated was the "identical nature" of *Don Diablo* and *Wiggle* immediately after discussing their respective verse melodies. *See* Salani Report at 2-3 ("Consequently, having established ***the identical nature*** of DD and WG..."). Headings such as subheading "b" are not fact statements but even if it was, Plaintiffs offer no evidence to dispute it.

20037732.1

16.    Salani testified at her deposition that the statement in her Report that *Wiggle* and *Don Diablo* were "identical" was based on Plaintiffs' acquiring ownership rights of *Don Diablo* through litigation, which she learned only through a conversation with Calello. Salani Tr. 123:12-25.

**RESPONSE:** Undisputed.

**Counter-response**: No response is necessary.


17.    Salani testified that her statement that *Wiggle* was identical to *Don Diablo* in her Report should be removed. Salani Tr. 122:22-123:25 ("And I told you to remove that, just was because it was my supposition. Remove that from this, before I told you").

**RESPONSE:** Undisputed.

**Counter-response**: No response is necessary.


18.    At her deposition, Salani also identified 13 differences in the four measure phrases of *Don Diablo* and *Wiggle*, circling those differences in red on her transcription of the measures. Salani Tr. 119:12- 124:11 & Depo. Ex. 8 (Lepera Decl., ¶ 7 & Ex. 5).

**RESPONSE:** Undisputed.

**Counter-response**: No response is necessary.

**Figure 2: Similarities in DD & WG**





19.    Salani did not identify any of those 13 differences in her report. Salani Tr. 119:9-125:16 & Depo. Ex. 8 (Lepera Decl. Ex. 5) ("Q. Ms. Salani, there's nothing in your report highlighting the . . . thirteen differences between Don Diablo and Wiggles [sic], correct? ... A. Exactly. Q. Okay. 'Exactly' there's nothing in your report on that, correct? A. Yes.").

**RESPONSE:** Undisputed.

**Counter-response**: No response is necessary.


c)    **Plaintiffs' Comparative Analysis of the Music Alleged in Common Between *Don Diablo* and *Levitating***

20.    The Salani and Calello Reports do not contain any analysis or opinion with respect to *Levitating (Da Baby)*. *See generally* Salani Report, Calello Report.

**RESPONSE:** Disputed to the extent that *Levitating* (*Da Baby*) contains exactly the same passage that infringes. *See* Ferrara Report, Footnote 2, "[A]ll of the expression that is at issue in 'Levitating (feat. DaBaby)' is in 'Levitating'."

**Counter-response:** Plaintiffs do not dispute the fact as stated, which is simply that the Salani and Calello Reports do not contain any analysis of *Levitating (Da Baby)* specifically.

21.    Neither the Calello nor Salani Reports analyze or reflect any independent investigation on their part into extant music literature to filter out any of the elements of music at issue that comprise commonplace expression. *See generally* Salani Report, Calello Report; *see also* Rebuttal Report of Lawrence Ferrara, Ph.D. to the Report of Barbara Salani (Lepera Decl., ¶ 35 & Ex. 33) ("LF Rebuttal to Salani") at ¶¶ 4, 48, 69, 88-92, 96, 107-08, 119; Rebuttal Report of Lawrence Ferrara, Ph.D. to the Report of Charles Calello (Lepera Decl., ¶ 36 & Ex. 34) ("LF Rebuttal to Calello") at ¶¶ 18(B), 19, 40-43, 47, 52.

**RESPONSE:** Disputed to the extent that both Plaintiffs' experts concluded that the music at issue is original in *Wiggle and Don Diablo*, and reaching such a conclusion inherently involves filtering. *See* Calello Rpt., at 4; Salani Rpt. 1, 7.

**Counter-response**:    Plaintiffs fail to dispute this fact. No evidence is supplied as to any independent investigation or filtration effort done by either expert as to the music at issue, and thus admittedly none was done or reflected in the reports. Legal arguments and conclusory statements are insufficient to raise a fact dispute. *See Risco*, 868 F.Supp.2d at 87 n.2.

22.    Neither the Salani Report nor the Calello Report contains any discussion of the overall **melodies** of the compositions, beyond the verse passage they focus on. Salani Tr. 103:6-13; 112:19-23; Calello Tr. 91:6-11; *see also generally* Salani Report, Calello Report.

**RESPONSE:** Disputed in part. The Calello Report contains a comparative transcription of the three songs that extends beyond the verse passage at issue. *See* Calello Report Ex. A.

**Counter-response:** Plaintiffs fail to raise a genuine issue of disputed fact as to this statement. Plaintiffs fail to provide any evidence of any ***discussion*** of melodies outside the verse passages by either expert, as none exists. The Exhibit A cited by Plaintiffs contains no discussion or analysis of the works by Calello, provides no comparison beyond creating a transcription, and is not even referenced in the body of Calello's Report. *Compare* Calello Report at 1-4 *with* Calello Report Ex. A.

23.    Neither the Salani nor the Calello Reports contain any discussion comparing the compositions' overall **harmonies**. Salani Tr. 103:14-104:20; 113:4-7; Calello Tr. 88:13-20; *see also generally* Salani Report, Calello Report.

**RESPONSE:** Disputed. The Salani Report contains a discussion comparing the compositions' harmonies. Salani Report at 2-3; Salani Tr. 103:14-104:15. The Calello Report contains a comparative transcription of the three songs. *See* Calello Report Ex. A.

**Counter-response:** Plaintiffs fail to create a genuine issue of disputed fact as to this statement. Plaintiffs' response mischaracterizes the evidence, which is dispositively in support of this fact. In the testimony cited by Defendants, Salani ***confirmed*** that while she identified chords, she "didn't do any discussion with respect to the element of harmony generally between – with respect to all the three works in the report." Salani Tr. 104:11-20. As discussed above, Exhibit A to the Calello Report is a transcription with no discussion or analysis whatsoever. Further, Plaintiffs cannot controvert Calello's admission that other than a transcription, his report did not "contain any written analysis of the harmonies of Wiggle and Giggle, Don Diablo, and Levitating." Calello Tr. 88:13-20.

24.     With the exception of a "four-on-the-floor" bass-drum rhythm and the 16th note rhythm in the verses, neither the Salani nor the Calello Reports contain any discussion of the overall **rhythms** of the compositions. Salani Tr. 112:24-113:3; 113:8-12; 145:2-14; Calello Tr. 106:7-107:22; *see also* generally Salani Report, Calello Report; LF Rebuttal to Calello, ¶¶ 33-34, 43, 52(G).

**RESPONSE:** Undisputed.

**Counter-response**: No response is necessary.


### d)     The Four Measures of the Verses at Issue

25.     With respect to the music in *Levitating*, the Salani and Calello Reports contain transcriptions that compare the first four measures of a verse in *Levitating* with the first four measures of a verse in *Don Diablo*. *See* Salani Report at pp. 3-4 & Figures 3 and 3A; Calello Report at p. 2.[6]

**RESPONSE:** Disputed. The Calello Report contain transcriptions that compare *more than* only the first four measures of a verse in *Levitating* with the first four measures of a verse in *Don Diablo*. Exhibit A to the Calello Report contains transcriptions of 29 measures of, *inter alia*, the intros, verses, and choruses of *Don Diablo*, *Levitating*, and *Wiggle*.

**Counter-response:** Plaintiffs fail to create a genuine issue of disputed fact as to this statement. First, Plaintiffs do not dispute with evidence the fact that the experts compare the first four measures of the verses in the reports. Second, Exhibit A to the Calello Report contains no discussion or analytical comparison beyond transcriptions. Thus, the alleged dispute is non-

---

[6] Salani's and Calello's transcriptions are assumed to be correct solely for purposes of this summary judgment motion, subject to their admissions regarding same in their testimony set forth herein.

responsive to the statement, which is properly treated as if admitted. *See Risco*, 868 F.Supp.2d at 87 n.2 (disregarding "averments in Plaintiff's 56.1 Statement that are not denials of the specific[] facts asserted by Defendant").

26.    Salani described the musical passages at issue in her Report as "four repeated 16th notes for every beat, moving in a descending motion," as reflected in the red boxes in the transcription below:

Figure 3: Comparison between DD and LEV:
the matching melodic motives in common



Salani Report at p. 3, Figure 3; Salani Tr. 147:21-148:14 ("Q. And we've also agreed that your red boxes are illustrating what you claim in *Levitating* is similar to material in *Don Diablo* that you've also identified in red boxes? A. Exactly."); *see also id.*, 146:11-147:18 & Depo. Ex. 10 (Lepera Decl., ¶ 9 & Ex. 7).

**RESPONSE:** Disputed that the transcriptions reproduced here, and in particular the notes within the red boxes, describe the full extent of "the musical passages at issue." Salani put the entire phrase in her report and the music at issue extends beyond the identical notes in the works. *See* Calello Report at 1-2; Almonrode Decl., Ex. D (transcript of deposition of Mr. Charles Calello) ("Calello Tr."), at 92:8-93:8 ("Q. So the transcriptions on page 2 contain what you consider to be all of the relevant portions for purposes of the musical analysis you're conducting in this report?

A. Correct."); *see also* Visual Exhibits C and L to Expert Report of Dr. Lawrence Ferrara ("Ferrara Rpt.").

**Counter-response:** Plaintiffs fail to create a genuine issue of disputed fact as to this statement. First, Plaintiffs statement does not respond to the fact asserted, again talking past it. Second, and critically, in the cited testimony, Salani admitted to the significance of the red boxes in her report—to identify what she claimed was similar between *Don Diablo* and Levitating. *See also* Salani Tr. 148:8-24 & Depo. Ex. 11 (Lepera Decl. Ex. 8) ("Q. . . . [T]his…five note descending pattern on 16[th] notes is what you have claimed to be at issue, correct? A. Yes."). Salani also testified that notes outside the boxes were not relevant. Salani Tr. 143:10-14 & Depo. Ex. 9 (Lepera Decl. Ex. 6) ("Q. I am talking about there's no box between measure 11 and 6 because these notes are all different, it's all different, right?  So that's why you didn't box it in?  A. Exactly"); *see also id.* at 140:17-21 ("If they're not here, that means --if they're not in the rectangle […] that means that they're already -- every pitch is different here."). That Salani so testified is not controverted by Plaintiffs' conclusory statements or by referring to Calello.


27.    At her deposition, Salani agreed that the portion of *Levitating*'s verse melody that she placed in red boxes in her Figure 3 consists of five groupings of four repeated 16th notes for every beat, moving in a descending motion, scale step by scale step. Salani Tr. 131:2-9; 133:14-134:2 & Depo. Ex. 9 (Lepera Decl., ¶ 8 & Ex. 6) ("Q. … And you've identified this as four repeated 16th notes for every beat moving in a descending motion, correct? A. Correct. Q. Step by step, correct? A. Correct. Q. Scale step by scale step, correct? A. Scale step, yes.").

**RESPONSE:** Undisputed.

**Counter-response**: No response is necessary.

28.     Figure 4 of the Salani Report contains a transcription of the same five groupings of 16th notes (and the same total of 20 notes) repeated in later measures in *Levitating*, which Salani acknowledged was again the sole element of similarity between *Levitating* and *Don Diablo*. Salani Report, p. 4 and Figure 4; Salani Tr. 147:21-148:24 & Depo. Exs. 9, 11 (Lepera Decl., ¶¶ 8, 10 & Exs. 6, 8) ("Q. … And we've also agreed that your red boxes are illustrating what you claim in *Levitating* is similar to material in *Don Diablo* that you've also identified in red boxes? A. Exactly."; "Q. … this … five-note descending pattern on 16[th] notes is what you have claimed to be at issue, correct? A. Yes.").

Figure 4: Third repetition of the same musical motive in LEV.



**RESPONSE:** Disputed. Salani did not agree that those 20 notes were the "sole element of similarity" between *Levitating* and *Don Diablo*. Salani was not asked whether this was the "*sole* element of similarity." Salani Tr. 147:21-148:24. *See* Salani Report, Figure 3A (comparing the verses at issue in *Levitating* and *Don Diablo* outside of the portion in the red boxes).

**Counter-response:** Plaintiffs fail to create a genuine issue of disputed fact as to this statement. First, Salani's testimony was clear that the descending pattern in the red box reflected above was what Salani "claimed to be at issue" between *Levitating* and *Don Diablo*. Salani Tr. 147:21-148:24 ("Q. And we've also agreed that your red boxes are illustrating what you claim in *Levitating* is similar to material in *Don Diablo* that you've also identified in red boxes? A. Exactly."; "Q. this…five note descending pattern on 16[th] notes is what you have claimed to be at issue, correct? A. Yes."), & Depo. Exs. 9, 11 (Lepera Decl. Exs. 6, 8). Second, Salani testified that notes outside

the red boxes were not relevant, and were indeed different. Salani Tr. 143:10-14 & Depo. Ex. 9 (Lepera Decl. Ex. 6, reproduced below) ("Q. I am talking about there's no box between measure 11 and 6 because these notes are all different, it's all different, right?  So that's why you didn't box it in?  A. Exactly"); *see also id.* at 140:17-21 ("If they're not here, that means – if they're not in the rectangle [. . . ] that means that they're already – every pitch is different here."). Plaintiffs' response thus fails to raise any material issue of fact. *See Risco*, 868 F.Supp.2d at 87 n.2.



29.     Calello identified the same measures shown in Salani's Figure 3 as "all relevant portions" of *Don Diablo* and *Levitating*, as reflected in the transcription below:



Calello Report at pp. 1-2; Calello Tr. 92:8-93:8 ("Q. So the transcriptions on page 2 contain what you consider to be all of the relevant portions for purposes of the musical analysis you're conducting in this report? A. Correct.").

**RESPONSE:** Undisputed.

**Counter-response**: No response is necessary.

30.    *Don Diablo* and *Levitating* do not open with descending patterns of 16th notes, and have introductions of different lengths. Salani Tr. 126:8-128:10 (*Levitating* has four-bar introduction, not eight), 129:22-130:22 ("A. Both songs don't start with those measures I transcribed."), 131:2-133:18 & Depo. Ex. 9 (Lepera Ex. 6) ("Q. Can we please write the accurate measure down for what this actually is in Levitating as opposed to measure 10? A. It would be 5, right? […] Q. … And so there's no confusion as to what you're actually doing there, can you please cross out measures 10, 11, 12, and 13? A. Yes.").

**RESPONSE:** Undisputed.

**Counter-response**: No response is necessary.

31.    The five groupings of repeated notes in *Levitating* are scale steps 5-4-3-2-1 descending down a minor scale. Salani Tr. 154:13-155:16 ("Q. Okay. And there's a repeat of each of these notes, these five notes, but they're still the same notes, correct? They're still 5, 4, 3, 2, 1, is it not? A. It is. Q. It doesn't change it from a scale, descending scale, does it? A. ***It doesn't change from the descending scale*** . . . Q. ***But it's still the same music, correct? A. It's still the same music. Q. It's still a descending scale? A. It's still a descending scale.***") (emphasis added).

**RESPONSE:** Undisputed.

**Counter-response**: No response is necessary.


32.    When writing music, there is a tendency to resolve down to scale step 1, as that is the root of the scale. Salani Tr. 152:8-154:12 ("Q. And the fifth is the dominant – A. Yes. Q. – of the scale, and the 1 is the tonic…. And isn't it correct that there's a tendency to resolve to a 1 frequently when you're writing music? A. Yes.").

**RESPONSE:** Undisputed.

**Counter-response**: No response is necessary.


33.    Salani annotated the pattern of repeated 16th notes in *Levitating* as descending on a B natural minor scale from scale step 5 to scale step 1, as shown below. Salani Tr. 147:21-154:17 & Depo. Exs. 11, 11-A (Lepera Decl. ¶¶ 10-11 & Exs. 8-9).



Figure 4: Third repetition of the same musical motive in LEV.



**RESPONSE:** Undisputed.

**Counter-response**: No response is necessary.


34.     The descending sets of repeated 16th notes at issue in the first measure of the verse of *Don Diablo* descend along steps 3-2-1-7-6 of a major scale, as illustrated by Salani's annotations below, which is a difference from *Levitating*:



Figure 3: Comparison between DD and LEV: the matching melodic motives in common



Salani Tr. 130:23-136:23, 137:14-143:19, & Depo. Ex. 9 (Lepera Decl. Ex. 6); *see also id.*, 146:11-147:18 & Depo. Ex. 10 (Lepera Decl. Ex. 7) ("Q. … For the record, all of the handwritten changes that you made with respect to Salani [Exhibit] 9 illustrating the differences between *Don Diablo* and *Levitating* apply with equal force to your figures 6A and 6B on Salani 10? A. Yes."); *id.*, 166:17-168:20, 169:7-14 & Depo. Ex. 12 (Lepera Decl., ¶ 12 & Ex. 10).

**RESPONSE:** Disputed. Salani Fig. 3 compares five measures of *Levitating* (bottom), written in its original key of B-minor, to five measures of *Don Diablo* (top), transposed from its original key

of Bb-major to D-major, which is the relative major key to *Levitating's* B-minor. *See* Salani Report at 1. Steps 3-2-1-7-6 of the D-major scale in *Don Diablo* are the same pitches as steps 5-4-3-2-1 of the B-minor scale in *Levitating*, since B-minor is the relative minor of D-major. This equivalence is shown in Salani Fig. 3.

**Counter-response:** Plaintiffs fail to create a genuine issue of disputed fact as to this statement. First, Plaintiffs' response is not responsive to the fact asserted, but tries to talk past it; so it is properly treated as if admitted. *See Risco*, 868 F.Supp.2d at 87 n.2. Second, critically, and by her own testimony and annotations reproduced above, Salani **admitted** this fact, namely, that the verse of *Don Diablo* descends along scale degrees 3-2-1-7-6 of a major scale, and that this differs from *Levitating* (which, as Plaintiffs concede, descends along scale degrees 5-4-3-2-1 of a minor scale). *See, e.g.*, CSUF ¶¶ 31, 33, 35, 87, 105, 107 (all undisputed). Further, Salani agreed that her handwritten notations "illustrat[ed] the differences" between the two works including in these scale steps. Salani Tr. 147:12-18. Plaintiffs have no evidence to controvert her admission.


35.    The modality of the scales used in the verse portions of *Don Diablo* and *Levitating* are different, as are their scale steps. Salani Tr. 134:21-136:23 ("Q. There's different scale steps … for each of these two works, are there not? Q. Yes, there are.") & Depo. Ex. 9 (Lepera Decl. Ex. 6) (identifying relative keys of D major for *Don Diablo* and B minor for *Levitating*); 138:19-139:6 ("Q… But within the red boxes, you would agree with me, would you not, that the scale steps for measure 10 in *Don Diablo* and measure 5 in *Levitating* are different? Q. The scales are different – the scale steps, yes, they are different."); *see also id.*, 146:11-147:18 & Depo. Ex. 10 (Lepera Decl. Ex. 7).

**RESPONSE:** Undisputed.

**Counter-response**: No response is necessary.

36.    As reflected by the red notations by Salani on her Exhibit 9, *Don Diablo* contains a second phrase of repeated 16th notes beginning on measure 12 that is one scale step lower than the first phrase. Salani Depo. Ex. 9 (Lepera Decl. Ex. 6); *see also* Salani Tr. 130:23-136:23, 137:14-144:8.

**RESPONSE:** Undisputed.

**Counter-response**: No response is necessary.

37.    As written in red by Salani on Exhibit 9, each one of the scale steps and pitches on the five groupings of four repeated 16th notes in measures 12-13 of *Don Diablo* is different from the scale steps and pitches of the music circled in the red box below in *Levitating.* Salani Depo. Ex. 9 (Lepera Decl. Ex. 6); *see also* Salani Tr. 139:14-144:8.

**RESPONSE:** Undisputed.

**Counter-response**: No response is necessary.

38.    As written in red by Salani on Exhibit 9, the scale steps on the five groupings of four repeated 16th notes in measures 12-13 of *Don Diablo* are 2-1-7-6-5 and the pitches are E, D, C#, B, A; the scale steps on the notes contained in the red box in Levitating below those measures in Don Diablo are 5-4-3-2-1 and the pitches are F#, E, D, C#, B.  Salani Tr. 139:14-144:8 & Depo. Ex. 9 (Lepera Decl. Ex. 6).

**RESPONSE:** Undisputed.

**Counter-response**: No response is necessary.

e)    **The Basic Use of Scales on 16th Notes**

39.    Major and minor scales each have seven notes. Calello Tr., 120:5-7 ("Q. Is it correct that any minor or major scale contains seven pitches? A. Yes."); Salani Tr., 136:5-16 ("Q. So you know there are seven notes in a scale, correct? A. Yes. Q. A major scale and a minor scale, you're familiar with those concepts, are you not? A. Yes. Yes, I am.").

**RESPONSE:** Undisputed

**Counter-response**: No response is necessary.

40.    Music scales go one of two ways, up or down. Salani Tr., 171:22-172:3 ("Q. And Scales can go one of two ways, right? A. Up or down.").

**RESPONSE:** Undisputed

**Counter-response**: No response is necessary.

41.    Going "up and down a scale" is a "rudimentary process." Salani Tr., 164:18-165:17 ("Q. So it's a rudimentary process, going up and down a scale, when you're a beginning pianist, isn't it? A. Yes.").

**RESPONSE:** Undisputed.

**Counter-response**: No response is necessary.

42.    It is common for piano students to practice scales repeating the notes, including on eighth and/or 16th notes. Salani Tr., 164:18-165:9 ("Q. When you teach your students to play scales, did you ever ask them to repeat the notes of the scale? A. Yes, of course. And do you ask them to repeat it on maybe 8th notes? A. Yes. Q. Did you ask them to repeat it on 16th notes? A. I do.").

**RESPONSE:** Undisputed.

**Counter-response**: No response is necessary.


43.    16th notes are one of the basic rhythmic values in 4/4 time (which both *Don Diablo* and *Levitating* are in) as reflected in the illustration below. Calello Tr. 108:20-111:18, 116:11-117:5 & Depo. Ex. 9 (Lepera Decl. ¶ 17 & Ex. 15) at p. 45; Calello Report at p. 4 (describing 16th notes as a "basic rhythm").

**RESPONSE:** Undisputed.

**Counter-response**: No response is necessary.




Metric levels: beat level shown in middle with division levels above and multiple levels below.

44.    C.L. Hanon's "The Virtuoso Pianist" (1900) contains repeated 16th-note exercises including going up a scale, which any publisher is free to sell and anyone can use. Salani Tr. 169:19-171:21 and Depo. Ex. 13 (Lepera Decl. ¶ 13 & Ex. 11).

**RESPONSE:** Undisputed.

**Counter-response**: No response is necessary.

45.    Transposed into C major and A minor, respectively, the descending five note groupings at issue in *Don Diablo* and *Levitating* would be on the white keys A, B, C, D, and E reflected in the diagram below; designing a sequence of five notes on a scale like this is "not that complicated." Salani Tr. 166:17-168:20, 169:7-14 & Depo. Ex. 12 (Lepera Decl. ¶ 12 & Ex. 12).

**RESPONSE:** Undisputed.

**Counter-response**: No response is necessary.



D.    **The Unrebutted Reports of Defendants' Expert Dr. Lawrence Ferrara Establish That the Compositions at Issue Are Vastly Different in Totality, and That the Only Matter in Common Between Plaintiffs' Compositions and *Levitating* Is the Use of Commonplace Musical Elements**[7]

a)    **Dr. Ferrara's Reports and Qualifications**

46.    On December 22, 2023, Defendants served three reports from their expert, Dr. Lawrence Ferrara: an affirmative report, and separate rebuttals to the Salani and Calello Reports.

---

[7] The material Undisputed Facts set forth above in and of themselves establish that Plaintiffs cannot meet their burden to prove any copyright infringement in this action. [**Response:** This is argument, and is therefore disputed.] In addition, Dr. Lawrence Ferrara's expert report stands unrebutted by Plaintiffs and provides substantial additional material facts in support of Defendants' motion. [**Response:** Disputed as misleading, because Plaintiff's experts were not afforded the opportunity to submit rebuttal reports.] [**Counter-response**: This footnote is not a fact offered but rather a statement as to Defendants' position that the admissions of Plaintiffs' experts support the grant of the motion in and of themselves; and that the unrebutted opinions of Dr. Ferrara add only further support for the motion.]

Lepera Decl., ¶¶ 18 & Ex. 16 ("Ferrara Report"); *id.*, ¶¶ 19-33 & Exs. 17-31 (exhibits to Ferrara Report); *id.,* ¶¶ 35-36 & Exs. 33-34 (rebuttal reports).

**RESPONSE:** Disputed. The header "D" is misleading argument, as Plaintiffs' experts were not afforded the opportunity to submit rebuttal reports; however, Ferrara's reports are rebutted to a significant extent by the testimony and reports of Plaintiffs' experts. Moreover, Ferrara contradicts and rebuts himself at times, for instance by showing that the identical (when transposed) 21-note sequence from *Don Diablo* appears three times in *Levitating*, establishing substantial similarity. Undisputed as to paragraph 46.

**Counter-response:** Plaintiffs admit the fact stated in paragraph 46. Headers such as header "D" are not facts stated, but nonetheless, Plaintiffs cite no specific evidence contrary thereto, merely offer conclusory legal assertions, and thus fail to "specifically controvert" the assertions even were they considered part of this statement. Plaintiffs mischaracterize Dr. Ferrara's report and findings, tellingly offering no citations to support their mischaracterization.


47.    Dr. Ferrara is a musicologist on the full-time faculty at New York University where his rank is Professor of Music, and his title is Director Emeritus of all studies (B.M. through Ph.D.) in Music and the Performing Arts in NYU's Steinhardt School. Ferrara Report, ¶ 1.

**RESPONSE:** Undisputed.

**Counter-response**: No response is necessary.


48.    Dr. Ferrara has been an active music copyright consultant for record companies, music publishing companies, motion picture companies, artists, and other individuals in the United States and abroad for more than 25 years. Ferrara Report, ¶ 1.

**RESPONSE:** Undisputed.

**Counter-response**: No response is necessary.


    **b)**  **Dr. Ferrara's Methodology**

49.  Dr. Ferrara conducted a comparative analysis of *Wiggle*, *Don Diablo*, and *Levitating* in their entireties**,** including by transcribing the works into musical notation, reviewing and transcribing prior art, and identifying elements that consist of commonplace expression present in prior or relevant art. Ferrara Report, *passim*; *see, e.g. id.* ¶¶, 5-14, 16, 22, 169-70, 316-17, 331-342 & Visual Exhibits B, C, K, L (Lepera Decl. Exs. 20-21, 29-30).

**RESPONSE:** Undisputed.

**Counter-response**: No response is necessary.


50.  The Ferrara Report examined the elements of Structure, Harmony, Rhythm, Melody, and Lyrics in separate comparisons of (1) *Wiggle* with *Levitating*, and (2) *Don Diablo* with *Levitating*. Ferrara Report, *passim*; *see e.g.,* ¶¶ 18-78, 184-241.

**RESPONSE:** Undisputed.

**Counter-response**: No response is necessary.


51.  There are two principal ways of comparing musical works in different modes (i.e. major and minor) by transposing them into comparable keys: "parallel" keys and "relative" keys. Using parallel keys, works are transposed to have the same pitch center. Using relative keys, the

works are transposed into the corresponding "relative" keys in major and minor modes. Ferrara Report, ¶¶ 22, 65 & n.24, 230.[8]

**RESPONSE:** Undisputed.

**Counter-response**: No response is necessary.

52.    The Ferrara Report supplied transcriptions in both parallel keys and relative keys. Ferrara Report, ¶ 22 & n. 12; *see generally* Ferrara Report & Visual Exhibits B, C, K, L thereto (Lepera Decl. Exs. 20-21, 29-30).

**RESPONSE:** Undisputed.

**Counter-response**: No response is necessary.

53.    A feature of using parallel keys to compare melodies in major and minor keys is that the melodic function of corresponding scale degrees is maintained. Ferrara Report, ¶ 65 & n.23-24.

**RESPONSE:** Undisputed.

**Counter-response**: No response is necessary.

c)    *Wiggle* **and** *Levitating*[9]

54.    Based on his analyses, Dr. Ferrara concluded that there were no significant structural, harmonic, melodic, rhythmic, or lyrical similarities, either individually or in the aggregate, between *Wiggle* and *Levitating*. Ferrara Report ¶¶ 5, 12, 16, 20-183, 331-342.

---

[8] There is no dispute that transposing compositions to compare them is standard musicological practice. *See* Ferrara Report, ¶ 22; Salani Report at pp. 1-2; Salani Tr. 109:24-110:17.

[9] As set forth above, in Paragraphs 12-19, Plaintiffs' experts did not compare *Levitating* and *Wiggle*

**RESPONSE:** Disputed. In reaching his conclusion, Ferrara ignores many similarities between the works and overvalues many insignificant differences. For instance, 16 notes in the pertinent two measures of *Wiggle* are identical in pitch (when transposed), rhythmic duration, and metric placement to the corresponding notes in *Levitating*. *See* Almonrode Decl., Ex. E (report of Defendants' expert Dr. Lawrence Ferrara) ("Ferrara Report"), Visual Exhibits C and L to Ferrara Rpt.; *see also* ¶ 177, *infra.* When he shows the 20-note sequence from *Don Diablo* and *Levitating* is identical when compared in the relative keys he is in fact tacitly concluding that the similarities are beyond similarities – they are identical.  Ferrara Rpt. at p. 113.

**Counter-response:** Plaintiffs fail to create a genuine issue of disputed fact as to this statement. First, Plaintiffs' response is not responsive to the actual fact stated in this paragraph, namely as to Dr. Ferrara's conclusions. Second, Plaintiffs' response consists wholly of improper (and unsupported) legal argument of counsel about Dr. Ferrara's conclusion, not a dispute that the conclusion was reached. Moreover, Plaintiffs again mischaracterize Dr. Ferrara's report, on many levels, including by inaccurately suggesting that he has shown or stated that any music between Plaintiffs' works and *Levitating* is "identical".

---

at all, trying to bypass their burden on that claim with an unavailing and ultimately abandoned contention that *Wiggle* and *Don Diablo* were "identical" in the relevant four measures at issue. Accordingly, with no analysis of *Wiggle*, Plaintiffs unquestionably cannot adduce any genuine issue of material fact as to substantial similarity with *Levitating*, no less striking similarity, which this Court ruled was their burden in its decision on Defendants' motion to dismiss for lack of access. *See* Dkt. 74 at 32-33.

The addition of these unrebutted material facts from Dr. Ferrara's Report regarding *Wiggle* is not meant to suggest that that they are necessary for Defendants to prevail, but rather to add even additional facts in support of Defendants' motion and to show how objectively baseless Plaintiffs' unproven allegations about *Wiggle* have been. **[RESPONSE: Disputed as improper argument.]**

55.     There are multiple structural differences between *Wiggle* and *Levitating* in terms of the placement and duration of various commonplace structural elements, such as their respective introductions, verses, choruses, and bridges. Ferrara Report, ¶¶ 18-19.

**RESPONSE:** Disputed.  There are few structural differences between *Wiggle* and *Levitating*. *See* Calello Report, Ex. A.

**Counter-response:** Plaintiffs fail to raise any genuine issue of disputed fact as to this statement. First, Plaintiffs fail to provide anything more than a conclusory assertion and cite only to transcriptions of the works, presented without analysis or discussion.  *See* L.R. 56.1(c) (statements of material fact "will be deemed to be admitted for purposes of the motion unless **specifically** controverted…") (emphasis added); *Campbell*, 2020 WL 5554645, at *3 ("To specifically controvert a statement of material fact, a nonmovant must do so with **specific** citation to admissible evidence.") (emphasis added). Nothing in the Calello's Exhibit A discusses "a few" structural differences. Second, the cited portion of the Ferrara Report enumerates in detail multiple structural differences between *Wiggle* and *Levitating*, which Plaintiffs have not disputed and cannot dispute. Moreover, even if Calello had raised "a few" unspecified structural differences, and there are none cited, Plaintiffs' quibble over the word "few" v. "multiple" creates no dispute.

56.     The introduction section of *Levitating* is significantly different from the introduction of *Wiggle*, both in terms of structure and expression. Ferrara Report, ¶¶ 18-28.

**RESPONSE:** Undisputed.

**Counter-response**: No response is necessary.

57.     *Wiggle* and *Levitating* are both in 4/4 meter, also known as "common time," which is a commonplace musical building block shared by countless musical compositions over centuries. Ferrara Report, ¶ 40.

**RESPONSE:** Disputed as to the term "musical building block," which is vague and undefined. *See* Almonrode Decl., Ex. B (transcript of deposition of Dr. Lawerence Ferrara) ("Ferrara Tr."), at 47:22-25. 4/4 meter is a commonplace time signature, shared by many musical compositions over centuries. *See id.* 41:12-18.

**Counter-response:** Plaintiffs admit that "4/4 meter is a commonplace time signature, shared by many musical compositions over centuries." Plaintiffs' attempt to quibble with the phrase musical building block does not create any genuine issue of disputed fact as to this statement.

58.     The chord progressions and harmonic rhythms in the verse portion of *Levitating* are significantly different from those in the verse of *Wiggle*. Ferrara Report, ¶¶ 15-38.

**RESPONSE:** Disputed. The chord progressions and harmonic rhythms in the portions of the verses of *Levitating* and *Wiggle* that are at issue are similar. *See* Salani Report at 3 (comparing *Wiggle* and *Don Diablo*: "Besides the matching melodic and rhythmic line, it is evident that the harmonic progression is exactly the same."); *see also id.* (comparing *Don Diablo* and *Levitating*: "Both songs display an identical melodic line, interval relationship, and rhythmic pattern" apart from "a subtle melodic variation.").

**Counter-response:** Plaintiffs fail to create a genuine issue of disputed fact as to this statement. First, none of the sections of the Salani report cited by Plaintiffs compares the verse portions of *Levitating* and *Wiggle*, let alone their chord progressions or harmonic rhythms. Second, the cited sentence concerning *Don Diablo* and *Levitating* does not even purport to address chords or

harmonic rhythm at all, even as between those two works. Plaintiffs' response in no way supports the existence of any material dispute.

59.     The lyrics in *Wiggle* and *Levitating* are significantly different. Their only lyrical similarity is the patter-style "performance" of different lyrics in a portion of their verses. Ferrara Report, ¶¶ 57, 77-78.

**RESPONSE:** Disputed. The parties agree that the lyrics in *Wiggle* and *Levitating* are different and are not at issue. Plaintiffs dispute that the *only* lyrical similarity is the patter-style "performance" of different lyrics in a portion of the verse; for instance, both *Wiggle* and *Levitating* verses contain vocal melodies with similar rhythms including five beats of 16th notes followed by similar variations in rhythm ending on beat three. Salani Report at 3-4; Calello Report at 2 ("Starting in the second bar, (bar 10) the melody in both songs move in the exact same direction except for one 8th note in bar 11. Also, the intervals are evenly matched, even being in different modes.").

**Counter-response:** Plaintiffs admit that the lyrics in *Wiggle* and *Levitating* are different, and fail to raise any genuine issue of disputed fact with respect to the balance of this fact. Plaintiffs fail to offer any evidence that there is any similarity in lyrics other than a "patter-style" performance of different lyrics in portions of their verses. On their face, the quotations from their experts are not about lyrics beyond the patter-style performance.

60.     The singing of rapid melodies "syllabically" as occurs in the compositions—*i.e.*, assigning one note to each syllable, often referred to as a "patter song" or "patter style"—has been a commonplace musical element for centuries. "Patter songs" often make use of repeated notes.

Ferrara Report, ¶¶ 6, 41-43 & n. 18, 58, 103 & n. 27, 223; *see also* Lepera Decl. ¶ 34 & Group Ex. 32 (recordings).

**RESPONSE:** Undisputed.

**Counter-response**: No response is necessary.

61.     While there are no notable rhythmic similarities, there are significant differences between the drumbeats in *Levitating* and those in *Wiggle*. The only rhythmic similarity in the drumbeats and percussion rhythms is four quarter-beats per bar on the kick (bass) drum, termed a "four-on-the-floor" rhythm, which is a commonplace and basic rhythm pattern popularized in disco music of the 1970s, before the release of *Wiggle*. Ferrara Report, ¶¶ 45-48.

**RESPONSE:** Disputed.   There *are* "notable rhythmic similarities" between the drumbeats in *Levitating* and *Wiggle*; Defendants' paragraph 61 (immediately above) concedes at least one such notable rhythmic similarity (the "four-on-the-floor" rhythm).

**Counter-response**:  Plaintiffs fail to raise a genuine issue of disputed fact as to this statement. First, Plaintiffs cite to no evidence to contradict the statement, which is sufficient reason to deem this fact admitted. Second, Plaintiffs admit below that the "four-on-the-floor" rhythm referenced in this statement is commonplace and basic; it is thus not "notable." *See* CSUF ¶ 104 (not disputing that "like both *Wiggle* and *Don Diablo*, *Stayin' Alive* uses a 'four-on-the-floor' kick drum pattern, a basic and commonplace pattern that was greatly popularized in disco music of the 1970s").

62.     The verse melodies of *Wiggle* and *Levitating* are in different modalities (major vs. minor) and on different scale degrees. Ferrara Report, ¶¶ 10, 22, 64-76, 179.

**RESPONSE:** Undisputed.

**Counter-response**: No response is necessary.

63.    Scale degrees, numbered 1-7, are "[t]he numbered positions of individual pitches within a major or minor scale," and "each pitch of a scale functions in a particular way with respect to the others." Ferrara Report, ¶ 7 & n.3.

**RESPONSE:** Undisputed.

**Counter-response**: No response is necessary.

64.    The similarity between the verse portions of *Levitating* and *Wiggle* consists of repeated notes stepwise descending down a scale in which notes are iterated four times on each scale degree, but in *Wiggle*'s verse melody there are differences of melodic contour and rhythm, including "leaps" of notes not present in *Levitating*, and the pattern of continuous, descending 16th notes is interrupted in *Wiggle* multiple times. Ferrara Report, ¶¶ 66-70 & Musical Examples 5(a), 5(b); *see also id.,* ¶¶ 56-65, 71-76.

**RESPONSE:** Disputed. The similarity between the verse portions of *Levitating* and *Wiggle* extends to beats two and three of the second measure of the verse melody, whereas the above statement refers only to the first measure and the first beat of the second measure of the verse melody, as well as the overall feel of the song. Salani Report pp. 3-4; Calello Report pp. 2-3 (comparing similarities in the meter and articulation of lyrics in *Wiggle* and *Levitating*, and comparing the structures of *Wiggle* and *Levitating*).

**Counter-response:** Plaintiffs fail to create any genuine issue of disputed fact as to this statement. First, there is no evidence to contradict that is indeed what Dr. Ferrara found. Second, there is no statement in Salani Report pp 3-4 that says anything about *Levitating* as compared to *Wiggle*, no

20037732.1

less what Plaintiffs say above. Salani Tr. 112:19-113:12; 134:15-20 ("Q. . . . we already established there's no comparison between Wiggles [sic]… and *Levitating*, correct? A. That's correct."). Third, the citation to the Calello Report broadly regarding "meter," "articulation of lyrics" and "structure" comparisons bears no relevance to and creates no dispute with respect to this fact statement.

65.    There also are differences between the developments of the verse melody of *Wiggle* as compared with the verse melody of *Levitating*. Ferrara Report ¶¶ 60-63, 66-69 and Musical Examples 5(a), 5(b).

**RESPONSE:** Undisputed.

**Counter-response**: No response is necessary.

66.    Comparing the compositions in parallel keys, even when disregarding the different scale degrees (which are almost completely different), after eliminating all notes that are not the same in pitch, rhythmic duration, and metric placement, there remains only one note that is the same in the four measures of the melody containing repeated 16th notes:

20037732.1



**MUSICAL EXAMPLE 6(a)**
**"Wiggle" / "Levitating" – Verse 1, bars 1-4 (Parallel keys)**

Ferrara Report ¶¶ 71-72, 74 & Musical Example 6(a).

**<u>RESPONSE</u>:** Disputed. Musical Example 6(a) of Dr. Ferrara's report shows several similarities between *Wiggle* and *Levitating*. Many notes have the same rhythmic duration and metric placement in both songs, including all of the notes in the first full measure apart from the last note of the second beat and the first note of the third beat (which are tied in *Wiggle* but separate in *Levitating*); and the last half of the fourth beat. The four 16th notes on beat one of the second measure have the same rhythmic duration and metric placement. There is a rest on beat four of the second measure in both songs, indicating the end of the musical phrase, and a pick-up 16th note on the "uh" of the fourth beat of the second measure in both songs, indicating the beginning of the second musical phrase of both songs. Every note of the third measure has the same rhythmic duration and metric placement except the second half (the "and-uh") of the fourth beat. The 16th notes in the first half (the "one-e") of the first beat of the fourth measure have the same rhythmic duration and metric placement. In the fourth measure, the quarter notes on the third beat and the

quarter-note rests on the fourth beat have the same rhythmic duration and metric placement. In both songs, the quarter-note rest on beat four of the fourth measure indicates the end of the second musical phrase.

**Counter-response:** Plaintiffs fail to create a genuine issue of disputed fact as to this statement. First, Plaintiffs cannot controvert that this is Dr. Ferrara's stated finding, that only one note is in common in these verse melodies after eliminating all notes that are not the same in pitch, metric placement **and** rhythmic duration, not even counting the dissimilarity in scale degrees. Second, Plaintiffs cannot dispute a fact based solely on statements of counsel without evidence. Plaintiffs have no evidence and cite to no **evidence** for this discourse about Dr. Ferrara's exhibit, none of which contradicts his findings. *See Risco*, 868 F.Supp.2d at 87 n.2 (disregarding "averments in Plaintiff's 56.1 Statement that are not denials of the specific[] facts asserted by Defendant" and "improper legal arguments"); L.R. 56.1(c) (statements of material fact "will be deemed to be admitted for purposes of the motion unless **specifically** controverted . . .") (emphasis added); *Campbell*, 2020 WL 5554645, at *3 ("To specifically controvert a statement of material fact, a nonmovant must do so with **specific** citation to admissible evidence.") (emphasis added).


67.    Comparing the compositions in relative keys, even when disregarding the different scale degrees (which are almost completely different), after eliminating all notes that are not the same in pitch, rhythmic duration, and metric placement, the only remaining notes in the measures of melody containing repeated 16th notes are a descending scale on repeated notes. The corresponding notes that are not X-ed out in Musical Example 6(b) have different scale degrees:



**MUSICAL EXAMPLE 6(b)**
**"Wiggle" / "Levitating" – Verse 1, bars 1-4 (Relative keys)**

Ferrara Report ¶¶ 73-74 & Musical Example 6(b).

**RESPONSE:** Disputed. Musical Example 6(b) of Dr. Ferrara's report shows several similarities between *Wiggle* and *Levitating*. The notes of the first measures of both songs are identical in pitch, rhythmic duration, and metric placement except for: the "e" of the second beat; the last note of the second beat and the first note of the third beat (which are tied in *Wiggle* but separate in *Levitating*); and the last half of the fourth beat. In the second measure, the 16th notes of the first beat and the quarter notes on the third beat are identical in pitch, rhythmic duration, and metric placement, and said quarter notes are not part of the melody containing repeated 16th notes in a descending scale. The "and" of the second beat of the second measure of both songs has the same scale degree, rhythmic duration, and metric placement. The "and" of the second beat of the fourth measure of both songs has the same scale degree. There is a rest in both songs on the fourth beat of the second measure, and a rest in both songs on the fourth beat of the fourth measure that has the same

rhythmic duration and metric placement.

**Counter-response:**  Plaintiffs fail to create a genuine issue of disputed fact as to this statement. First, Plaintiffs cannot controvert that this is Dr. Ferrara's stated finding, that after eliminating all notes that are not the same in pitch, rhythmic duration, ***and*** metric placement, the only remaining notes in the measures of melody containing repeated 16th notes are a descending scale on repeated notes. Second, Plaintiffs cannot dispute a fact based solely on statements of counsel without evidence. Plaintiffs have no evidence and cite to no ***evidence*** for this discourse about Dr. Ferrara's exhibit, none of which contradicts his finding in all events. *See Risco*, 868 F.Supp.2d at 87 n.2 (disregarding "averments in Plaintiff's 56.1 Statement that are not denials of the specific[] facts asserted by Defendant" and "improper legal arguments"); *Campbell*, 2020 WL 5554645, at *3 ("To specifically controvert a statement of material fact, a nonmovant must do so with ***specific*** citation to admissible evidence.") (emphasis added).


68.     Viewing *Wiggle* and *Levitating* in their entireties, Dr. Ferrara found the works to be significantly different overall. Ferrara Report, ¶¶ 12, 171-173, 180-181.

**RESPONSE**: Undisputed that it was his conclusion.

**Counter-response**: No response is necessary.


### d)     *Don Diablo* and *Levitating*

69.     Dr. Ferrara concluded that there were no significant structural, harmonic, melodic, rhythmic, or lyrical similarities, either individually or in the aggregate, between *Don Diablo* and *Levitating*. Ferrara Report ¶¶ 5, 12, 16, 184-342.

**RESPONSE:** Disputed.  As is plain from Ferrara's own exhibits, 21 notes in the pertinent two measures of *Don Diablo* are identical in pitch, rhythmic duration, and metric placement to the

corresponding notes in *Levitating. See* Visual Exhibits C and L to Ferrara Rpt.; *see also* ¶ 177, *infra.*

**Counter-response:**   Plaintiffs fail to create a genuine issue of disputed fact that Dr. Ferrara reached the conclusions set forth in this fact statement. Plaintiffs' counsel's statement about the Ferrara report "is not evidence," let alone competent expert evidence, and is inadmissible. *Jamaica Ash & Rubbish Removal Co. v. Ferguson*, 85 F.Supp.2d 174, 182 (E.D.N.Y. 2000).

70.     There are multiple structural differences between *Don Diablo* and *Levitating* in terms of the placement and duration of various building block structural elements, such as their respective introductions, verses, choruses, and bridges. Ferrara Report ¶¶ 184-185.

**RESPONSE** Disputed. Despite minor structural differences, *Don Diablo* and *Levitating* are similar in terms of placement, structure and duration of their respective introductions, verses, choruses, and bridges. *See* Calello Report Ex. A.

**Counter-response:**   Plaintiffs fail to raise a genuine issue of disputed fact as to this statement. There is no analysis in Exhibit A of the Calello Report, or elsewhere in any of Plaintiffs' expert reports comparing the entire structures of the works and none is cited, including for the response "despite minor structural differences." That is not evidence. Plaintiffs' conclusory assertion and citation to transcriptions, presented without analysis or discussion does not controvert this fact. *See* L.R. 56.1(c) (statements of material fact "will be deemed to be admitted for purposes of the motion unless ***specifically*** controverted…") (emphasis added); *Campbell*, 2020 WL 5554645, at *3 ("To specifically controvert a statement of material fact, a nonmovant must do so with ***specific*** citation to admissible evidence.") (emphasis added). The cited portion of the Ferrara Report enumerates in detail multiple structural differences between *Don Diablo* and *Levitating*, and

Plaintiffs' attempt to brand them as "minor" is supported by no specific evidence. Moreover, it is contradicted by Plaintiffs' admission that Calello identified nothing outside the verse portions of the works to be relevant. *See* CSUF ¶ 29 (undisputed that "Calello identified the same measures shown in Salani's Figure 3 as 'all relevant portions' of *Don Diablo* and *Levitating . . .* ").

71.    The introduction section of *Levitating* is significantly different from the introduction of *Don Diablo*, both in terms of structure and expression. Ferrara Report ¶¶ 184-95.

**RESPONSE:** Undisputed.

**Counter-response**: No response is necessary.

72.    The chord progressions and harmonic rhythms in *Levitating* are significantly different from those in *Don Diablo*. Ferrara Report ¶¶ 196-205.

**RESPONSE:** Disputed. "[T]he intervals are evenly matched, even being in different modes (major and minor keys)." Calello Report at 2. *See also* Salani Report at 3 (comparing *Don Diablo* and *Levitating*: "Both songs display an identical melodic line, interval relationship, and rhythmic pattern" apart from "a subtle melodic variation.").

**Counter-response:** Plaintiffs fail to create a genuine issue of disputed fact as to this statement. The statements and cited evidence presented are entirely non-responsive to the fact set forth in this paragraph, which concerns the works' "chord progressions and harmonic rhythm," not their respective melodies, intervals, or rhythms. *See* Salani Tr. 104:11-20 ("Q. So you identify the chord [. . .] but you don't do any discussion with respect to the element of harmony generally between -- with respect to all of the three works in the report? A. Exactly."); *id.* 145:2-14 (also admitting difference in harmonic rhythms); Calello Tr. 88:13-19 ("Q. Other than the transcription, does this

report contain any written analysis of the harmonies of Wiggle and Giggle, Don Diablo, and Levitating? A. This report? Q. Correct. A. Not that I see here.").

73.    *Don Diablo* and *Levitating* are in 4/4 meter, also known as "common time," which is a commonplace musical building block shared by countless musical compositions over centuries. Ferrara Report ¶ 207.

**RESPONSE:** Disputed as to the term "musical building block," which is vague and undefined. *See* Ferrara Tr. 47:22-25. 4/4 meter is a commonplace time signature, shared by many musical compositions over centuries. *See id*. 41:12-18.

**Counter-response:** Plaintiffs admit that "4/4 meter is a commonplace time signature, shared by many musical compositions over centuries." Plaintiffs' attempt to quibble with the phrase musical building block does not create any genuine issue of disputed fact as to this statement.

74.    The lyrics in *Don Diablo* and *Levitating* are significantly different. Their only lyrical similarity is a commonplace patter-style "performance" of different lyrics in a portion of their verses. Ferrara Report ¶¶ 240-41 & Visual Exhibit M (Lepera Decl. Ex. 31); *see also* ¶ 60, *supra*, incorporated by reference.

**RESPONSE:** Disputed. Plaintiffs dispute that the *only* lyrical similarity is the patter-style "performance" of different lyrics in a portion of the verse; for instance, both *Don Diablo* and *Levitating* verses contain melodies with similar contours. Salani Report at 3-4; Calello Report at 2 ("Starting in the second bar, (bar 10) the melody in both songs move in the exact same direction except for one 8th note in bar 11. Also, the intervals are evenly matched, even being in different

20037732.1

modes."). There are substantial similarities in the melody, rhythmic duration, and metric placement of the performance of the lyrics in *Don Diablo* and *Levitating*. Calello Report at 2-3.

**Counter-response:** Plaintiffs do not dispute that the lyrics in *Don Diablo* and *Levitating* are different, and fail to raise any genuine issue of disputed fact with respect to the balance of this fact. Plaintiffs fail to offer any evidence that there is any similarity in lyrics other than a "patter-style" performance of different lyrics in portions of their verses. On their face, the quotations from their experts are not about lyrics beyond the patter-style performance.


75.     While there are no notable rhythmic similarities, there are significant differences between the drumbeats in *Levitating* and those in *Don Diablo*. The only rhythmic similarity in the drumbeats and percussion rhythms in the works is four quarter-beats per bar on the kick (bass) drum, termed a "four-on-the-floor" rhythm, which is a commonplace and basic rhythm pattern popularized in disco music of the 1970s, before the release of Plaintiffs' Works. Ferrara Report ¶¶ 210-213 & Visual Exhibit D (Lepera Decl. Ex. 22).

**RESPONSE:** Disputed.  There *are* "notable rhythmic similarities" between the drumbeats in *Levitating* and *Don Diablo*; Defendants' paragraph 61 (immediately above) concedes at least one such notable rhythmic similarity (the "four-on-the-floor" rhythm).

**Counter-response** Plaintiffs fail to raise a genuine issue of disputed fact as to this statement. First, Plaintiffs cite to no evidence to contradict the statement, which is sufficient reason to deem this fact admitted. Second, Plaintiffs admit below that the "four-on-the-floor" rhythm referenced in this statement is commonplace and basic; it is thus not "notable." *See* CSUF ¶ 104 (not disputing that "like both *Wiggle* and *Don Diablo*, *Stayin' Alive* uses a 'four-on-the-floor' kick drum pattern, a basic and commonplace pattern that was greatly popularized in disco music of the 1970s").

76.     The similarity between the verse portions of *Levitating* and *Don Diablo* consists of a stepwise descending scale in which five notes are iterated four times on each scale degree, which is a commonplace musical device and practice. Ferrara Report ¶¶ 235, 237; *see also id.,* ¶¶ 221-34, 236, 238-39.

**RESPONSE:** Disputed. The similarity between the verse portions of *Levitating* and *Don Diablo* consist of a stepwise descending scale in which five notes are iterated four times on each scale degree, followed by a similar variation in the 16th note rhythm on beat two of the second measure of the phrase, and ending with an eighth note on beat three of the second measure of the phrase, which repeats six times throughout *Levitating*. Salani Report at 3-4; Calello Report at 2-3 (comparing similarities in the meter and articulation of lyrics in *Wiggle* and *Levitating*, and comparing the structures of *Wiggle* and *Levitating*).

**Counter-response:** Plaintiffs fail to create any genuine issue of disputed fact as to this statement. First, Plaintiffs have admitted the works' respective verse portions contain a "a stepwise descending scale in which five notes are iterated four times on each scale degree," and that such a scale is commonplace and unprotectable. *See, e.g.*, Opp. at 3, 17; CSUF ¶¶ 27, 31, 33, 40-45, 85-86, 90, 92-96. Second, beyond that unprotectable 20 note scale, Plaintiffs simply ignore Salani's deposition testimony under oath, in favor of citing her report as to which she admitted numerous errors and made concessions with respect thereto. Principally, Salani admitted that the portion of the works' verse melodies around which she drew a red box were what was "at issue," and confirmed that the notes outside of those boxes were not. *See* CSUF ¶¶ 26, 28, *supra*, incorporated by reference. This also is demonstrated by her marked up Exhibit 9 (*see id.*), which Plaintiffs also ignore, which shows all the material outside the red boxes is not the same on its face and by her handwritten comments. Moreover, the cited pages of the Salani and Calello Reports do not even

support that there is a "similar variation in the 16th note rhythm" on beat two in the verses' second full measures, that "ending with an eighth note" on beat three is a distinct or meaningful similarity, or that **any** purported similarity "repeats six times throughout *Levitating*." The citations to the Calello report provide no evidence to contradict this statement of fact. Argument of counsel that contradicts Plaintiffs' expert reports and testimony cannot create a genuine dispute. *See Risco*, 868 F.Supp.2d at 87 n.2 (disregarding "averments in Plaintiff's 56.1 Statement that are . . . not supported by citations to admissible evidence in the record, or that are contradicted by other admissible evidence in the record").

77.     The verse melodies of *Don Diablo* and *Levitating* occur in different modalities (major vs. minor) and on different scale degrees. Ferrara Report ¶¶ 10, 22, 231-34, 323, 326.

**RESPONSE:** Undisputed.

**Counter-response**: No response is necessary.

78.     There are differences between the developments of the verse melodies of *Don Diablo* as compared with the verse of *Levitating*. Ferrara Report ¶¶ 225-228, 231-234 & Musical Examples 42(a), 42(b).

**RESPONSE:** Undisputed.

**Counter-response**: No response is necessary.

79.     Comparing the verse melodies of *Levitating* and *Don Diablo* in parallel keys, 45 out of 46 of the notes are not the same in pitch, scale degree, rhythmic duration and metric placement:



Ferrara Report ¶¶ 235-36 & Musical Example 43(a).

**RESPONSE:** Disputed.  Many of the notes are the same rhythmic duration and metric placement. The notes in *Levitating* with a red X over them have different scale degrees and pitches, but most have the same rhythmic duration and metric placement as the corresponding notes in *Don Diablo*. *See* Calello Report at 2 (comparing the melodies and rhythms of *Don Diablo* and *Levitating)*; Salani Report at 3-4, 6-8, Figures 3A, 6A, 6B.

**Counter-response:**  Plaintiffs fail to create a genuine issue of disputed fact as to this statement, which is that when compared in parallel keys, 45 out of 46 notes are not identical in pitch, scale degree, rhythmic duration and metric placement---***all four of those elements.*** Plaintiffs in fact admit that the notes marked by a red "X" "have different scale degrees and pitches," and beyond this simply make non-responsive assertions that fail to controvert the statement.  Accordingly, the statement is admitted. *See Baity*, 51 F.Supp.3d at 418 (rejecting "purported denials" that "improperly interject arguments and/or immaterial facts in response to facts asserted by Defendants, often speaking past Defendants' asserted facts without specifically controverting those same facts").

80.     Comparing the verse melodies of *Levitating* and *Don Diablo* in relative keys, even when disregarding the different scale degrees (which are almost completely different), 25 out of 46 of the notes are not the same in pitch, scale degree, rhythmic duration and metric placement leaving only a descending scale on repeated notes as shown here. The corresponding notes that are not X-ed out in Musical Example 43(b) have different scale degrees:



Ferrara Report ¶¶ 237-238 & Musical Example 43(b).

**RESPONSE:** Disputed.  Many of the X-ed out notes in *Levitating* have the same rhythmic duration and metric placement as their corresponding notes in *Don Diablo*.  The notes on the "and" of the second beat in the second measure have the same scale degree, rhythmic duration, and metric placement.  *See* Calello Report p. 2 (comparing the melodies and rhythms of *Don Diablo* and *Levitating)*; Salani Report pp. 3-4, 6-8, Figures 3A, 6A, 6B.

**Counter-response:** Plaintiffs fail to raise a genuine issue of disputed fact as to this statement. They do not dispute that the X-ed out notes are not identical in pitch, rhythmic duration, **and** metric placement. That certain notes share only one or two of these aspects (if any) confirms this fact, not disputes it.

20037732.1

81.     Viewing *Don Diablo* and *Levitating* in their entireties, Dr. Ferrara found the works to be very different songs overall. Ferrara Report, ¶¶ 318-320, 327-328.

**RESPONSE:** Disputed. At times Dr. Ferrera finds portions of the songs when compared in the relative keys to be identical, for instance, 21 notes in the pertinent two measures of *Don Diablo* are identical in pitch, rhythmic duration, and metric placement to the corresponding notes in *Levitating. See* Visual Exhibits C and L to Ferrara Rpt.; *see also* 181, *infra.*

**Counter-response:** Plaintiffs fail to raise a genuine issue of disputed fact as to this statement. Plaintiffs have no evidence to, and do not actually, contradict that Dr. Ferrara found the works very different songs overall viewed "in their entireties." Plaintiffs' attempt to mischaracterize Dr. Ferrara's report's comments about "portions of the songs" is not responsive to the stated fact and raises no dispute.

### e)     Dr. Ferrara's Unrebutted Prior Art and Analysis Thereof

82.     On the basis of a non-exhaustive search, Dr. Ferrara identified at least **nine works of prior art** that contain melodies using descending scale steps on repeated 16th notes, illustrative of the basic and commonplace nature of such melodies. Ferrara Report ¶¶ 79-168, 242-315.[10] [11]

**RESPONSE:** Disputed as to the assertion in header "e)" that Ferrara's so-called prior art is unrebutted, when Plaintiffs' experts were not afforded a rebuttal report, and were not asked about any prior art examples at their depositions and further disputed as the Calello report addressed

---

[10] Dr. Ferrara's prior art analysis is summarized here with some of the visual examples included. The Ferrara Affirmative Report contains more detail and visual examples that only buttress the foregoing undisputed facts as to the commonplace nature of a descending scale step melody on repeated 16th notes.

[11] For the convenience of the Court, examples of prior and other relevant art provided via URLs in the body of the Ferrara Report are being lodged with the Court on a flash drive as Group Exhibit 32 to the Lepera Declaration.

there is no prior art in the public domain. Calello Rpt. at 4. Also disputed as to "illustrative of the basic and commonplace nature of such melodies," because of the incorrect implication that the musical expression at issue here is limited to the "melod[y] using descending scale steps on repeated 16th notes."

**Counter-response:** Plaintiffs fail to raise a genuine issue of disputed fact as to this statement. First, they do not dispute either Dr. Ferrara's prior art search or the search's findings as described in the statement. Second, they claim to dispute only a "header" and a postulated "implication," neither of which are part of the stated fact. Plaintiffs' complaints about the litigation process are of no moment and entirely non-responsive. Given that Plaintiffs have admitted the commonplace and unprotectable nature of the descending scale, the verbiage above about incorrect "implications" as to the prior art being "illustrative of the basic and commonplace nature of such melodies" is not evidence to counter Plaintiffs' admissions. There is no evidence supporting that there is "no prior art in the public domain;" to the contrary it is undisputed that there is, including by Plaintiffs' admissions. *See* CSUF ¶¶ 44, 49, 60, *supra*; ¶¶ 83-96, 98, 100, 102-105, 107-111, 113-116, 118-119, 121, *infra* (admitting facts about prior art, including prior art in the public domain).

### i.    *Contestación* (1958)

83.    *Contestación a La Casa en el Aire* (hereafter, "*Contestación*") was originally released in 1958, and was re-recorded and released by many artists during the 1970s. Ferrara Report ¶¶ 80, 243; *see also* Lepera Decl. Group Ex. 32 (*Contestación* recordings).

**RESPONSE: Undisputed**

**Counter-response**: No response is necessary.

84.     *Contestación* is in a major key. Ferrara Report ¶ 81.

**RESPONSE: Undisputed**

**Counter-response**: No response is necessary.


85.     *Contestación* contains a vocal melody comprised of five groups of four repeated 16th notes (20 notes) moving stepwise down the scale. Ferrara Report ¶¶ 80-82, 84-85, 243-245, 247-249 Musical Examples 7-10, 44-46.

**RESPONSE:** Undisputed.

**Counter-response**: No response is necessary.


86.     *Contestación* contains a pattern of repeated, patter-style notes descending scale-wise before either *Wiggle* or *Don Diablo.* Ferrara Report, ¶¶ 80, 223; *see also* Lepera Group Ex. 32.

**RESPONSE:** Undisputed.

**Counter-response**: No response is necessary.


87.     The only difference between the 5-4-3-2-1 descending 16th notes in *Levitating* and in *Contestación* is that the E notes at degree 3 in *Levitating* is an E Flat, not an E natural, as seen in the comparison below. Ferrara Report ¶¶ 243-245 & Musical Example 45.

**RESPONSE:** Undisputed.

**Counter-response**: No response is necessary.



88.     Similar to *Wiggle* and *Don Diablo*, *Contestación* contains a second phrase of repeated, descending 16th notes that is one step lower than the initial phrase. Ferrara Report, ¶¶ 82-84, 87, 92, 246, 249 & Musical Example 45.

**RESPONSE:** Undisputed.

**Counter-response**: No response is necessary.

### ii.     *El Cafetal – El Caiman* (1975)

89.     *El Cafetal – El Caiman* (hereafter, "*El Cafetal*") was recorded by Juan Vicente Torrealba and released in 1975. Ferrara Report ¶ 93; *see also* Lepera Decl. Group Ex. 32 (*El Cafetal* recording).

**RESPONSE: Undisputed**

**Counter-response**: No response is necessary.

90.     *El Cafetal* contains five groups of descending 16th notes moving in a descending scale, on scale degrees 5-4-3-2-1. Ferrara Report ¶¶ 94-103, 250-256 & Musical Examples 11-15, 47-49.

**RESPONSE:** Undisputed.

**Counter-response**: No response is necessary.

91.    A number of Latin American works from the 1970s reflect the popularity of using rapidly repeated 16th notes that descend along a scale, often repeated a whole step lower in the second phrase.  Ferrara Report, ¶¶ 103 & n. 27, 223; *see also id.,* ¶¶ 82-84, 87, 92, 246, 249 & Musical Example 45 (*Contestación*), ¶¶ 98-100, 254-256 & Musical Example 49 (*El Cafetal);* Lepera Decl. Group Ex. 32 (recordings).

**RESPONSE:** Disputed as to the ambiguity of the phrase "a number" means.

**Counter-response:**  Plaintiffs fail to create any genuine issue of disputed facts, as they cite no admissible contravening evidence.

### iii.    Carl Czerny's Studies and Exercises (19th Century)

92.    Carl Czerny (1791-1857) was a famous composer of many piano studies books that have been widely used by pianists and piano teachers since the 19th century. Ferrara Report, ¶ 104.

**RESPONSE: Undisputed**

**Counter-response**: No response is necessary.

93.    Study #22 in Czerny's *Schule Der Geläufigkeit* (*School of Fluency*), Opus 299 ("Czerny Study #22"), contains rapid 16th notes in which each note is iterated four times and moves stepwise to adjacent notes. Ferrara Report, ¶¶ 105, 257 & Musical Examples 16, 50.

**RESPONSE:** Undisputed.

**Counter-response**: No response is necessary.

94.    Czerny Study #22 is a pre-1976 work. Ferrara Report, ¶¶ 104-05.

**RESPONSE:** Undisputed

**Counter-response**: No response is necessary.


95.    As shown in the transcription below, Dr. Ferrara's three-way comparison of Bars 5-8 of Czerny Study #22 with *Levitating* and *Don Diablo*, in parallel keys and labeling scale degrees, identified the same pattern of repeated, descending 16th notes in Bars 5 and 6 of Czerny's study (seen here in the top staff):



Ferrara Report, ¶¶ 257-58 & Musical Example 51; *see also id.,* ¶¶ 259-261 & Musical Example 52; Audio Exhibit 1 at Track 6.

**RESPONSE:** Undisputed.

**Counter-response**: No response is necessary.

96.    As shown in the transcription below, Dr. Ferrara's three-way comparison of Bars 9-12 of Czerny Study #22 with *Levitating* and *Don Diablo*, in parallel keys and labeling scale degrees, identified that Bars 9-12 of the Czerny study contain two descending sequences of 16th notes iterated four times on the same scale degrees as *Levitating* (here identified with colored numbers), where the only difference in pitch from *Levitating* is that scale degree 3 in *Levitating* is an E flat, not an E natural:



Ferrara Report, ¶ 265 & Musical Example 54.

**RESPONSE:** Undisputed.

**Counter-response**: No response is necessary.

97.     Bars 5-8 in Czerny's Study #22 share more identical notes with the melody at issue in *Don Diablo* than are shared between *Don Diablo* and *Levitating* in parallel keys, while bars 9-12 of Study #22 share more identical notes with the melody at issue in *Levitating* than there are between the melodies at issue in *Don Diablo* and *Levitating* in parallel keys. Ferrara Report, ¶ 269 & Musical Examples 50-55; *see* Audio Exhibit 1 at Tracks 5-6.

**RESPONSE:** Disputed. When transposed into relative keys, *Don Diablo* and *Levitating* share a total of 63 notes that are identical as to rhythmic duration, and metric placement (because *Levitating* repeats the signature melody of *Don Diablo* three times). *See* Visual Exhibits C and L to Ferrara Rpt.; *see also* ¶ 181, *infra.*

**Counter-response:** Plaintiffs fail to create any genuine issue of disputed fact as to this statement. First, the fact discusses a comparison of the ***melody at issue*** of *Don Diablo* and *Levitating* in ***parallel keys***, as compared against Czerny's Study #22. Plaintiffs have no evidence to dispute it. Second, Plaintiffs' reference to a comparison ***in relative keys*** and including counting the notes across the repeats of the descending scale is wholly non-responsive, and diversionary. Plaintiffs have admitted that the 20-note descending scale is commonplace and unprotectable (regardless of being repeated three times) (*see* Opp. at 17; CSUF ¶¶ 27, 31, 33, 40-45). Their response here does not dispute Defendants' statement, which is properly treated as admitted. *See Risco*, 868 F.Supp.2d at 87 n.2 (disregarding "averments in Plaintiff's 56.1 Statement that are not denials of the specific[] facts asserted by Defendant").

98.     A second set of studies by Czerny, *Etudes for the Left Hand* (Opus 718), contains a study, #15, which consists of rapid 16th notes in which each note is iterated four times and

descends in stepwise motion to adjacent notes ("Czerny Study #15"). Ferrara Report, ¶¶ 121-122, 270-271 & Musical Examples 22-23, 56-57.

**RESPONSE:** Undisputed.

**Counter-response**: No response is necessary.


99.     Salani stated that Czerny's Etudes for the Left Hand Op. 718 belonged to the public domain. Salani Report, p. 9.

**RESPONSE:** Disputed as to any legal conclusion regarding Salani's belief that the piece is in the public domain.

**Counter-response:** Plaintiffs fail to raise any genuine issue of disputed fact as to this statement, which is that Salani admitted this prior art was in the public domain.


100.     Comparing the works in parallel keys, Czerny Study #15 contains a sequence of descending, repeated 16th notes on scale degrees 5-4-3-2-1 where the only difference with *Levitating* is that the "E" pitch on scale degree of 3 of Czerny Study #15 is an "Eb" (E-flat) pitch in *Levitating.* Ferrara Report, ¶¶ 122, 271 & Musical Examples 23, 57.

**RESPONSE:** Undisputed.

**Counter-response**: No response is necessary.


101.     The use of repeating 16th notes in a descending scale in Czerny's Study #22 and Study #15 demonstrate the commonplace use and nature of the similarity at issue. Ferrara Report ¶¶ 104-125, 257-275 & Musical Examples 16-24, 50-58.

**RESPONSE:** Disputed. The substantially similar verse melodies in the three songs, which include *but are not limited to and extend beyond* the repeated 16th notes in a descending scale, are at issue here; moreover, the presence of a descending 16th-note scale in the Study does not demonstrate its commonplace use and nature. *See* Salani Report, Figure 3A; Calello Report at 2-4; Calello Tr. 92:8-93:8; Visual Exhibits C and L to Ferrara Rpt.

**Counter-response:** Plaintiffs fail to raise any genuine issue of disputed fact as this statement. Plaintiffs persist in ignoring Salani's deposition testimony following her report, in which Salani explicitly ***agreed*** what she claimed was at issue was contained in the red boxes around the 20-note descending pattern, which she also admitted was a descending scale. *See* CSUF ¶ 27; Salani Tr. 140:17-21; 143:10-14; 147:21-148:24 & Depo. Exs. 9, 11 (Lepera Decl. Exs. 6, 8). Plaintiffs on this motion admit that scales played on repeated 16th notes are basic and commonplace, and are not protectable. *See, e.g.,* CSUF ¶¶ 40-45; Opp. at 17. Figure 3A in the Salani Report is merely a superimposed transcription of four verse measures of *Don Diablo* and *Levitating* and does not have any relevance to this statement of fact. Nothing in the Calello citations relates to Czerny's Study #22 or Study #15, or any prior art at all, no less anything that contradicts that they show that a descending scale of repeating 16th notes is commonplace. *See* Calello Report at 2-4; Calello Tr. 92:8-93:8. The cited excerpt from Calello's deposition testimony simply confirms that the transcriptions on page 2 of his report contained what he considered to be "all of the relevant portions" of the works, but without asserting what was specifically "at issue," let alone what was purported to be "substantially similar," which in any event is a legal conclusion. Such non-responsive diversions do not create any material issue. *See Risco*, 868 F.Supp.2d at 87 n.2 (disregarding "averments in Plaintiff's 56.1 Statement that are not denials of the specific[] facts

asserted by Defendant, or not supported by citations to admissible evidence in the record, or that are contradicted by other admissible evidence in the record, or that are improper legal arguments").

### iv.    The Bee Gees' *Stayin' Alive* (1977)

102.    *Stayin' Alive*, recorded by The Bee Gees, was released in 1977 as a single from the *Saturday Night Fever* soundtrack. The single was #1 for four consecutive weeks on the Billboard "Hot 100" in early 1978, a year before the release of *Wiggle*. Ferrara Report, ¶¶ 52, 126, 276; *see also* Lepera Decl. Group Ex. 32 (*Stayin' Alive* recording).

**RESPONSE**: Undisputed

**Counter-response**: No response is necessary.

103.    The tempo of *Stayin' Alive* is 103 beats per minute, the same as the tempo of *Levitating*. Ferrara Report, ¶¶ 54, 126.

**RESPONSE**: Undisputed

**Counter-response**: No response is necessary.

104.    Like both *Wiggle* and *Don Diablo*, *Stayin' Alive* uses a "four-on-the-floor" kick drum pattern, a basic and commonplace pattern that was greatly popularized in disco music of the 1970s. Ferrara Report, ¶¶ 47, 53, 126, 212, 217, 219, 277.

**RESPONSE**: Undisputed

**Counter-response**: No response is necessary.

105.    Like *Levitating*, but unlike *Wiggle* or *Don Diablo*, *Stayin' Alive* is in a minor key. Ferrara Report, ¶¶ 127, 279.

**RESPONSE**: Undisputed

**Counter-response**: No response is necessary.


106.    The opening chorus melody in *Stayin' Alive* has many more similar corresponding notes as compared with the melody at issue in *Levitating* than exist between melodies at issue in *Wiggle* and *Levitating*. Ferrara Report, ¶¶ 127-28, 137 & Musical Example 25.

**RESPONSE:** Disputed.  Musical Example 25 in Dr. Ferrara's report contains a transcription of *Levitating* and *Stayin' Alive* in the parallel key of C minor. Ferrara Report, ¶ 127.  Dr. Ferrara states *Levitating* is recorded in the key of B minor. *Id*., ¶ 22. Dr. Ferrara does not state what key *Stayin' Alive* was recorded in. If *Stayin' Alive* and *Levitating* were not transposed to C minor, the two songs would have far fewer similar corresponding notes. *See* Salani Report at 8 (stating, "I dispute the comparison of *Don Diablo* and *Levitating* to *Staying Alive*, because the disposition of the pitches and the syncopation occurring inside and between bars, don't represent an actual identical situation as demonstrated in Figure 3 where a rhythmic pattern of 4 same-pitch repeated 16th notes in descending motion are used. Moreover, the musical motive and phrase in *Staying Alive* doesn't allow to produce a syllabic continuity and rhythmic correspondence of the text to every note due to the syncopation, like the one we clearly demonstrated as occurring in *Don Diablo* and *Levitating* in Figures 6A and 6B of this report.").

**Counter-response:** Plaintiffs fail to raise a genuine issue of disputed fact as to this statement. First, Plaintiffs have no evidence to dispute the transcription and finding by Dr. Ferrara in the above statement that relates to *Wiggle* and *Levitating*. Second, the reference to *Staying Alive* in Salani's report is based on prior pre-litigation communications, has nothing to do with the findings and analysis stated in Dr. Ferrara's report, which stand unrebutted, and does not even refer to

*Wiggle*, but only *Don Diablo*. Plaintiffs do not cite any evidence controverting Defendants' statement, which is properly treated as if admitted. *See Risco*, 868 F.Supp.2d at 87 n.2 (disregarding "averments in Plaintiff's 56.1 Statement that are not denials of the specific[] facts asserted by Defendant, or not supported by citations to admissible evidence in the record, or that are contradicted by other admissible evidence in the record. . . .").

107.    Like *Levitating*, but unlike *Wiggle* or *Don Diablo*, the pattern of stepwise descending, repeated 16th notes in *Stayin' Alive* begins on scale step 5, and descends through steps 5-4-3-2 within its first measure. Ferrara Report, ¶¶ 127-130, 279-281 & Musical Examples 25, 59.

**RESPONSE:** Undisputed.

**Counter-response**: No response is necessary.

#### v.    ***Ging Gang Goolie***

108.    *Ging Gang Goolie* is a song associated with the international Scouting movement created no later than 1920, including one online version that dates from 1978. Ferrara Report, ¶ 139; *see also* Lepera Decl. Group Ex. 32 (*Ging Gang Goolie* recordings).

**RESPONSE**: Undisputed

**Counter-response**: No response is necessary.

109.    Like *Wiggle* and *Don Diablo*, but unlike *Levitating*, *Ging Gang Goolie* is in a major key. Ferrara Report, ¶¶ 10, 140, 291.

**RESPONSE**: Undisputed

**Counter-response**: No response is necessary.

110.    As shown in the excerpted transcription below, a portion of *Ging Gang Goolie* contains sets of four repeated 16th notes that descend along scale degrees 5-4-3-2, before descending to scale degree 1 in the next measure. Ferrara Report, ¶ 140 & Musical Example 28; *id.,* ¶ 291 & Musical Example 62.

**RESPONSE**: Undisputed.

**Counter-response**: No response is necessary.



vi.    ***Se Dice de Mi***

111.    *Se Dice de Mi* (hereafter, "*Se Dice*") is a work composed by South American composer, violinist, and orchestra conductor Francisco Canaro that was published as sheet music and released as a sound recording in 1943. Ferrara Report ¶¶ 145-146, 296.

**RESPONSE**: Undisputed

**Counter-response**: No response is necessary.

112.    The bridge section of *Se Dice* is in a major key, like the verse melodies of *Wiggle* and *Don Diablo*, and contains a descending sequence on the scale degree pattern 3-2-1-7-6, where

all except the final note are groups of four repeated 16th notes. The only difference in this pattern from the *Don Diablo* verse melody is the duration of the last note. Ferrara Report ¶ 146, 148-149, 298-299 & Musical Examples 31, 65.

**RESPONSE:** Disputed. The bridge section of *Se Dice* in Ferrara's report referenced above contains a time signature of 2/4 and an ascending and descending sequence on the scale degree patterns 1-2-3-2-1-7-6 consisting of six groups of four repeated 16th notes followed by an eighth note on beat one of the fourth measure (not counting the pick-up at the beginning of the bridge). There are multiple differences between the bridge section of *Se Dice* and *Don Diablo*. Salani Report at 8-9 (stating, "[I]n *Se Dice de Mi*, the musical phrase of repeated 16th notes, starts going up, as highlighted by the small red diagram. The ascending and descending melodic line of *Se Dice De Mi* has an opposite, contrary motion compared to the only descending melodic line of DD and LEV, and it sounds completely different from the above-mentioned songs.")

**Counter-response:** Plaintiffs fail to raise a genuine issue of disputed fact as to this statement. First, Plaintiffs have no evidence to dispute Dr. Ferrara's finding or report. The first sentence in their response is not supported by any evidence, as none exists. This is thus counsel's inadmissible statement. Even therein, Plaintiffs do not dispute that "[t]he bridge section of *Se Dice* is in a major key, like the verse melodies of *Wiggle* and *Don Diablo*, and contains a descending sequence on the scale degree pattern 3-2-1-7-6, where all except the final note are groups of four repeated 16th notes"---indeed, their inadmissible response actually ***confirms*** this fact ("patterns 1-2-**3-2-1-7-6** consisting of **six groups of four repeated 16th notes** followed by an eighth note on beat one of the fourth measure) .Second, Salani's reference to *Se Dice* in her report is based on prior pre-litigation communications, and has nothing to do with the findings and analysis stated in Dr. Ferrara's report, which stands unrebutted. Even if considered, Salani's reference confirms the

descending pattern exists in *Se Dice*. That it also includes a set of ascending notes does not dispute the existence of the descending sequence and thus does not dispute this statement of fact. Defendants' fact is properly treated as if admitted.

113.    As in *Wiggle* and *Don Diablo*, but unlike *Levitating*, the sequence of notes in the initial musical phrase of the *Se Dice* bridge section is repeated a scale step lower in its second phrase. Ferrara Report ¶¶ 150, 300.

**RESPONSE:** Undisputed.

**Counter-response**: No response is necessary.

114.    Dr. Ferrara offered the following comparative transcription, identifying in brackets the corresponding portions of the *Se Dice* bridge melody and *Don Diablo* verse melody:



Ferrara Report, ¶¶ 301 & Musical Example 66; *see also* Audio Exhibit 1 at Tracks 7-8

**RESPONSE:** Undisputed.

**Counter-response**: No response is necessary.

### vii. *Loeschhorn*

115. In a series titled *Universal Studies*, Albert Loeschhorn (d. 1905) published a book titled "For the Medium Grade," bearing an 1881 copyright notice, which included "preparatory exercises," including one such exercise placed before a work titled "Etude X" (hereafter, "*Loeschhorn*"). Ferrara Report, ¶¶ 158, 305 & Visual Exhibit I (Lepera Decl. Ex. 27).

**RESPONSE**: Undisputed

**Counter-response**: No response is necessary.

116. *Loeschhorn* is in a major key. Ferrara Report ¶ 159.

**RESPONSE**: Undisputed

**Counter-response**: No response is necessary.

117. *Loeschhorn* contains a descending sequence on the scale degree pattern 2-1-7-6-5 in groups of four repeated 16th notes. Ferrara Report ¶¶ 158-161, 305-308; Musical Examples 34-35, 35(A), 68, 69, 69(A).

**RESPONSE:** Disputed. The *Loeschhorn* examples in Dr. Ferrara's report labeled Musical Examples 34-35 and 68-69 contain a time signature of 4/4 and a descending sequence on the scale degree pattern 2-1-7-6-5-4-3-2-1 consisting of eight groups of four repeated 16th notes followed by a whole note on measure three beat one. The *Loeschhorn* example in Dr. Ferrara's report labeled Musical Examples 35(A) and 69(A) contain a time signature of 4/4 and a descending sequence on the scale degree pattern 2-1-7-6-5-4-3-2 consisting of eight groups of four repeated

16th notes. *See* Ferrara Report ¶¶ 158-161, 305-308; Musical Examples 34-35, 35(A), 68, 69, 69(A).

**Counter-response:** Plaintiffs have not raised a genuine issue of disputed fact as to this statement. First, Plaintiffs cite no evidence contrary to Dr. Ferrara's report and do not dispute that this is his express finding. Second, their characterization of Dr. Ferrara's report is supported only by a statement of counsel and is without evidence. Third, even if considered, that inadmissible statement **confirms** that *Loeschhorn* contains a descending sequence of scale degrees 2-1-7-6-5 in groups of "four repeated 16th notes." The statement is therefore properly treated as if admitted. *See Risco*, 868 F.Supp.2d at 87 n.2 (disregarding "averments in Plaintiff's 56.1 Statement that are not denials of the specific[] facts asserted by Defendant").

### viii.    *Arban*

118.    Jean-Baptiste Arban's *Complete Conservatory Method for Trumpet*, #83 (1864) (hereafter, "*Arban*") is a pre-1976 work. Ferrara Report ¶¶ 165, 312 & Visual Exhibit J (Lepera Decl. Ex. 28).

**RESPONSE: Undisputed**

**Counter-response**: No response is necessary.

119.    *Arban* is in a major key. Ferrara Report ¶¶ 166, 313.

**RESPONSE: Undisputed**

**Counter-response**: No response is necessary.

120.    *Arban* contains several scale-wise descending sequences that are composed of groups of four repeated 16th notes except for the last eighth note, including on scale degrees 1-7-6-5 and 5-4-3-2. Ferrara Report ¶¶ 165-68, 313-314; Musical Examples 36-37, 70-71.

**RESPONSE:**  Disputed.  The *Arban* examples in Dr. Ferrara's report labeled Musical Examples 36-37 and 70-71 contain a time signature of 2/4 and scale-wise descending sequences that are composed of three beats of four repeated 16th notes followed by an eighth note on the second beat of the second measure of each music phrase, and include scale degrees of 1-7-6-5, 7-6-5-4, 6-5-4-3, and 5-4-3-2. *See* Ferrara Report ¶¶ 165-68, 313-314; Musical Examples 36-37, 70-71.

**Counter-response:** Plaintiffs fail to raise a genuine issue of disputed fact as to this statement. First, Plaintiffs cite no evidence contrary to Dr. Ferrara's report and do not dispute that this is his express finding. Second, their characterization of Dr. Ferrara's report is supported only by a statement of counsel and is without evidence. Third, even if considered, that inadmissible statement **confirms** that *Arban* contains "scale-wise descending sequences" composed of "four repeated 16th notes," including on "scale degrees 1-7-6-5" and "5-4-3-2." The statement is therefore properly treated as if admitted. *See Risco*, 868 F.Supp.2d at 87 n.2 (disregarding "averments in Plaintiff's 56.1 Statement that are not denials of the specific[] facts asserted by Defendant").

f)    **Undisputed Facts Regarding Works of Popular Music Created Since 1979 Which Contain Patterns of Repeated 16th Notes Descending Along A Scale**

121.    Many other popular songs released after 1979 but before the 2020 release of *Levitating* demonstrate the commonplace nature of repeated notes that descend in scale-wise fashion, often in a "patter song" style, including Paulino Rubio, *Mio* (Mexico, 1992); Christina Millian, *AM to PM* (U.S., 2001); Isley Brothers, *What Would You Do, Pt. 2* (U.S., 2003);

69

Mashonda, *Back of the Club* (U.S., 2005); Lily Allen, *LDN* (U.K., 2006); Momoiro Clover Z, *Neo STARGATE* (Japan, 2013); Leo Soul, *Do Ya Thing* (U.S., 2016); Ricky Martin, *Vente Pa' Ca ft. Maluma* (U.S., 2016); Grupo Marca Registrada, *Cumbia del Coralillo* (Mexico, 2017); Macky Gee, *Moments* (U.K., 2018); and Ivy Queen, *La Roca* (Puerto Rico, 2019). Ferrara Report, ¶¶ 169-70, 316-17 & Visual Exhibit K (Lepera Decl. Ex. 29); *see also* Lepera Decl. Group Ex. 32 (recordings).

**RESPONSE:** Undisputed.

**Counter-response**: No response is necessary.


122.    Dr. Ferrara opined that the diverse works he considered that were released after 1979 reinforced the conclusion that there is very strong musicological support for finding that the musical phrase at issue was a commonplace melodic device used long before and after either *Wiggle* or *Don Diablo*, and that *Levitating* was created independently of them. Ferrara Report, ¶¶ 170, 317.

**RESPONSE:** Disputed as to the incorrect implication that the stepwise descending scale on 16th notes comprises the full extent of the musical expression at issue in this matter. *See* Calello Report at 1-2; Calello Tr. 92:8-93:8 (describing two-measure phrase as "all of the relevant portions for purposes of the musical analysis"); Visual Exhibits C and L to Ferrara Rpt.

**Counter-response:** Plaintiffs fail to raise a genuine issue of disputed fact as to this statement. Plaintiffs do not dispute the fact and thus concede it. Plaintiffs' claim to dispute a supposed "implication" of the fact is non-responsive and can be disregarded. *See* Baity, 51 F.Supp.3d at 418 (rejecting "purported denials" that "improperly interject arguments and/or immaterial facts in

response to facts asserted by Defendants, often speaking past Defendants' asserted facts without specifically controverting those same facts").

## II.    DEFENDANTS' RESPONSES TO PLAINTIFFS' "COUNTER-STATEMENTS OF UNDISPUTED MATERIAL FACT"[12]

### A.    Defendants' Expert Dr. Lawrence Ferrara

123.    Ferrara testified that he had never created an arrangement or composed music that was a hit. Ferrara Tr., 10:6-14.

**DEFENDANTS' RESPONSE:** This statement should be stricken, as it is entirely inappropriate and irrelevant to the issues presented on the only summary judgment motion pending: Defendants' motion for summary judgment. To the extent a response is required, Dr. Ferrara's testimony is undisputed solely for purposes of this motion, but immaterial to the undisputed facts on the pending motion. Plaintiffs have not raised a genuine issue of disputed fact by this statement.

124.    Ferrara testified on behalf of the defendants in eight of the nine cases listed in his report for which he provided deposition and/or trial testimony. Ferrara Tr., 24:3-6.

**DEFENDANTS' RESPONSE:** This statement should be stricken, as it is entirely inappropriate and irrelevant to the issues presented on the only summary judgment motion pending: Defendants' motion for summary judgment. To the extent a response is required, Dr. Ferrara's testimony that since 2016 he has testified on behalf of the defendant(s) in eight of the cases listed

---

[12] As discussed above, Plaintiffs have submitted a lengthy purported set of additional alleged "undisputed material facts" that in large part have absolutely nothing to do with the issue on the single pending Summary Judgment Motion and which distort testimony and present irrelevancies simply to distract and divert from the core issue of the lack of protectability of the music at issue. Certainly, none of the statements below contains any evidence that disputes Defendants' Statement of Material Undisputed Facts set forth above in support of their motion.

in his report and on behalf of the plaintiff(s) in the other is undisputed solely for purposes of this motion, but immaterial. Plaintiffs have not raised a genuine issue of disputed fact as to this statement.

125.    Ferrara testified that he was not aware of a published, objective list of musical "building blocks." Ferrara Tr., 41:12-18; *see also id.*, 45:23 - 46:9.

**DEFENDANTS' RESPONSE:** Dr. Ferrara testified that he was "not aware of any so-called list of building blocks." Ferrara Tr. 45:23-46:9. But Dr. Ferrara also testified that "the compendium names at least three, what would clearly be called, building blocks that the compendium says are not copyrightable" (*id.* at 41:22-42:16), and that additional information regarding building blocks could be found in at least three published cases (*id*. at 44:2-45:13, 46:6-47:21). Thus, Plaintiffs' statement is an inaccurate reflection of Dr. Ferrara's testimony, but regardless it is immaterial to the pending motion and thus is not disputed solely for purposes of this motion. Plaintiffs have not raised a genuine issue of disputed fact by this statement.

126.    Ferrara was unable to identify a minimum number of notes that would be required to constitute a musical "building block." Ferrara Tr., 49:16-24.

**DEFENDANTS' RESPONSE**: This question is fundamentally flawed as predicated on there being a minimum number of notes "required" to constitute a musical "building block." The question and answer are wholly immaterial to the pending motion however and thus are undisputed solely for purposes of this motion. Plaintiffs have not raised a genuine issue of disputed fact by this statement.

20037732.1

127.    Ferrara was unable to identify a maximum number of notes that would no longer be considered a musical "building block." Ferrara Tr., 50:7-14.

**<u>DEFENDANTS' RESPONSE:</u>** This question is fundamentally flawed as predicated on there being a maximum number of notes that would no longer be considered a musical "building block." The question and answer are wholly immaterial to the pending motion however and thus are undisputed solely for purposes of this motion. Plaintiffs have not raised a genuine issue of disputed fact by this statement.

128.    When asked whether the term "building block" "originated from the legal context and not the musical context," Ferrara testified "No." Ferrara Tr., 39:25 - 40:6.

**<u>DEFENDANTS' RESPONSE:</u>** Defendants objected to this question as fundamentally flawed in its lack of foundation, but as the question and answer are wholly immaterial to the pending motion, they are thus undisputed solely for purposes of this motion. Plaintiffs have not raised a genuine issue of disputed fact by this statement.

129.    Ferrara testified, "my use of [the term] building blocks comes from, as I recall, some of the case law that was associated with cases in which I gave testimony." Ferrara Tr., 38:13-16; *see also id.* 38:13-21 (mentioning *Led Zeppelin* and *Gray v. Perry* decisions); 45:6-13 ("being more consonant ... with more recent caselaw . . . I would certainly call C, D-flat, C a musical building block"); 47:17-21 ("what I've called musical building blocks are consistent with musicology and . . . quite consistent with recent case law"); 137:12-16 (referring to the "understanding by the courts").

**DEFENDANTS' RESPONSE:** Undisputed for purposes of only this motion, but immaterial to the undisputed facts on the pending motion. Plaintiffs have not raised a genuine issue of disputed fact by this statement.

130.    In his testimony and his reports, Ferrara did not identify a single musicological textbook, other scholarly work, or other non-legal authority in which the term "building block(s)" is used. *See generally* Ferrara reports, Ferrara Tr.

**DEFENDANTS' RESPONSE:** Undisputed for purposes of only this Motion, but immaterial to the undisputed facts on the pending motion. Plaintiffs have not raised a genuine issue of disputed fact by this statement.

131.    Ferrara testified that he did not define the term "building block" in his Report. Ferrara Tr., 47:22-25.

**DEFENDANTS' RESPONSE:** Undisputed solely for purposes of this Motion, but immaterial to the undisputed facts on the pending motion. Plaintiffs have not raised a genuine issue of disputed fact by this statement.

132.    Ferrara testified that the term "building block" would not appear in the Harvard Dictionary of Music. Ferrara Tr., 48:1-6.

**DEFENDANTS' RESPONSE:** Dr. Ferrara testified that the term would not appear because it "would be redundant." *Id.* at 48:7-49:15. Undisputed solely for purposes of this Motion, but immaterial to the undisputed facts on the pending motion. Plaintiffs have not raised a genuine issue of disputed fact by this statement.

74

133.    Ferrara testified that it would not change his analysis if one of the alleged authors of *Levitating* admitted to directly copying from *Wiggle* and/or *Don Diablo*, because, as he said, "The key, for me, as a musicologist, is not on access or on statements that are purported or not by writers." Ferrara Tr., 155:2-6 and 17-20; *see also id.*, 155:20- 158:18; 93:20 - 94:18.

**DEFENDANTS' RESPONSE:** Undisputed solely for purposes of this Motion, but immaterial to the undisputed facts on the pending motion. Plaintiffs have not raised a genuine issue of disputed fact by this statement.


134.    Ferrara testified that *Wiggle*, *Don Diablo*, and *Levitating* differed from the song *Contestación a la Casa en el Aire*. Ferrara Tr., 169:25 - 175:12 (phrase beginning in the second beat in the second bar in *Contestación* differs from phrase beginning at same point in *Levitating*, *Wiggle*, and *Don Diablo*); 175:15 - 177:4 (songs differ in the rhythmic value of the last note of the phrase in the first two bars).

**DEFENDANTS' RESPONSE:** Undisputed solely for purposes of this Motion, but immaterial to the undisputed facts therein. Dr. Ferrara testified to certain differences between *Contestación* and Plaintiffs' works, and between *Contestación* and *Levitating,* however such testimony does not change that he found and testified to undisputed material ***similarities*** in unprotectable expression between *Contestación* and Plaintiffs' works and *Levitating*, with respect to the music at issue. *See* CSUF ¶¶ 83-88 (all undisputed). Plaintiffs have not raised a genuine issue of disputed fact by this statement.


135.    Ferrara testified that *Wiggle*, *Don Diablo*, and *Levitating* differed from the song *El Cafetal*. Ferrara Tr. 177:19 - 178:7 (rhythmic differences beginning on beat two of bar two).

**DEFENDANTS' RESPONSE:** Undisputed solely for purposes of this Motion, but immaterial to the undisputed facts thereon. Dr. Ferrara testified to certain differences with *El Cafetal*, but such testimony does not change that he found and testified to material ***similarities*** in unprotectable expression between *El Cafetal* and Plaintiffs' works and *Levitating*, with respect to the music at issue. *See* CSUF ¶¶ 89-90 (undisputed). Plaintiffs have not raised a genuine issue of disputed fact by this statement.

136.    Ferrara testified that *Wiggle*, *Don Diablo*, and *Levitating* differed from the song *Ging Gang Goolie*. Ferrara Tr., 178:25 - 182:10.

**DEFENDANTS' RESPONSE:** Undisputed solely for purposes of this Motion, but immaterial to the undisputed facts thereon. Dr. Ferrara testified to certain differences with *Ging Gang Goolie*, but such testimony does not change that he found and testified to material ***similarities*** in unprotectable expression between *Ging Gang Goolie* and Plaintiffs' works and *Levitating*, with respect to the music at issue. *See* CSUF ¶¶ 108-110 (undisputed). Plaintiffs have not raised a genuine issue of disputed fact by this statement.

137.    Ferrara testified that "there are similarities *and differences* in the descending scale with sixteenth notes at issue" between (on the one hand) *Wiggle*, *Don Diablo*, and *Levitating*, and (on the other hand) *Stayin' Alive*. Ferrara Tr., 185:16-24 (emphasis added).

**DEFENDANTS' RESPONSE:** Undisputed solely for purposes of this Motion, but immaterial to the undisputed facts thereon. Dr. Ferrara testified that each of *Wiggle*, *Don Diablo*, and *Levitating* had certain differences with *Staying Alive*, but such testimony does not change that he found and testified to material ***similarities*** in unprotectable expression between *Staying Alive* and Plaintiffs'

works and *Levitating*, with respect to the music at issue. *See* CSUF ¶¶ 102-105, 107 (all undisputed). Dr. Ferrara also found differences in the descending scales at issue in *Levitating* and Plaintiffs' works, which differences Salani also admitted at her deposition. *See* CSUF ¶¶ 35-38, 62, 65, 77-78 (undisputed). Plaintiffs have not raised a genuine issue of disputed fact by this statement.

138.    Ferrara testified that a layperson could hear that *Levitating* and *Don Diablo* sounded similar. Ferrara Tr. 105:13-106:3.

**DEFENDANTS' RESPONSE:** Paragraph 138 misstates the testimony, as the testimony is that a lay person "may or may not" hear a similarity in that "they're listening to a ***musical building block*** that has similarities in 20 notes." *See* Ferrara Tr. 105:13-106:10 (emphasis added). The testimony is also speculation, and immaterial to the undisputed facts at issue on this Motion. To the extent a response is required, it is undisputed solely for purposes of only this Motion. Plaintiffs have not raised a genuine issue of disputed fact by this statement.

139.    Ferrara was unable to demonstrate that ***any*** prior art included the Plaintiffs' signature melody in its ***totality***. Ferrara Rpt. at 115-160.

**DEFENDANTS' RESPONSE:** Paragraph 139 is not supported by citation to any admissible evidence as there is no statement in Dr. Ferrara's Report of "Plaintiffs' signature melody" including on the cited pages, which notably contain only a portion of the Ferrara Report's discussion of prior art (and none of its main analysis of the verse melodies in Plaintiffs' works). *See* Ferrara Report at pp. 26-88; 106-114. Nothing in Dr. Ferrara's Report in any way characterizes either of *Wiggle* or *Don Diablo* as having a single "signature melody," let alone one that is found

in *Levitating*. To the extent a response is required, undisputed solely for purposes of only this Motion, but immaterial that Dr. Ferrara did not identify prior art that included the entire verse melody of *Wiggle* or the entire (separate) verse melody of *Don Diablo*. Dr. Ferrara's report explains in detail how he conducted his prior art search and the prior art that he found, which established that what was in common between *Levitating* and Plaintiffs' verse melodies, despite their undisputed melodic differences, was present in prior art. *See, e.g.*, CSUF ¶¶ 49-52, 60, 62, 65, 77-78, 83-90, 92-96, 98, 102-105, 107-111, 113-114, 121 (all undisputed); *see also id.*, ¶¶ 31-33, 35-38, 40-45 (undisputed). Plaintiffs have not raised a genuine issue of disputed fact by this statement.

## B.    Plaintiffs' Expert Charles Calello

### i.    Calello's Qualifications

140.    Plaintiffs' expert Charles Calello wrote, arranged, and/or produced numerous hit songs. Calello Report, at 1 ("42 top ten records"); 5 ("Calello arranged and/or produced several ... top ten hit records"); *id.* (arranged and/or produced hits for Laura Nyro, Frank Sinatra, Neil Diamond, Bruce Springsteen, Barbara Streisand, Glen Campbell, and others); *id.* ("in 1979 he had his own hit record with a disco version of 'Sing Sing Sing.'"); *id.* (over 100 Billboard chart records); *see also id.*, at 7-12 (lists of Calello's Billboard Magazine Top 100 songs, country hits, and notable albums and CDs on which he appears as arranger and/or Producer including *Sweet Caroline* by Neil Diamond, *Southern Nights* by Glen Campbell, *All By Myself* by Eric Carmen, *After The Lovin'* by Engelbert Humperdinck, and Bruce Springsteen's album *Born To Run*).

**DEFENDANTS' RESPONSE:** Undisputed solely for purposes of this Motion, but immaterial. Plaintiffs have not raised a genuine issue of disputed fact by this statement.

141.    Calello graduated from Arts High School in Newark, New Jersey—the first music and arts high school in the United States—where his classmates included such future stars as Wayne Shorter, Connie Francis and Sarah Vaughan. Calello Tr. 24:6-19.

**DEFENDANTS' RESPONSE:** Undisputed solely for purposes of only motion, but immaterial to the undisputed facts on the pending motion. Plaintiffs have not raised a genuine issue of disputed fact by this statement.

142.    After high school, Calello attended the Manhattan School of Music for one year but left because "the [music] theory [he] studied in high school was more extensive than what Manhattan School of Music was teaching." Calello Tr. 23:20-24:4.

**DEFENDANTS' RESPONSE:** Undisputed solely for purposes of this Motion, but immaterial to the undisputed facts on the pending motion.[13] Plaintiffs have not raised a genuine issue of disputed fact by this statement.

143.    In furtherance of his music education, Calello took private music lessons and studied the Schillinger system of writing music for many years. Calello Tr. 24:20-25:11.

**DEFENDANTS' RESPONSE:** Undisputed solely for purposes of this Motion, but immaterial to the undisputed facts on the pending motion. Plaintiffs have not raised a genuine issue of disputed fact by this statement.

---

[13] While Defendants' *Daubert* motion seeks to exclude both experts Calello and Salani, it is based on a lack of reliability under Rule 702 rather than qualifications. Defendants reserve all of their arguments in that motion, and any "fact" not disputed for purposes solely of this Summary Judgment Motion is not, and should not be construed as, a concession with respect to the facts demonstrated as to Plaintiffs' experts' lack of reliability on the *Daubert* motion.

144.    In his professional capacity, Calello sometimes cautions artists against using pieces of other artists' songs, out of concern that it could lead to a lawsuit. Calello Tr. 81:20-82:8.

**DEFENDANTS' RESPONSE:** Paragraph 139 is not supported by citation to any admissible evidence, as the cited testimony does not refer to a "concern that [this] could lead to a lawsuit." Calello Tr., 81:20-82:8. To the extent a response is required, while immaterial to the undisputed facts on the pending motion, undisputed solely for purposes of this Motion that Calello testified he "encouraged" people not to "insert pieces of music because [he] thought it would infringe on a copyright." Plaintiffs have not raised a genuine issue of disputed fact by this statement.

145.    Calello considers himself a musicologist, which he understands to be "someone who has extensive knowledge of something and that has done significant research in order to evaluate a piece of music," that is, "[t]o look at a composition, to understand its form, to understand its harmonic structure, rhythm structure, chordal structure and to be able to analyze the placement of it." Calello Tr. 31:23 – 32:13.

**DEFENDANTS' RESPONSE:** Undisputed solely for purposes of only this Motion, but immaterial to the undisputed facts on the pending motion. Plaintiffs have not raised a genuine issue of disputed fact by this statement.

146.    Prior to the instant litigation, Calello had not served in any legal proceeding as an expert comparing different musical expressions. *See* Calello Tr. 33:8 – 34:23.

**DEFENDANTS' RESPONSE:** Undisputed solely for purposes of this Motion but immaterial to the undisputed facts on the pending motion. Plaintiffs have not raised a genuine issue of disputed fact by this statement.

20037732.1

###### ii.    Calello's Work on this Matter

147.    In his expert report, Calello transcribed the relevant portions of each work into musical notation and transposed *Don Diablo* and *Wiggle* to provide a visual comparison of those works with *Levitating*. Calello Tr., 120:8-16; Calello Report at 1.

**DEFENDANTS' RESPONSE:** Undisputed solely for purposes of this Motion. Plaintiffs have not raised a genuine issue of disputed fact by this statement.

148.    Calello personally prepared the transcriptions in his report by listening to the songs and using professional music notation software. Calello Tr., 93:11-24.

**DEFENDANTS' RESPONSE:** Undisputed solely for purposes of this Motion.[14] Plaintiffs have not raised a genuine issue of disputed fact by this statement.

149.    Calello testified that melody, rhythmic elements, lyrics, structure, performance and harmony are the elements that should be considered in a musicological comparison. Calello Tr., 84:6 – 85:12.

**DEFENDANTS' RESPONSE:** Undisputed solely for purposes of this Motion. Plaintiffs have not raised a genuine issue of disputed fact by this statement.

150.    Calello opined that the musical expression at issue in *Don Diablo* is substantially similar to the phrase in *Wiggle*. Calello Rpt., at 1-4.

---

[14] Plaintiffs have ignored the conflicting testimony of their experts with respect to who prepared certain transcriptions and thus Defendants reserve that issue for their *Daubert* motion to exclude, but do not dispute it on the Summary Judgment Motion.

**DEFENDANTS' RESPONSE:** This is an improper statement not of a "fact" but of a legal conclusion unsupported by facts, and that improperly fails to cite to specific evidence, citing instead to the entirety of Calello's report (where the term "substantially similar" does not appear). Nor does it change the undisputed fact that Calello failed to perform any direct comparison between *Wiggle* and *Levitating*. Calello Tr. 95:25-96:5 ("Q. Just initially, these four pages of your report do not contain a direct comparison comparing Wiggle and Giggle to Levitating, is that correct? A. That is correct."). Nor does it change the fact that no prior art search was conducted by Plaintiffs, nor did their experts filter out the admittedly unprotectable expression at issue. To the extent a response is required, solely for purposes of this Motion, the statement is not disputed but immaterial to the issue on this Motion, including because it omits any consideration of protected expression. *See e.g.,* CSUF ¶¶ 27, 31, 33, 35, 40-45, 62, 77-78, 85-86, 90, 95, 96, 100, 107, 110, 121 (all undisputed, conceding commonplace nature of descending scales played on sixteenth notes, and differences of expression in use of such scales as between *Levitating* and Plaintiffs' works); *Crane v. Poetic Prod. Ltd.*, 593 F.Supp.2d 585, 591 (S.D.N.Y. 2009), *aff'd*, 351 F. App'x 516 (2d Cir. 2009) ("The law in this Circuit is clear that . . . substantial similarity must be between protectable elements."). Plaintiffs have not raised a genuine issue of disputed fact by this statement.


151.    Calello opined that the musical expression repeated in *Levitating* is substantially similar to that in the Original Works. Calello Rpt., at 1-4.

**DEFENDANTS' RESPONSE:** Defendants object that this an improper statement not of a "fact" but of a legal conclusion unsupported by facts, and that improperly fails to cite to specific evidence, citing instead to the entirety of Mr. Calello's report (where the term "substantially similar" does

not appear). Nor does it change the fact that no prior art search was conducted by Plaintiffs nor did their experts filter out the admittedly unprotectable expression at issue. To the extent a response is required, solely for purposes of this Motion only, the statement is not disputed but immaterial to the issue on this Motion, including because it omits any consideration of protected expression. *See e.g.*, CSUF ¶¶ 27, 31, 33, 35, 40-45, 62, 77-78, 85-86, 90, 95, 96, 100, 107, 110, 121 (all undisputed, conceding commonplace nature of descending scales played on sixteenth notes, and differences of expression in use of such scales as between *Levitating* and Plaintiffs' works); *Crane*, 593 F.Supp.2d at 591 ("The law in this Circuit is clear that . . . substantial similarity must be between protectable elements."). Plaintiffs have not raised a genuine issue of disputed fact by this statement.

### C.    Plaintiffs' Expert Barbara Salani

#### i.    Salani's Qualifications

152.    Prior to becoming an American citizen, Plaintiff's expert Barbara Salani was sponsored by the Symphony of the Americas where she performed, created musical arrangements, and gave lectures. Salani Tr., 19:12-19:19; 30:5-30:8; 30:17-31:11.

**DEFENDANTS' RESPONSE:** Undisputed for purposes of only this Motion, but immaterial to the undisputed facts on the pending motion. Plaintiffs have not raised a genuine issue of disputed fact by this statement.

153.    Salani teaches piano, the history of music, music analysis and harmony. Salani Tr., 23:5 - 23:10.

**DEFENDANTS' RESPONSE:** Undisputed for purposes of only this Motion, but immaterial to the undisputed facts on the pending motion. Plaintiffs have not raised a genuine issue of disputed fact by this statement.

154.    At the time of her deposition in this matter, Salani was in the process of completing a doctoral degree in comparative studies, musicology, and Italian studies. Salani report, at 11;[15] *see also* Salani Tr. 15:14-16:9.

**DEFENDANTS' RESPONSE:** Undisputed for purposes of only this Motion, but immaterial to the undisputed facts on the pending motion. Plaintiffs have not raised a genuine issue of disputed fact by this statement.

155.    For her Ph.D. dissertation, Ms. Salani transcribed the entirety of an opera by Guglielmi, and parts of other operas by other composers, to identify and analyze their common features, including but not limited to "the melodic elements and the rhythmic patterns and harmonic patterns and the structure and the instrumentation, the orchestration in the sense of what instruments were there." Salani Tr., 33:22 - 38:22.

**DEFENDANTS' RESPONSE:** Undisputed solely for purposes of this Motion, but immaterial to the undisputed facts on the pending motion. Further undisputed that Salani did not undertake the same with respect to the works in this case. *See, e.g.*, CSUF ¶ 12 (not disputed that "Salani did not transcribe any music in her report comparing *Wiggle* to *Levitating*"); CSUF ¶ 22 (not disputed that the Salani Report does not "contain any discussion of the overall melodies of the compositions,

---

[15] The Salani Report does not contain page numbers. Pages are identified herein according to their sequential arrangement in the report.

beyond the verse passage they focus on"); CSUF ¶ 24 (not disputed that "[w]ith the exception of a "four-on-the-floor" bass-drum rhythm and the 16th note rhythm in the verses," the Salani Report does not "contain any discussion of the overall rhythms of the compositions"). Plaintiffs have not raised a genuine issue of disputed fact by this statement.

156.    Salani is a member of the Royal Conservatory of Music, where she is also a teacher. Salani Tr., 55:4 - 55:6.

**DEFENDANTS' RESPONSE**: Undisputed for purposes of only this Motion, but immaterial to the undisputed facts on the pending motion. Plaintiffs have not raised a genuine issue of disputed fact by this statement.

157.    Before this matter, Salani had not served as an expert musicologist for a legal proceeding. Salani Tr. 12:10-16 (Q. Okay. Have you ever testified as an expert, even not in a deposition but in a court or in any kind of other setting before? A. No. Q. Have you ever provided any expert advice of any nature in any matter before? A. No.").

**DEFENDANTS' RESPONSE**: Undisputed for purposes of only this Motion, but immaterial to the undisputed facts on the pending motion. Plaintiffs have not raised a genuine issue of disputed fact by this statement.

### ii.    Defendants Expert Ferrera Conceded Salani is a Musicologist

158.    Defendants' expert Ferrara conceded that he considered Salani to be a musicologist after reviewing her experience and taking note of her work as a Ph.D. candidate. Ferrara Tr., 64:24-65:1 ("Q. For Ms. Salani, would you consider her a musicologist? A. Yes."); 65:7-10 ("[I]n looking

at Barbara Salani's background, her current work as a Ph.D. student, certainly, that would be the scholarly study of music.").

**DEFENDANTS' RESPONSE**: Undisputed for purposes of only this Motion, but immaterial to the undisputed facts on the pending motion. Plaintiffs have not raised a genuine issue of disputed fact by this statement.

### iii. Salani's Work in This Matter

159.    The scope of Salani's assignment was to analyze and objectively investigate the songs *Wiggle and Giggle*, *Don Diablo*, and *Levitating*. Salani Tr., 87:20 - 87:23.

**DEFENDANTS' RESPONSE:**    This testimony was contradicted by her own immediately following deposition testimony not cited, in which she conceded that her report did not reflect an appropriate musicological analysis. *See, e.g.*, Salani Tr. 87:24-99:14; CSUF ¶¶ 12, 16, 19, 24 (undisputed). Notwithstanding the inaccurate characterization of this statement, solely for purposes of this Motion this conclusion of assignment is not disputed, but immaterial to the undisputed facts on the pending motion. Plaintiffs have not raised a genuine issue of disputed fact by this statement.

160.    In her expert report, Salani transcribed the relevant portions of each of the works at issue and then transposed *Don Diablo* and *Wiggle* to relative major key signatures to create a common basis for comparing them with *Levitating*. Salani report at 1.

**DEFENDANTS' RESPONSE:** Paragraph 160 is not supported by the evidence cited, which states only that the tracks were "replicated" and "converted into musical notation"—it does not support that Salani herself "transcribed . . . relevant portions" of the works, or that she "transposed"

them. *See* Salani Report at 1. Undisputed solely for purposes of this Motion, as it is immaterial to the undisputed facts on the pending motion.[16] Plaintiffs have not raised a genuine issue of disputed fact by this statement.

161.    Salani personally prepared the transcriptions in her report by listening to the songs and using professional music notation software. Salani Tr. 105:19 - 106:13.

**DEFENDANTS' RESPONSE:**  Undisputed solely for purposes of this Motion, but immaterial to the undisputed facts on the pending motion. Plaintiffs have not raised a genuine issue of disputed fact by this statement.

162.    Salani was paid for her time to objectively analyze the works at issue. Salani Tr., 57:2 - 57:5.

**DEFENDANTS' RESPONSE:**  Undisputed solely for purposes of only this Motion, but immaterial to the undisputed facts on the pending motion. Plaintiffs have not raised a genuine issue of disputed fact by this statement.

163.    Salani opined that the musical expression at issue in *Don Diablo* is substantially similar to the phrase in *Wiggle*. Salani Rpt., at 2-3.

**DEFENDANTS' RESPONSE:** Paragraph 163 is an improper statement asserting not a "fact" but an improper legal conclusion, and is unsupported by citing two pages of the Salani Report where the term "substantially similar" does not appear. To the extent a response is required, for purposes

---

[16] Calello testified that a transcription appearing in Ms. Salani's report appeared to be a "direct copy" of his own.  Calello Tr., 103:6-104:6. Defendants reserve their arguments on the *Daubert* motion, but do not dispute matters irrelevant to the issues *on this motion.*

of this Motion only, it is not disputed, but immaterial, that Salani concluded, albeit without ***any*** musicological analysis, "that the musical expression at issue in *Don Diablo* is substantially similar to the phrase in *Wiggle.*" However, she then admitted after her report in her deposition that there are more than one dozen differences between the verse melodies of *Wiggle* and *Don Diablo*, and that "her statement that Wiggle was identical to *Don Diablo* in her Report should be removed." *See* CSUF ¶¶ 16-19 (undisputed). Plaintiffs have not raised a genuine issue of disputed fact by this statement.

164.    Salani opined that the musical expression repeated in *Levitating* is substantially similar to that in the Original Works. Salani Rpt., at 7-8, 10.

**DEFENDANTS' RESPONSE:** This is an improper statement not of a "fact" but of a legal conclusion unsupported by facts, and that improperly fails to cite to specific evidence, citing instead to multiple pages of Salani's report where the term "substantially similar" does not appear. Nor does it change the fact that no prior art search was conducted by Plaintiffs nor did their experts filter out the admittedly unprotectable expression at issue. To the extent a response is required, solely for purposes of this Motion only, the statement is not disputed but immaterial to the issue on this Motion, including because it omits any consideration of protected expression. *See, e.g.*, CSUF ¶¶ 27, 31, 33, 35, 40-45, 62, 77-78, 85-86, 90, 95, 96, 100, 107, 110, 121 (all undisputed, conceding commonplace nature of descending scales played on sixteenth notes, and differences of expression in use of such scales as between *Levitating* and Plaintiffs' works); *Crane*, 593 F.Supp.2d at 591 ("The law in this Circuit is clear that . . . substantial similarity must be between protectable elements."). Plaintiffs have not raised a genuine issue of disputed fact by this statement.

### iv.    Salani's Acquaintance with Calello

165.    Salani knows Plaintiffs' expert Charles Calello through her brother who maintains a friendship with Mr. Calello. Salani Tr., 57:16 - 57:17; 58:4 - 58:8.

**DEFENDANTS' RESPONSE:** Undisputed, but immaterial to the undisputed facts on the pending motion. Plaintiffs have not raised a genuine issue of disputed fact by this statement.

166.    Salani wrote an article about Calello that was published in the Italian academic journal *Strade Dorate*, Salani Tr., 57:9 - 57:10, because she was asked by the head of Florida Atlantic University's Italian Department to write an article about a musician or composer whom Salani knew. Salani Tr., 63:9 - 63:25.

**DEFENDANTS' RESPONSE:** Undisputed solely for purposes of this Motion, but immaterial to the undisputed facts on the pending motion. Plaintiffs have not raised a genuine issue of disputed fact by this statement.

167.    After being retained as expert in this case, Salani asked to review Calello's musicological report to objectively analyze it whether there were similarities between the works at issue. Salani Tr., 65:14 - 65:19; 65:23 - 66:3.

**DEFENDANTS' RESPONSE:** Undisputed for purposes of only this Motion, but immaterial to the undisputed facts on the pending motion. Plaintiffs have not raised a genuine issue of disputed fact by this statement.

168.    After reading a draft of Calello's musicological report, Salani formulated her own investigation of the similarities of the works at issue, using her methodology and musicological abilities. Salani Tr., 66:4 - 66:21.

**DEFENDANTS' RESPONSE:** Undisputed solely for purposes of this Motion, but immaterial to the undisputed facts on the pending motion. Plaintiffs have not raised a genuine issue of disputed fact by this statement.

169.    Salani only reviewed one draft of Calello's musicological report because she performed her own separate objective analysis of the works at issue. Salani Tr., 67:7 - 67:14; 67:19 - 67:23.

**DEFENDANTS' RESPONSE:**  Undisputed solely for purposes of this Motion that Salani only reviewed one draft of Calello's report before preparing hers, but immaterial to the undisputed facts on the pending motion. Plaintiffs have not raised a genuine issue of disputed fact by this statement.

170.    Salani did not recall asking Calello any questions about the content of her draft report while she was writing it. Salani Tr., 71:13 - 71:18.

**DEFENDANTS' RESPONSE:** Undisputed solely for purposes of this Motion, but immaterial to the undisputed facts on the pending motion. Plaintiffs have not raised a genuine issue of disputed fact by this statement.

171.    Calello did not provide any suggestions to Salani about what to include in her draft report. Salani Tr., 71:19 - 71:22.

**DEFENDANTS' RESPONSE:** Undisputed solely for purpose of this Motion but immaterial to the undisputed facts on the pending motion. Plaintiffs have not raised a genuine issue of disputed fact by this statement.


172.    Salani did not recall having any substantive conversations with Mr. Calello about either of their reports, from the time that she reviewed Calello's draft report until the day of her deposition. Salani Tr., 72:3 - 72:9; 72:21 - 73:4.

**DEFENDANTS' RESPONSE:**  This statement stands in conflict with Salani's testimony where she admitted that after reviewing Calello's draft report, she "discuss[ed] the contents of [Calello's] draft report" on a Zoom call, and specifically, "asked for explanations of the things that [she] didn't understand in his report." Salani Tr. 69:3-13. For the purposes of this Motion solely, however, it is undisputed because it is immaterial to the undisputed facts on the pending motion. Plaintiffs have not raised a genuine issue of disputed fact by this statement.


173.    Salani did not review Calello's report when she prepared for her deposition. Salani Tr., 77:12 - 77:14.

**DEFENDANTS' RESPONSE:** Undisputed solely for purposes of this Motion but immaterial to the undisputed facts on the pending motion. Plaintiffs have not raised a genuine issue of disputed fact by this statement.


174.    Salani did not have a readily accessible copy of Calello's report when she prepared her report. Salani Tr., 77:15 - 77:18.

**DEFENDANTS' RESPONSE:**  Undisputed solely for purposes of this Motion but immaterial to the undisputed facts on the pending motion. Plaintiffs have not raised a genuine issue of disputed fact by this statement.


### D.    Defendants Copied the Original Works

175.    Defendants had the opportunity to access *Don Diablo*, because that song was posted and viewed on YouTube over 21 million times. FAC ¶ 61.

**DEFENDANTS' RESPONSE:** This fact should be stricken, as it is improperly asserted and entirely irrelevant to the issue on Defendants' Motion for Summary Judgment. This statement is asserted without admissible evidentiary support, citing to Plaintiffs' complaint and can thus be disregarded without any response. *See Cavelli v. New York City Dist. Council of Carpenters*, 816 F.Supp.2d 153,164 (E.D.N.Y. 2011) ("It is well settled that mere allegations, either in pleadings or memoranda, are insufficient to defeat summary judgment."). Plaintiffs have not raised a genuine issue of disputed fact by this statement.


176.    Before the release of *Levitating*, Defendant Lipa collaborated with José Balvin (aka J Balvin), who admires and is influenced by Miguel Bosé. FAC ¶¶ 2, 74-77.

**DEFENDANTS' RESPONSE:**  This fact should be stricken, as it is improperly asserted and entirely irrelevant to the issue on Defendants' motion for summary judgment. This statement is asserted without any admissible evidentiary support, citing to Plaintiffs' complaint, and can thus be disregarded without any response. *See Cavelli*, 816 F.Supp.2d at 164 ("It is well settled that mere allegations, either in pleadings or memoranda, are insufficient to defeat summary judgment."). Plaintiffs have not raised a genuine issue of disputed fact by this statement.

177.    Defendant Lipa had motivation for accessing the work, as she admitted to deliberately seeking influence from earlier periods of music to create the album on which *Levitating* appears, and *Don Diablo* was recorded in 1980 (forty-four years ago, as of this writing). FAC ¶ 83.

**DEFENDANTS' RESPONSE:**  This fact should be stricken, as it is improperly asserted and entirely irrelevant to the issue on Defendants' Motion for Summary Judgment. This statement is asserted without any admissible evidentiary support, citing to Plaintiffs' complaint, and can thus be disregarded without any response. *See Cavelli*, 816 F.Supp.2d at 164 ("It is well settled that mere allegations, either in pleadings or memoranda, are insufficient to defeat summary judgment."). Plaintiffs have not raised a genuine issue of disputed fact by this statement.

### E.    The Musical Expressions at Issue Are Substantially Similar

178.    *Wiggle* is a pop song in 4/4 time, with a disco beat of approximately 106 beats per minute ("BPM"), which prominently features a 23-note phrase across two measures that: appears prominently in the verse of the song, is sung in patter style, and includes a stepwise descending scale with four repeated 16th notes to the beat, plus additional notes. *See* Calello Rpt. at 1-2; Calello Tr. 92:8-93:8 (describing two-measure phrase as "all of the relevant portions for purposes of the musical analysis").

**DEFENDANTS' RESPONSE:** Neither the cited Calello Report nor his cited deposition testimony support that *Wiggle* is a "pop song," has a "disco beat of approximately 106 beats per minute," is sung in "patter style," or that the phrase at issue is "prominently feature[d]." *See* Calello Report at 1-2; Calello Tr. at 92:8-93:8. Otherwise, undisputed solely for purposes of this Motion

and immaterial to the issues in the Motion. Plaintiffs have not raised a genuine issue of disputed fact by this statement.

179.    *Don Diablo* is a pop song in 4/4 time, with a disco beat of approximately 103 BPM, which prominently features a 26-note phrase across two measures that: appears prominently in the verse of the song, is sung in patter style, and includes a stepwise descending scale with four repeated 16th notes to the beat, plus additional notes. *See* Calello Rpt. at 1-2; Calello Tr. 92:8-93:8 (describing two-measure phrase as "all of the relevant portions for purposes of the musical analysis").

**DEFENDANTS' RESPONSE:** Neither the cited Calello Report nor his cited deposition testimony support that *Don Diablo* is a "pop song," has a "disco beat," is sung in "patter style," or that the phrase at issue is "prominently feature[d]." *See* Calello Report at 1-2; Calello Tr. at 92:8-93:8. While Dr. Ferrara identified that the tempo of *Don Diablo* is 108 BPM, solely for purposes of this Motion, this fact is undisputed and immaterial to the issues in the Motion. Plaintiffs have not raised a genuine issue of disputed fact by this statement.

180.    *Levitating* is a pop song in 4/4 time, with a disco beat of approximately 106 BPM, which prominently features a 23-note phrase across two measures that: appears prominently in the verse of the song, is sung in patter style, and includes a stepwise descending scale with four repeated 16th notes to the beat, plus additional notes. *See* Calello Rpt. at 1-2; Calello Tr. 92:8-93:8 (describing two-measure phrase as "all of the relevant portions for purposes of the musical analysis").

**DEFENDANTS' RESPONSE:** Neither the cited Calello Report nor his cited deposition testimony support that *Levitating* is a "pop song," has a "disco beat," is sung in "patter style," or that the phrase at issue is "prominently feature[d]." *See* Calello Report at 1-2; Calello Tr. At 92:8-93:8. While Dr. Ferrara identified the tempo of *Levitating* as 103 BPM, solely for purposes of this Motion, this fact is undisputed and immaterial to the issues in the Motion. Plaintiffs have not raised a genuine issue of disputed fact by this statement.

181.    The musical expressions at issue in this case are reflected in part (but not completely captured) in the following transcriptions adapted from transcriptions in Visual Exhibits C and L to the Ferrara Rpt.[17]:



*See* Calello Report at 1-2; Calello Tr. 92:8-93:8 (describing two-measure phrase as "all of the relevant portions for purposes of the musical analysis"); Visual Exhibits C and L to Ferrara Rpt.

**DEFENDANTS' RESPONSE:** Plaintiffs have doctored the cited materials from the Ferrara Report in numerous ways, and the concocted transcription shown above cannot serve as admissible

---

[17] The songs appear as in Ferrara's exhibits, transposed to the relative keys of C-major (*Don Diablo* and *Wiggle*) and A-minor (*Levitating*) to facilitate comparison.

evidence. Solely for purposes of this Motion, however, it is undisputed that the musical expressions at issue, including their obvious differences, are so reflected "in part" (for example, without reference to the works' differing scale degrees and modalities, time notations, lyrics, and to all other portions and elements of the works being omitted, and without reference to aspects Plaintiffs admit to be commonplace and unprotectable). Plaintiffs have not raised a genuine issue of disputed fact by this statement.

182.    Defendants do not come forward with **even one** example of "prior art" that is a pop song with a disco beat in 4/4 time, and features a phrase similar to the *entire melody* at issue, with that portion of the song prominently placed in the verse and sung in patter style.  *See generally* Ferrara report.

**DEFENDANTS' RESPONSE:** The language "phrase similar to the *entire melody* at issue" is undefined and ambiguous. Solely for purposes of this Motion, the statement is undisputed but immaterial. Plaintiffs provide no admissible evidence to support that any of the above-claimed elements, whether alone or in combination, give Plaintiffs a monopoly over phrases involving an admittedly unprotected descending scale on repeated 16th notes, not least in light of the many admitted differences between *Levitating* and Plaintiffs' works. *See* CSUF ¶¶ 6, 10, 27, 30-33, 35-38, 40-45, 56, 60, 62, 65, 68, 71, 77-78, 104-105, 107, 109, 113, 121 (all undisputed); Opp. at 17; *see also* CSUF ¶ 73 (not disputing that "4/4 meter is a commonplace time signature, shared by many musical compositions over centuries"). Moreover, *Stayin' Alive*, a #1 hit song from 1978, is an example of prior art identified by Dr. Ferrara which satisfies all of these categories, with the sole exception of the similar phrase being found in the song's chorus. *See* Ferrara Report ¶¶ 52-

54, 126-138, 217-219, 276-289. Plaintiffs have not raised a genuine issue of disputed fact by this statement.

183.    Calleo testified that the verse portion of *Wiggle* at issue is original. Calello Report at 4.

**DEFENDANTS' RESPONSE:** This statement is unsupported by the evidence. Calello did not "testify" that the verse portion of *Wiggle* is original, nor does the cited page of Calello Report so establish. To the extent a response is required, solely for purposes of this Motion, undisputed but immaterial that Calello so "testified." Whether Calello so claimed is irrelevant when Plaintiffs admit that a 20-note descending scale pattern based on repeated sixteenth notes is commonplace and not protectable, and that there are numerous differences between the works. *See, e.g.*, Opp. at 17; CSUF ¶¶ 27, 30-33, 35, 40-45, 62-63, 65, 68, 105, 107, 109, 113, 121 (undisputed). Plaintiffs have not raised a genuine issue of disputed fact by this statement.

184.    Salani testified that the verse portion of *Wiggle* at issue is original. Salani Report at 2, 10.

**DEFENDANTS' RESPONSE:** The cited evidence does not support that Salani so "testified." To the extent a response is required, undisputed for purposes of this Motion only, and also immaterial, that Salani "testified" that the verse portion of *Wiggle* was original.  In the cited evidence, Salani stated that any originality was due to "slight variations and syncopations" on a strict descending scale pattern: Salani admitted at her deposition that a strict descending pattern on repeated notes was commonplace, and Plaintiffs now admit it is not protectable. Tr. 113:18-118:22 & Depo. Ex.

7 (Lepera Decl. Ex. 4); CSUF ¶¶ 27, 31-33, 40-45 (undisputed); Opp. at 17. Plaintiffs have not raised a genuine issue of disputed fact by this statement.


185.    The lawsuit brought by Plaintiffs in 1983,[18] *see* ¶¶ 4-5, *supra*, concerned the same musical phrase in *Wiggle* and *Don Diablo* that is at issue in the instant litigation.

**DEFENDANTS' RESPONSE:** This fact should be stricken, as it is improperly asserted and entirely irrelevant to the issue on Defendants' motion for summary judgment. This statement is asserted without any admissible evidentiary support, citing to Plaintiffs' complaint, and can thus be disregarded without any response. *See Cavelli*, 816 F.Supp.2d at 164 ("It is well settled that mere allegations, either in pleadings or memoranda, are insufficient to defeat summary judgment."). Plaintiffs have not raised a genuine issue of disputed fact by this statement.


186.    The two-measure signature melody of *Don Diablo* is repeated three times in *Levitating*, comprising roughly one-quarter of that entire composition. FAC ¶ 88.

**DEFENDANTS' RESPONSE:** This fact should be stricken, as it is improperly asserted and entirely irrelevant to the issue on Defendants' motion for summary judgment, *i.e.*, whether there is any probative or substantial similarity of *protectable* expression. This statement is asserted without any admissible evidentiary support, citing to Plaintiffs' complaint, and can thus be disregarded without any response. *See Cavelli*, 816 F.Supp.2d at 164 ("It is well settled that mere allegations, either in pleadings or memoranda, are insufficient to defeat summary judgment."). Even were the statement properly formulated or material (and it is neither), there is no record evidence which establishes a "two-measure signature melody of *Don Diablo*," let alone one

---

[18] *Larball v. CBS, et al.*, 83-cv-8329 (KTD) (S.D.N.Y.).

"repeated three times in *Levitating*." Plaintiffs have not raised a genuine issue of disputed fact by this statement.

187.     The signature melody of *Don Diablo* is repeated three times in *Levitating*, yielding a total of 63 notes in *Levitating* that are identical in rhythmic duration, metric placement, and pitch to the corresponding notes in *Don Diablo*. *See* Calello Rpt. at 1-2; Visual Exhibits C and L to Ferrara report.

**DEFENDANTS' RESPONSE:** Defendants object that there is no evidence cited (or in the record) which establishes a "signature melody" of *Don Diablo*. To the extent a response is required, it is undisputed but immaterial that, ***when transposed into relative major and minor keys***, 21 notes in the works' respective verse portions are "identical" in these aspects, of which Plaintiffs now admit fully 20 notes constitute an unprotectable descending scale, while the remaining note is non-continuous with those notes and in *Levitating* resolves the phrase at the root note (degree 1) of the scale, where musical phrases admittedly tend to resolve. *See* Opp. at 17; CSUF ¶¶ 31-33, 40-45. Plaintiffs have not raised a genuine issue of disputed fact by this statement.

188.     Ferrara testified that it was acceptable technique to compare musical phrases by transposing them into relative keys. Ferrara Report ¶ 22.

**DEFENDANTS' RESPONSE**: Undisputed. Further undisputed that when comparing works in major and minor keys, using "parallel" keys instead of relative keys allows "the melodic function of corresponding scale degrees [to be] maintained." *See* CSUF ¶ 53 (undisputed). Plaintiffs have not raised a genuine issue of disputed fact by this statement.

**F.    Even Defendants' Experts Concede That There is a 20 Consecutive Note Portion That is Identical in Relative Keys.**

189.    Ferrara's report demonstrates that, when *Levitating* and *Don Diablo* are transposed into relative keys for comparison, there are 20 consecutive notes that have identical pitches, metric placement, and rhythmic duration.



Ferrara Report Musical Example 42(b).

**DEFENDANTS' RESPONSE**: The Ferrara Report does not "demonstrate" this fact, since what it demonstrates, and what Plaintiffs now admit, is that these 20 notes constitute an unprotectable descending scale. Solely for purposes of this Motion, the statement is undisputed, but also immaterial because Plaintiffs admit that these 20 notes are unprotectable and a commonplace musical element, and that they function in a melodically different way in *Levitating* versus Plaintiffs' works. *See* CSUF ¶¶ 31-33, 35, 40-45, 62-63, 77, 121 (undisputed); Opp. at 17. Plaintiffs have not raised a genuine issue of disputed fact by this statement.


190.    Defendants' expert Paul Geluso testified that if the first twenty notes of the melody at issue in *Don Diablo* and *Levitating* were both played in relative keys (as notated in Musical Example 42(b) to the Ferrara report) on the same piano, the spectrograms of the two performances would correlate. Almonrode Decl., Ex. G (transcript of deposition of Mr. Paul Geluso) ("Geluso Tr."), at 52:25-53:25. *See* Geluso Tr. 53:17-25 ("Q: Would the pattern match if you did an output

from a spectrogram or whatever computer software you are putting in?  A: Well, if you performed it on the same piano, we went backwards. I am not saying if we put *Don Diablo* and *Levitating* they would look the same, but if we took this notation, performed it identically, and looked at it, of course you are going to see correlation between the two of them).

**DEFENDANTS' RESPONSE:** Geluso's analysis relates to the comparison of **sound recordings – *not compositions***. To the extent a response is required, it is undisputed solely for purposes of this Motion that Geluso testified the spectrograms of identical performances on the same piano would not "look the same" but that you could "see correlation." This is immaterial to the issues raised in the motion for summary judgment and fails to raise a disputed issue of fact thereon. Plaintiffs have not raised a genuine issue of disputed fact by this statement.

191.    Geluso testified that he does not want to help Plaintiffs.  Geluso Tr. 49:24-51:10.

**DEFENDANTS' RESPONSE:** Plaintiffs have misconstrued Professor Geluso's testimony. It is undisputed solely for purposes of this Motion that Geluso testified as such, but only after repeatedly informing Plaintiffs' counsel that a particular line of questioning was "nonsensical," and then stating he did not want to help Plaintiffs' counsel formulate a logical question. In any event, the statement is entirely irrelevant to the issues addressed in Defendants' motion for summary judgment and fails to raise any issue of fact. Plaintiffs have not raised a genuine issue of disputed fact by this statement.

192.    Professionals and laypersons alike have noticed the substantial similarities between *Levitating* and the Original Works. FAC ¶ 12.

**DEFENDANTS' RESPONSE:** This fact should be stricken, as it is improperly asserted and entirely irrelevant to the issue on Defendants' motion for summary judgment. This statement is asserted without any admissible evidentiary support, citing to Plaintiffs' complaint, and can thus be disregarded without any response. *See Cavelli*, 816 F.Supp.2d at 164 ("It is well settled that mere allegations, either in pleadings or memoranda, are insufficient to defeat summary judgment."). Plaintiffs have not raised a genuine issue of disputed fact by this statement.

193.    Ferrera concedes that laypersons may think the songs sound alike. Ferrara Tr. 105:13-106:3.

**DEFENDANTS' RESPONSE:** This statement, nearly identical in substance to Paragraph 138 above, misstates the testimony, as the testimony is that a lay person "may or may not" hear a similarity in that "they're listening to a ***musical building block*** that has similarities in 20 notes." *See* Ferrara Tr. 105:13-106:10 (emphasis added). As stated above, the testimony is also speculation, and immaterial to the undisputed facts at issue on this Motion. To the extent a response is required, it is undisputed solely for purposes of only this Motion. Plaintiffs have not raised a genuine issue of disputed fact by this statement.

194.    Writing for Indiespot, journalist Diego Rubio Mendez commented that *Levitating* is reminiscent of *Wiggle* and *Don Diablo*. This comment was made shortly after *Levitating* was released, well before this lawsuit. FAC ¶ 13.

**DEFENDANTS' RESPONSE:** This fact should be stricken, as it is improperly asserted and entirely irrelevant to the issue on Defendants' motion for summary judgment. This statement is asserted without any admissible evidentiary support, citing to Plaintiffs' complaint, and can thus

20037732.1

be disregarded without any response. *See Cavelli*, 816 F.Supp.2d at 164 ("It is well settled that mere allegations, either in pleadings or memoranda, are insufficient to defeat summary judgment."). Plaintiffs have not raised a genuine issue of disputed fact by this statement.

195.    As of October 28, 2022 – the filing date of the First Amended Complaint in this action (ECF #51), record producer Jerred Jermaine Gazarian's video highlighting the similarities between *Levitating* and *Don Diablo* had received over 363,000 likes on TikTok. This video was released before the instant lawsuit. FAC ¶ 14.

**DEFENDANTS' RESPONSE:** This fact should be stricken, as it is improperly asserted and entirely irrelevant to the issue on Defendants' motion for summary judgment. This statement is asserted without any admissible evidentiary support, citing to Plaintiffs' complaint, and can thus be disregarded without any response. *See Cavelli*, 816 F.Supp.2d at 164 ("It is well settled that mere allegations, either in pleadings or memoranda, are insufficient to defeat summary judgment."). Plaintiffs have not raised a genuine issue of disputed fact by this statement.

196.    Defendant Lipa has admitted that she deliberately emulated prior eras of music to create *Future Nostalgia*, the aptly named album on which *Levitating* appears. FAC ¶¶ 16, 100.

**DEFENDANTS' RESPONSE:** This fact should be stricken, as it is improperly asserted and entirely irrelevant to the issue on Defendants' motion for summary judgment. This statement is asserted without any admissible evidentiary support, citing to Plaintiffs' complaint, and can thus be disregarded without any response. *See Cavelli*, 816 F.Supp.2d at 164 ("It is well settled that mere allegations, either in pleadings or memoranda, are insufficient to defeat summary judgment."). Plaintiffs have not raised a genuine issue of disputed fact by this statement.

197.     Melissa Giannini of Elle magazine reported that "Lipa's intention for *Future Nostalgia* was to create a sound that felt familiar and brand-new." FAC ¶ 17.

**DEFENDANTS' RESPONSE:** This fact should be stricken, as it is improperly asserted and entirely irrelevant to the issue on Defendants' motion for summary judgment. This statement is asserted without any admissible evidentiary support, citing to Plaintiffs' complaint, and can thus be disregarded without any response. *See Cavelli*, 816 F.Supp.2d at 164 ("It is well settled that mere allegations, either in pleadings or memoranda, are insufficient to defeat summary judgment."). Plaintiffs have not raised a genuine issue of disputed fact by this statement.

198.     Capital FM reported that Lipa "said she took inspiration from the 70s, 80s, 90s, and 00s" to create a "modern retro theme." FAC ¶ 18.

**DEFENDANTS' RESPONSE:** This fact should be stricken, as it is improperly asserted and entirely irrelevant to the issue on Defendants' motion for summary judgment. This statement is asserted without any admissible evidentiary support, citing to Plaintiffs' complaint, and can thus be disregarded without any response. *See Cavelli*, 816 F.Supp.2d at 164 ("It is well settled that mere allegations, either in pleadings or memoranda, are insufficient to defeat summary judgment."). Plaintiffs have not raised a genuine issue of disputed fact by this statement.

199.     Lipa has publicly stated that she inadvertently copied a phrase from an INXS song to use in a song on *Future Nostalgia*, the very same album on which *Levitating* appears. She later credited the owners of the rights to the INXS song. FAC ¶¶ 106-107.

**DEFENDANTS' RESPONSE:** This fact should be stricken, as it is improperly asserted and entirely irrelevant to the issue on Defendants' motion for summary judgment. This statement is

asserted without any admissible evidentiary support, citing to Plaintiffs' complaint, and can thus be disregarded without any response. *See Cavelli*, 816 F.Supp.2d at 164 ("It is well settled that mere allegations, either in pleadings or memoranda, are insufficient to defeat summary judgment."). Plaintiffs have not raised a genuine issue of disputed fact by this statement.

G. **Defendants' Experts Concede the Relevant Portions of *Levitating* and *Don Diablo* are Identical, Because They *Are* Identical**

200.    Ferrara's report demonstrates that, when the relevant portions of *Levitating* and *Don Diablo* are transposed into relative keys for comparison (and the two-note pick-up in *Don Diablo* is ignored), each song contains 21 notes that are identical in pitch, rhythmic duration, and metric placement to the corresponding notes in the other work.



Ferrara Report Musical Example 42(b). *See also* Visual Exhibits C and L to Ferrara Rpt.; ¶ 181 herein, *supra*.

**DEFENDANTS' RESPONSE:** The Ferrara Report does not "demonstrate" this fact, as it instead demonstrates why this alleged similarity is unremarkable in view of musical analysis and prior art. Notwithstanding, undisputed that after ***transposing*** the works and ***ignoring*** certain notes, *Don Diablo* and *Levitating* contain 21 non-consecutive notes that are identical in pitch, rhythmic duration, and metric placement, but different in scale degrees, modality, melodic functionality, and corresponding harmony; are not identical in their overall phrases; and of which 20 notes are

admitted to constitute an unprotectable descending scale, found in prior art, and where Plaintiffs have admitted the "commonplace nature of repeated notes that descend in scale-wise fashion, often in a 'patter song' style." *See* CSUF ¶¶ 31-33, 35-38, 40-45, 60, 62-63, 65, 77-78, 83-90, 92-96, 98, 100, 102-105, 107-111, 113-114, 121. Plaintiffs have not raised a genuine issue of disputed fact by this statement.

201.    Ferrara's report demonstrates that, when *Levitating* and *Don Diablo* are transposed into relative keys for comparison (and the two-note pick-up in *Don Diablo* is ignored), both works have the following note sequence: E E E    D D D D    C C C C    B B B B    A A A A. Ferrara Report Musical Example 42(b). *See also* Visual Exhibits C and L to Ferrara Rpt.; ¶ 200 herein, *supra.*

**DEFENDANTS' RESPONSE:** The Ferrara Report does not "demonstrate" this, as it instead demonstrates why this alleged similarity is unremarkable and occurs against the backdrop of many differences. Undisputed that after transposition, and after two notes are "ignored," those are the pitch values but not the scale steps, which as identified in the transcription Plaintiffs present are different. *See supra* ¶ 200; CSUF ¶¶ 35, 62, 77. Plaintiffs themselves admit that such sequences are unprotectable descending scales, commonplace and found in prior art, and that they can be played on adjacent white notes of a piano. *See* CSUF ¶¶ 27, 31-33, 35, 40-45, 77-78, 83-90, 92-96, 98, 100, 102-105, 107-111, 113-114, 121; Opp. at 17. Plaintiffs have not raised a genuine issue of disputed fact by this statement.

DATED: July 12, 2024                 MITCHELL SILBERBERG & KNUPP LLP


By: /s/ Christine Lepera
     Christine Lepera (ctl@msk.com)
     Bradley Mullins (bym@msk.com)
     437 Madison Ave., 25th Floor
     New York, New York 10022-7001
     Telephone: (212) 509-3900
     Facsimile: (212) 509-7239

     *Attorneys for Defendants Dua Lipa, Clarence Coffee, Jr., Sarah Hudson, Stephen Kozmeniuk, Sony Music Publishing (US) LLC, Universal Music Corporation, and Warner Records Inc.*

20037732.1