UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

LARBALL PUBLISHING COMPANY, INC. and
SANDY LINZER PRODUCTIONS, INC.,

                    Plaintiffs,

                    -v.-

DUA LIPA; CLARENCE COFFEE, JR.; SARAH
HUDSON; STEPHEN KOZMENIUK; SONY
MUSIC PUBLISHING (US) LLC; UNIVERSAL
MUSIC CORPORATION; and WARNER
RECORDS INC.,

                    Defendants.

---

22 Civ. 1872 (KPF)

**OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge:

Plaintiffs Larball Publishing Company, Inc. ("Larball") and Sandy Linzer

Productions, Inc. ("SLP"), own the copyright to the 1979 disco song *Wiggle and

Giggle All Night* ("*Wiggle*") and later became copyright holders over a second

song, *Don Diablo*, through an infringement action unrelated to the instant case.

In 2020, Defendants — a group of artists, producers, and publishing

companies — released the song *Levitating* and its remix *Levitating (Da Baby)*.

Thereafter, Plaintiffs brought this action, alleging that Defendants had

infringed their copyrights in *Wiggle* and *Don Diablo* by reproducing,

distributing, and performing derivative works of the songs in violation of the

Copyright Act.

By Opinion and Order dated August 8, 2023, the Court denied

Defendants' motion to dismiss Plaintiffs' *Wiggle*-related claims pursuant to

Federal Rule of Civil Procedure 12(b)(6), finding that Plaintiffs (i) had failed to

allege actual copying, one element of a copyright infringement claim, via an

access theory, but (ii) were nevertheless entitled to proceed to discovery on their theory that the works at issue are 'strikingly similar,' such that proving Defendants' access to the copyrighted material would not be necessary to establish actual copying.  *See Larball Publ'g Co.* v. *Lipa*, No. 22 Civ. 1872 (KPF), 2023 WL 5050951, at *8-15 (S.D.N.Y. Aug. 8, 2023) ("*Larball I*") (distinguishing theories of actual copying).[1]  Now before the Court are Defendants' motions to exclude expert testimony and for summary judgment.  For the reasons set forth in the remainder of this Opinion, the Court (i) grants in part and denies in part Defendants' motion to exclude and (ii) grants in full Defendants' motion for summary judgment.  Put simply, even crediting the opinions of Plaintiffs' experts, they — and the remainder of the record before the Court — fail to generate a triable dispute concerning a substantial similarity between Defendants' works and the protectable elements of Plaintiffs' works.

## BACKGROUND[2]

### A.    Factual Background

#### 1.    The Parties and the Works at Issue

Plaintiffs Larball and SLP co-own the copyright to *Wiggle*, a music composition authored by Sandy Linzer and L. Russell Brown.  (Def. 56.1 ¶ 1).

---

[1]    "Actual cop[ying]," which again, can be shown by proving striking similarity, is just one part of the copyright infringement analysis.  Plaintiffs must also show that "the copying is illegal because a substantial similarity exists between the [Defendants'] work and the *protectable* elements of [Plaintiffs']."  *Ritani, LLC* v. *Aghjayan*, 880 F. Supp. 2d 425, 441-42 (S.D.N.Y. 2012) (emphasis added).  "The threshold required to establish striking similarity is 'stringent,' and it requires more than a showing of substantial similarity." *Vargas* v. *Transeau*, 514 F. Supp. 2d 439, 445 (S.D.N.Y.2007), *aff'd,* 352 F. App'x 458 (2d Cir. 2009) (summary order).

[2]    The facts set forth in this Opinion are drawn from the parties' submissions in connection with Defendants' motions to exclude and for summary judgment.  The Court

*Wiggle* was recorded by musical artist Cory Daye and released on the album *Cory and Me* in 1979.  (*Id.* ¶ 2).  In 1980, Miguel Bosé recorded the song *Don Diablo*.  (*Id.* ¶ 3).  In a copyright action initiated in 1983, Larball alleged that *Don Diablo* infringed its copyright in *Wiggle*.  (*Id.* ¶ 4).  Through the settlement of that

---

primarily sources facts from Defendants' Local Rule 56.1 Statement (Dkt. #106 ("Def. 56.1")), Plaintiffs' Local Rule 56.1 Response to Defendants' 56.1 Statement (Dkt. #116 ("Pl. 56.1")), and Defendants' Reply to the Response to Defendants' 56.1 Statement (Dkt. #123 ("Def. Reply 56.1")); the Declaration of Bradley J. Mullins in support of Defendants' motion to exclude (Dkt. #100 ("Mullins Decl.")) and the exhibits attached thereto, including the expert reports of Charles Calello (Mullins Decl., Ex. 1 ("Calello Report")) and Barbara Salani (*id.*, Ex. 6 ("Salani Report")); the Declaration of Christine Lepera in support of Defendants' motion for summary judgment (Dkt. #104 ("Lepera Decl.")) and the exhibits attached thereto, including the expert report of Lawrence Ferrara (Lepera Decl., Ex. 16 ("Ferrara Report")); and the Declarations of Patrick Almonrode in opposition to the motions to exclude (Dkt. #117 ("Almonrode Exp. Decl.")), and the exhibits attached thereto, and for summary judgment (Dkt. #118 ("Almonrode SJ Decl.")) and the exhibits attached thereto, including the transcript of Salani's Deposition (Almonrode Exp. Decl., Ex. C ("Salani Tr.")).

Citations to a party's Rule 56.1 Statement incorporate by reference the documents and testimony cited therein.  Where a fact stated in a movant's Rule 56.1 Statement is supported by evidence and controverted only by a conclusory statement by the opposing party, the Court finds that fact to be true.  *See* Local Civil Rule 56.1(c) ("Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically denied and controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party."); *id.* at 56.1(d) ("Each statement by the movant or opponent under Rule 56.1(a) and (b), including each statement denying and controverting any statement of material fact, must be followed by citation to evidence that would be admissible and set forth as required by Fed. R. Civ. P. 56(c).").  Where Plaintiffs agree to a fact set forth in Defendants' Rule 56.1 Statement in its entirety, the Court cites only to the Defendants' Rule 56.1 Statement.

For ease of reference, the Court refers to Defendants' memorandum of law in support of their motion to exclude expert testimony as "Def. Exp. Br." (Dkt. #102); to Plaintiffs' memorandum of law in opposition to Defendants' motion to exclude as "Pl. Exp. Opp." (Dkt. #114); and to Defendants' reply memorandum of law in further support of their motion to exclude as "Def. Exp. Reply" (Dkt. #121).  Similarly, the Court refers to Defendants' memorandum of law in support of their motion for summary judgment as "Def. SJ Br." (Dkt. #105); to Plaintiffs' memorandum of law in opposition to Defendants' motion for summary judgment as "Pl. SJ Opp." (Dkt. #115); to Defendants' reply as "Def. SJ Reply" (Dkt. #122); and to Plaintiffs' sur-reply as "Pl. SJ Sur-Reply" (Dkt. #128).

Finally, copyright infringement decisions are less than consistent in their spelling of the key terms "protectable" and "protectible."  This Court falls into the same bad habit.

lawsuit, Plaintiffs were assigned the copyright to *Don Diablo*. (*Id.* ¶ 5). Both *Wiggle* and *Don Diablo* are in major keys. (*Id.* ¶ 6).[3]

In 2020, Defendant Dua Lipa released the song *Levitating* on her album entitled *Future Nostalgia*. (Def. 56.1 ¶ 7). A remix, *Levitating (Da Baby)*, was also released. (*Id.* ¶ 8). Each of the Defendants in the instant action is a co-author of *Levitating* and *Levitating (Da Baby)*, or otherwise has participated in the exploitation of the copyrights in those works. (*Id.* ¶¶ 8-9). *Levitating* and *Levitating (Da Baby)* are in minor keys. (*Id.* ¶ 10). There is no musical expression at issue in *Levitating (Da Baby)* that is not in *Levitating*. (*Id.*).

### 2.    The Expert Reports

As a result of the Court's decision in *Larball I*, the parties proposed, and the Court endorsed, a case management plan "that provides for an early focus on the core music issues in this case, *i.e.*, whether or not there are any probative substantial or striking similarities in the music at issue which constitute protectible expression." (Dkt. #86-87). In the course of discovery, each side commissioned reports from expert witnesses. As relevant to Defendants' first motion, Plaintiffs served expert reports of Barbara Salani (the "Salani Report") and Charles Calello (the "Calello Report"). (Def. 56.1 ¶ 11).

---

[3]    *See generally* Peter Nicolas, *Harmonizing Music Theory and Music Law*, 108 IOWA L. REV. 1247, 1291 (2023) (distinguishing major and minor keys); Rachael Belensz, *Un-Blurred Lines: A Proposal for A More Objective Method in Determining the Extent of Similarities Between Musical Works for the Purpose of Probative Copying*, 20 UIC REV. INTELL. PROP. L. 251, 270 (2021) (same).

Barbara Salani is a Ph.D. candidate in comparative studies, musicology, and Italian studies who also teaches piano, the history of music, music analysis, and harmony. (Pl. 56.1 ¶¶ 153-154). She has experience transcribing music; for her dissertation, she transcribed the melodic elements, rhythmic and harmonic patterns, and structure and instrumentation of an entire opera and transcribed portions of other operas to identify the common features of those works. (*Id.* ¶ 155). Salani defines the objective of her report as "investigat[ing] and document[ing] instances of copyright infringement by *Levitating*" and concluding "that there are significant musical similarities between [*Wiggle*], *Don Diablo*[,] and *Levitating* that constitute copyright infringement." (Salani Report 1). As to her methodology, Salani explains that:

> [e]ach track included in [the Salani Report] was replicated from its initial recording and converted into musical notation for comparative analysis. [Salani] used a standard technique in musicological studies that aligns the musical compositions to the same key signature to facilitate a clearer comparison. [*Don Diablo*] was originally in the key of Bb Major, while [*Wiggle*] was in the key of Eb Major and [*Levitating*] in the key of B minor. To align the three songs, [*Don Diablo*] was transposed from BbM to DM. [*Wiggle*] was transposed from Eb Major to D Major, and [*Levitating*] was kept in its original key of B minor. This way all songs have the same key signature, for direct comparison purposes…. [Salani noted] that transposing a song to a different key doesn't modify its melodic structure, its mode, its intervals, or the rhythm, but merely alters its starting pitch.

(Salani Report 1-2).

Plaintiffs' second expert, Charles Calello, is a professional composer, arranger, and producer who has been involved in the creation of numerous hit

songs, including Neil Diamond's *Sweet Caroline*.  (Pl. 56.1 ¶ 140).  Calello

delimited the objective of his report as an effort to "Demonstrate Why the

Musical Composition [*Levitating*] Infringes on The Musical Compositions

[*Wiggle*] and [Its] Spanish version, [*Don Diablo*]."  (Calello Report 1).  As to his

methodology, Calello explains that:

> [he] transcribed all relevant portions of said pieces into
> notation (musical notes).  The musical notation will
> show visually how the musical compositions are
> connected through the five elements, MELODY.
> RHYTHM, LYRICS, STRUCTURE and PERFORMANCE.

(Calello Report 1).

For their part, Defendants served three expert reports from Dr. Lawrence

Ferrara: an affirmative report (the "Ferrara Report"), and separate rebuttals to

the Salani and Calello Reports.  (Def. 56.1 ¶ 46).  Dr. Ferrara is a musicologist

on the full-time faculty at New York University ("NYU"), where his rank is

Professor of Music and his title is Director Emeritus of all studies (B.M.

through Ph.D.) in Music and the Performing Arts in NYU's Steinhardt School.

(*Id.* ¶ 47).  Dr. Ferrara described the purpose of his report as "to complete

musicological analyses of the compositions embodied in" *Wiggle*, *Don Diablo*,

*Levitating*, and *Levitating (Da Baby)*.  (*Id.* ¶ 49; Ferrara Report ¶ 2).  As to his

methodology, he transcribed the works at issue into musical notation and

transcribed prior art.  (Def. 56.1 ¶ 49; Ferrara Report ¶ 22).  Among other

things, Dr. Ferrara analyzed:

> the similarities and differences between the musical
> compositions [*Wiggle*, *Don Diablo*, and *Levitating*]
> includ[ing by] assessing … whether or not there is

musicological evidence of copied expression in [*Levitating*] from [*Wiggle* or *Don Diablo*] and … whether or not any shared similarities comprise commonplace musical building blocks, public domain elements, or otherwise exist in "prior art" (*i.e.*, compositions that predate [*Wiggle*'s] 1979 release), which would be filtered out from consideration.

(Ferrara Report ¶ 3).  He concluded that "there are no significant structural, harmonic, rhythmic, melodic, or lyrical similarities, individually or in the aggregate" between *Wiggle* and *Levitating* or *Don Diablo* and *Levitating*.  (*Id.* ¶ 5).  Instead, "[t]he only similarity at issue is that [*Wiggle*, *Don Diablo*, and *Levitating*] include a rapidly sung descending melody in which notes are repeated." (*Id.*).

## B.    Procedural Background

On August 8, 2023, the Court issued *Larball I*, which recounts this case's procedural history through that date.  *See* 2023 WL 5050951, at *3-4.  In that decision, the Court found that Plaintiffs had failed to plausibly allege Defendants' access to their works.  *Id.* at *9-13.[4]  However, acknowledging the early stage in the proceedings, the Court found that Plaintiffs had "set forth enough facts to render it plausible" that Defendants' *Levitating* was strikingly similar to the protected elements of Plaintiffs' *Wiggle*.  *Id.* at *6, 13-15. Accordingly, the Court denied Defendants' motion to dismiss pursuant to

---

[4]      The Court analyzed both whether (i) Defendants could establish a corporate receipt theory of access or (ii) Defendants' access could be properly inferred because *Wiggle* has been "widely disseminated." *See Larball Publ'g Co.* v. *Lipa*, No. 22 Civ. 1872 (KPF), 2023 WL 5050951, at *9-13 (S.D.N.Y. Aug. 8, 2023) ("*Larball I*").

Federal Rule of Civil Procedure 12(b)(6) and permitted Plaintiffs to "proceed to discovery on their striking similarity theory."  *Id.* at *15.

As noted, the parties proposed a case management plan that bifurcated discovery into separate phases, with the first phase focusing on "whether or not there are any probative substantial or striking similarities in the music at issue which constitute protectible expression."  (Dkt. #86 at 3-4).  The parties acknowledged that unlawful appropriation was often "a question to be answered by laypersons rather than experts," but noted that courts in this Circuit have relied on experts to "separate the protectible and non-protectible elements of a copyrighted work."  (*Id.* at 4).  Liability and damages discovery would be deferred until after a decision on a summary judgment motion regarding the music issues.  (*Id.*).  The Court entered that case management plan.  (Dkt. #87).

On April 12, 2024, Defendants simultaneously moved to exclude the expert testimony of Salani and Calello (Dkt. #99), and for summary judgment (Dkt. #103).  On June 10, 2024, Plaintiffs filed their opposition to the motion to exclude (Dkt. #114), and to the motion for summary judgment (Dkt. #115).  On July 12, 2024, Defendants filed their replies in further support of their motion to exclude (Dkt. #121), and motion for summary judgment (Dkt. #122).  Plaintiffs sought leave to file a sur-reply in further opposition to the motion for summary judgment (Dkt. #125), and did so on August 7, 2024 (Dkt. #128).  After briefing on those motions concluded, Defendants filed a notice of supplemental authority, directing this Court's attention to a precedential

decision issued by the Second Circuit on November 1, 2024, *Structured Asset Sales, LLC* v. *Sheeran*, 120 F.4th 1066 (2d Cir. 2024).  (Dkt. #129).  In their response, Plaintiffs asserted that this supplemental authority was not dispositive of the issues in this case.  (Dkt. #130).

**DISCUSSION**

**A.    The Court Grants in Part and Denies in Part Defendants' Motion to Exclude the Testimony of Plaintiffs' Expert Witnesses**

**1.    Applicable Law**

Before the Court considers what Plaintiffs' expert witnesses *did* say, Defendants ask the Court to limit, if not exclude entirely, what these witnesses *can* say.  "[I]t is appropriate for a district court to decide questions regarding the admissibility of evidence, including expert opinion evidence, on a motion for summary judgment."  *Bah* v. *Nordson Corp.*, No. 00 Civ. 9060 (DAB), 2005 WL 1813023, at *6 (S.D.N.Y. Aug. 1, 2005); *see also Maldonado* v. *Town of Greenburgh*, No. 18 Civ. 11077 (KMK), 2024 WL 4336771, at *10 (S.D.N.Y. Sept. 26, 2024) ("At the summary judgment stage, a court can 'decide questions regarding the admissibility of evidence, including expert opinion evidence.'" (citations omitted)).  That is because, in considering a summary judgment motion, a court may only consider evidence that would be admissible at trial.  *See Nora Beverages, Inc.* v. *Perrier Grp. of Am., Inc.*, 164 F.3d 736, 746 (2d Cir. 1998); *accord Raskin* v. *Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997) ("Because the purpose of summary judgment is to weed out cases in which 'there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law,' Fed. R. Civ. P. 56(c), it is appropriate

9

for district courts to decide questions regarding the admissibility of evidence on summary judgment."); *Yang* v. *United States*, 745 F. Supp. 3d 60, 67 (S.D.N.Y. 2024).

Rule 702 of the Federal Rules of Evidence provides the requirements for admissible expert evidence:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702.  "[T]he Rules of Evidence — especially Rule 702 — [ ] assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand."  *Daubert* v. *Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993).  Regardless of "whether [expert testimony is] proffered at trial or in connection with a motion for summary judgment," "[u]nder *Daubert*, the district court functions as the gatekeeper for expert testimony."  *Major League Baseball Properties, Inc.* v. *Salvino, Inc.*, 542 F.3d 290, 311 (2d Cir. 2008) (internal quotation marks omitted).  "A court's inquiry thus focuses on three issues: [i] whether the witness is qualified to be an expert; [ii] whether the opinion is based upon reliable data and methodology; and [iii] whether the expert's testimony on a particular issue will

assist the trier of fact." *Arista Recs. LLC* v. *Lime Grp. LLC*, No. 06 Civ. 5936 (KMW), 2011 WL 1674796, at *1 (S.D.N.Y. May 2, 2011) (citing *Nimely* v. *City of New York*, 414 F.3d 381, 396-97 (2d Cir. 2005)). "The party seeking to rely on expert testimony bears the burden of establishing, by a preponderance of the evidence, that all requirements have been met." *Id.* (citing *Daubert*, 509 U.S. at 593 n.10).

Further, "[e]xpert testimony may not usurp the role of the court in determining the applicable law." *Price* v. *Fox Ent. Grp., Inc.*, 499 F. Supp. 2d 382, 387 (S.D.N.Y. 2007) (citing *United States* v. *Lumpkin*, 192 F.3d 280, 289 (2d Cir. 1999)). This means that an expert "may opine on an issue of fact," but "may not give testimony stating ultimate legal conclusions based on those facts." *United States* v. *Bilzerian*, 926 F.2d 1285, 1294 (2d Cir.1991).

Courts in this Circuit have considered the role of experts in copyright infringement cases specifically. "[C]ourts in the Southern District have permitted expert testimony on [the issue of] probative and striking similarity in non-technical infringement cases." *Freeman* v. *Deebs-Elkenaney*, No. 22 Civ. 2435 (LLS) (SN), 2024 WL 3634738, at *3-4 (S.D.N.Y. Aug. 1, 2024) (citing *Bunick* v. *UPN*, No. 06 Civ. 2833 (RMB) (HBP), 2008 WL 1968305 (S.D.N.Y. Apr. 30, 2008), and *Muller* v. *Twentieth Century Fox Film Corp.*, 794 F. Supp. 2d (S.D.N.Y. 2011)). Moreover, although the question of substantial similarity is typically for the trier of fact and is assessed using an "ordinary lay observer" standard, expert testimony regarding substantial similarity may be permitted where the subject matter is "highly complicated and technical." *Computer*

*Assocs. Int'l, Inc.* v. *Altai, Inc.*, 982 F.2d 693, 713 (2d Cir. 1992); *Freeman*, 2024 WL 3634738, at *2-3 (finding that "books written for middle and high schoolers" could be "easily" understood by lay observers and therefore, expert testimony on substantial similarity would not be permitted); *Price*, 499 F. Supp. 2d at 389 (finding that two movies about dodgeball were "not highly technical works" and therefore experts were not permitted to testify as to the similarities of the works). Music is an area that is recognized as technical, but even in this context, "[e]xpert musicologists may opine on probative or objective similarities between the works and ... can provide guidance by translating musical notation and musical concepts into plain English, but ... may not opine that a defendant's work is substantially similar to the plaintiff's work." *Griffin* v. *Sheeran*, 351 F. Supp. 3d 492, 496 (S.D.N.Y. 2019) (citing *Laureyssens* v. *Idea Grp., Inc.*, 964 F.2d 131, 140 (2d Cir. 1992) (finding expert testimony to be "irrelevant when the issue turns to unlawful appropriation")).

### 2. Analysis

Defendants argue that the Salani Report and Calello Report should be excluded in their entirety because Plaintiffs have failed to meet their burden to demonstrate the reliability of those reports under *Daubert* and Federal Rule of Evidence 702. (Def. Exp. Br. 5-16). While they put forth several bases on which they contend that the reports should be excluded, their principal argument is that both experts "uniformly and fully fail to engage in any analysis to ... filter out unprotectable expression in the music at issue from their purported copyright infringement analysis — which filtering analysis is

12

unquestionably required by the Courts in this Circuit, as well as established by relevant Ninth Circuit jurisprudence." (*Id.* at 2). As discussed in the remainder of this section, the Court finds the expert witness testimony to be reliable — as far as such testimony goes — but will disregard the experts' legal conclusions.

> ### a.    The Court Finds That the Salani Report and the Calello Report Are Sufficiently Reliable Under Rule 702

"In assessing reliability, 'the district court should consider the indicia of reliability identified in Rule 702, namely, [i] that the testimony is grounded on sufficient facts or data; [ii] that the testimony is the product of reliable principles and methods; and [iii] that the witness has applied the principles and methods reliably to the facts of the case.'" *United States* v. *Williams*, 506 F.3d 151, 160 (2d Cir. 2007) (quoting *Amorgianos* v. *Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 265 (2d Cir. 2002)). But the reliability inquiry is a "flexible one," *Daubert*, 509 U.S. at 594, and "the law grants a district court the same broad latitude when it decides *how* to determine reliability as it enjoys in respect to its ultimate reliability determination," *Kumho Tire Co.* v. *Carmichael*, 526 U.S. 137, 142 (1999). Further, "in accordance with the liberal admissibility standards of the Federal Rules of Evidence, only serious flaws in reasoning or methodology will warrant exclusion." *In re Fosamax Prods. Liab. Litig.*, 645 F. Supp. 2d 164, 173 (S.D.N.Y. 2009).

Defendants first argue that neither the Salani Report nor the Calello Report meets the reliability standard because they each employ insufficient

methodologies regarding the issue of substantial similarity. (Def. Exp. Br. 7-11). As discussed, both Salani and Calello used the methodology of transcribing portions of the works at issue. Salani "converted" each of the songs included in her report "into musical notation for comparative analysis." (Salani Report 1). She "used a standard technique in musicological studies that aligns the musical compositions to the same key signature to facilitate a clearer comparison," which does not "modify [a song's] melodic structure, its mode, its intervals[, or the rhythm], but merely alters its starting pitch." (*Id.* at 1-2). Employing that technique, she transposed the keys of *Don Diablo* and *Wiggle* to the key that *Levitating* is in, namely, B minor. (*Id.* at 1). She then compared the melodies, rhythms, and harmonic progressions of *Don Diablo* and *Wiggle*, and concluded that the melodic and rhythm lines matched and that the "harmonic progression is exactly the same." (*Id.* at 2-3). Having drawn those conclusions, she then turned to comparison of *Don Diablo* and *Levitating*. (*Id.* at 3-8 (comparing the melodic motives, rhythmic patterns, pitches, and musical sentences in *Don Diablo* and *Levitating*)). In his report, Calello also provided transcriptions of the works at issue. (Calello Report, Ex. A). Using those transcriptions, Calello compared the elements of melody, rhythm, structure, tempo, and beat in *Wiggle*, *Don Diablo*, and *Levitating*. (*Id.* at 1-4).

Defendants argue that those methodologies are insufficient and unreliable because "to properly assist in analyzing a claim of substantial similarity, a plaintiff's expert has the affirmative burden to strip out or filter

away all that is commonplace, unprotectable expression in the music that is allegedly infringing, including common music elements or building blocks that are found in other musical works." (Def. Exp. Br. 8). Defendants cite no case law that requires an expert to conduct a filtering analysis for his or her report to be admissible. (*Id.*).[5] Instead, they cite to decisions in this Circuit that reiterate the standard for finding substantial similarity. (*Id.* at 8-9 (citing *Crane* v. *Poetic Prod Ltd.*, 593 F. Supp. 2d 585, 591 (S.D.N.Y.) ("The law in this Circuit is clear that the substantial similarity must be between protectable elements"), *aff'd*, 351 F. App'x 516 (2d Cir. 2009) (summary order))).

Defendants' other cited cases similarly do not create a "methodological requirement" that experts on this topic conduct a filtering analysis. (Def. Exp. Br. 9). For example, in *McDonald* v. *Multimedia Entertainment, Inc.*, a sister court in this District simply stated that "[e]vidence admissible on the issue of 'probative similarity' *includes* expert testimony 'dissecting' the two works and discussing the works' relationships to other earlier works, for the purpose of illuminating whether similarities between the two works are more likely due to copying or independent creation." No. 90 Civ. 6356 (KC), 1991 WL 311921, at *2 (S.D.N.Y. July 19, 1991) (emphasis added).

Further, in *Mowry* v. *Viacom International, Inc.*, also cited by Defendants, the court excluded the report at issue for different reasons. No. 03 Civ. 3090 (AJP), 2005 WL 1793773, at *13-14 (S.D.N.Y. July 29, 2005). Judge Peck

---

[5]    Indeed, there is some tension between Defendants faulting Plaintiffs' experts for not segregating protectable and non-protectable elements and their later argument that Plaintiffs' experts ought not opine on legal conclusions.

began by stating that "*[u]nlike in specialized areas like music*," there, "the trier

of fact [could] compare the works without the need of expert assistance" by

viewing the motion picture and screenplay at issue.  *Id.* at *13 (emphasis

added).  He then found that the report had "a major defect" because the

comparisons in the report were not based on the works themselves, but on

charts that summarized and paraphrased parts of those works; what is more,

the expert did not test if any of the "allegedly common schemata she found are

*scènes à faire* … or common across a multitude of scripts."  *Id.*  The Court

ultimately held that "the subjectiveness of comparing self-created

summarizations of literary works that the trier of fact is able to read/view,

creates too great a risk of jury confusion."  *Id.*  The present case is clearly

distinguishable; it involves the specialized area of music, and the

methodologies employed by Salani and Calello are not summaries, but rather

are transcriptions of the songs themselves.

In advancing their primary argument for exclusion, Defendants conflate

the legal standard for definitively establishing that substantial similarity exists

with the requirements for a reliable expert report that could assist the trier of

fact in concluding that such a similarity exists.  While Salani and Calello do

not provide a filtering analysis,[6] their analyses of the musical components of

---

[6]     The Court agrees with Defendants that Plaintiffs' argument that Salani and Calello *did*
provide a filtering analysis is wrong.  (*See* Def. Exp. Reply 5).  Plaintiffs claim that
Calello conducted "filtration" because he "filtered out the portions" of *Wiggle* and *Don
Diablo* that are [allegedly] infringed by *Levitating*."  (Pl. Exp. Opp. 8-10).  That is not
responsive to Defendants' argument that Plaintiffs' experts did not filter out the non-
protectable elements from the songs at issue when comparing those songs.

the songs at issue *could* be helpful to a trier of fact in deciding the issue of substantial similarity.  Accordingly, the Court does not exclude the Salani Report or the Calello Report on the basis that those reports do not conduct a filtering analysis.[7]

Defendants next argue that Salani's and Calello's methods are unreliable because their analyses were not "thorough."  (Def. Exp. Br. 11-13).  Regarding Salani, they first contend that her analysis was insufficient because she did not transcribe the entirety of the three works at issue, did not conduct any analysis of harmony, and failed to include dissimilarities that she confirmed in her deposition.  (*Id.* at 12).  Similarly, regarding Calello, Defendants argue that Calello "did not make any substantive analysis in harmony" because he provided transcriptions of harmony but did not analyze those transcriptions.  (*Id.* at 12).  The Court finds that such quibbles — while suggesting that Plaintiffs' expert testimony may be less than forceful — are not themselves grounds for exclusion.  *Lessem* v. *Taylor*, 766 F. Supp. 2d 504, 511 (S.D.N.Y. 2011) (finding that expert's decision to "limit[ ] his report to the most similar portions of the two songs" was not grounds for exclusion).

Defendants' next claim is that the music transcriptions are "completely untrustworthy" because Salani "wrongly notated the first bar to the *Levitating* verse as bar nine (because that is the length of *Don Diablo*'s introduction), but

---

[7]    To be clear, however, Defendants lose the battle but win the war.  While the Court accepts the testimony offered by Plaintiffs' expert witnesses, the absence of evidence (expert or otherwise) supporting Plaintiffs' claims of substantial similarity as to protectable elements of Plaintiffs' works, requires summary judgment in favor of Defendants on Plaintiffs' copyright infringement claims.

later conceded the introduction in *Levitating* is only four bars and thereby, the first bar of the verse should be notated as bar five." (Def. Exp. Br. 13-15). But Salani explained in her deposition that this was due to a limitation in the software application she used for transcriptions. (Salani Tr. 126:16-129:18). Further, "[a] minor factual error that is largely irrelevant to the ultimate opinion does not render an expert's testimony inadmissible." *Tarqui* v. *United States*, No. 14 Civ. 3523 (KMK), 2017 WL 4326542, at *9 (S.D.N.Y. Sept. 27, 2017) (internal quotation marks omitted). Having reviewed the expert reports and considered each of Defendants' arguments, the Court finds that the Salani Report and the Calello Report meet the standard for reliability.[8]

### b.   The Court Declines to Exclude the Salani Report or the Calello Report on the Other Bases Set Forth by Defendants

Defendants proffer several other bases for exclusion of Plaintiffs' experts, each of which the Court can reject more summarily. To begin, Defendants argue that the Salani Report must be excluded for failure to comply with Federal Rule of Civil Procedure 26(a)(2)(B), because Salani did not disclose in her report that she had reviewed the Calello report before preparing hers. (Def.

---

[8]   For similar reasons, the Court rejects Defendants' claim that conclusions as to *Wiggle* and *Levitating* must be excluded because Plaintiffs' expert reports do not directly compare those works. (*See* Def. Exp. Br. 19-20). The Salani Report first compared the musical notations of *Wiggle* and *Don Diablo*, and then proceeded to compare the notations of *Don Diablo* with Defendants' works, which is sufficient for admissibility. (*See generally* Salani Report). Further, the Calello Report includes transcriptions of all three songs. (Calello Report, Ex. A). The Court therefore will not exclude conclusions regarding *Wiggle* and *Levitating* on that basis. *See Daubert* v. *Merrell Dow Pharms., Inc.*, 509 U.S. 579, 595-96 (1993) ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").

Exp. Br. 3 n.6, 15-16).  That provision of the Federal Rules requires that expert
reports must contain, *inter alia*, "a complete statement of all opinions the
witness will express and the basis and reasons for them" and "the facts or data
considered by the witness in forming them," Fed. R. Civ. P. 26(a)(2)(B)(i)-(ii).  It
is clear that "Rule 26 is intended 'to prevent a party from "sandbagging" an
opposing party with new evidence.'"  *Meade* v. *Otis Elevator Co.*, No. 15 Civ.
4822 (LTS) (HBP), 2017 WL 6509259, at *5 (S.D.N.Y. Dec. 18, 2017) (quoting
*Conte* v. *Newsday, Inc.*, No. 06 Civ. 4859 (JFB) (ETB), 2011 WL 2671216, at *4
(E.D.N.Y. July 7, 2011)).  That said, "[c]ourts in this Circuit have recognized
that preclusion is a harsh sanction, and it remains a discretionary remedy even
if the trial court finds that there is no substantial justification for the party's
conduct and the failure to disclose is not harmless."  *Id.* at *5 (internal
quotation marks omitted) (alterations adopted).  Defendants have not shown
that any Rule 26 violation by Salani prejudiced them to such a degree that the
extraordinary sanction of preclusion is warranted.  As discussed, Salani
ultimately conducted her own analysis of the works at issue, using the
methodology she describes in her report.  The Court exercises its discretion not
to exclude her report on this basis.

    Defendants' next argument for exclusion is that Salani and Calello are
biased to an "extraordinary degree."  (Def. Exp. Br. 16-19 (quoting *El Ansari* v.
*Graham*, No. 17 Civ. 3963 (VEC), 2019 WL 3526714, at *8 (S.D.N.Y. Aug. 2,
2019) (noting that "[a]n expert may be excluded if the expert has a clear conflict
of interest or bias of an extraordinary degree"))).  But in *El Ansari* itself, the

19

court never reached the question of whether the challenged expert's relationship with the plaintiff's counsel was disqualifying. *Id.* Here, as between Calello and Salani, Defendants' stronger argument is that Calello should be excluded, because (i) during his deposition, he stated that he has a longstanding personal and professional relationship with Sandy Linzer, the principal of Plaintiff SLP in this action; and (ii) he has a "potential economic interest" because he co-wrote a song for Cory Daye that appears on the same album as *Wiggle*. (Def. Exp. Br. 16-17). As to the first argument, this Court recognizes that a personal relationship could support exclusion of an expert. *See, e.g.*, *Chichilnisky* v. *Trs. of Columbia Univ. in City of New York*, No. 91 Civ. 4617 (MJL), 1994 WL 658428, at *2 (S.D.N.Y. Nov. 22, 1994) (stating that, if not for a protective order that mooted the question, a potential expert would likely have been barred from testifying because of his personal relationship with plaintiff and "*his* apparent involvement in the controversy at Columbia" (emphasis added)); *see also Proteus Books Ltd.* v. *Cherry Lane Music Co.*, 873 F.2d 502, 515 (2d Cir. 1989) (upholding exclusion of expert who was an "interested party ... a party in the case"); *cf. Lippe* v. *Bairnco Corp.*, 288 B.R. 678, 688 (S.D.N.Y. 2003) ("Of course, many expert witnesses are biased and the lack of bias is not required for expert testimony to be admissible."), *aff'd*, 99 F. App'x 274 (2d Cir. 2004) (summary order). The Court finds that the disclosed relationship between Calello and Sandy Linzer is not so extraordinary as to necessitate the extreme remedy of exclusion. Further, Calello's work on a different song on the Cory Daye album is far too attenuated to create an

actionable conflict of interest.  By contrast, Defendants' argument that Salani should be disqualified as a witness because of her relationship with Calello is far less persuasive to the Court.  (Def. Exp. Br. 18-19).  Again, there is a high bar for disqualifying an expert witness, and that bar is not met as to Salani.

Finally, Defendants argue that the Calello Report should be excluded as cumulative of the Salani Report, because the Salani Report is "similar, but lengthier." (Def. Exp. Br. 24-25).  But the reports are not "needlessly cumulative" — they provide different analyses of musical elements in the songs at issue.  *Highland Cap. Mgmt., L.P.* v. *Schneider*, 551 F. Supp. 2d 173, 184 (S.D.N.Y. 2008) (excluding testimony of seven individuals as cumulative where opinion testimony could be addressed by two other individuals).  The Court declines to exclude the Calello Report as cumulative.

### c.    The Court Excludes Impermissible Conclusions of Law in the Salani Report and the Calello Report

As an alternative to their arguments for complete exclusion, Defendants contend that portions of the Salani Report and the Calello Report should be excluded.  (Def. Exp. Br. 19-24).  Here, Defendants' arguments find a more receptive audience.

"An opinion is not objectionable just because it embraces an ultimate issue."  Fed. R. Evid. 704(a).  Notwithstanding, the Second Circuit "is in accord with other circuits in requiring exclusion of expert testimony that expresses a legal conclusion."  *Hygh* v. *Jacobs*, 961 F.2d 359, 363 (2d Cir. 1992).  That requirement guards "against the admission of opinions which would merely tell the jury what result to reach."  Fed. R. Evid. 704 advisory committee's note;

*see also United States* v. *Duncan*, 42 F.3d 97, 101 (2d Cir. 1994) ("Generally, the use of expert testimony is not permitted if it will usurp either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it." (internal quotation marks omitted)).

The Salani Report opines (i) that "there are significant musical similarities between *Wiggle*[ ], *Don Diablo*[,] and *Levitating* that constitute copyright infringement"; (ii) that there are elements in *Wiggle* that "satisf[y] any originality requirement"; and (iii) as to the law regarding "public domain pieces." (Salani Report 1, 2, 10). The Calello Report similarly purports to explain "Why the Musical Composition [*Levitating*] Infringes on The Musical Compositions [*Wiggle*] and [its] Spanish version [*Don Diablo*]," and concludes that "it would have been literally impossible for *Levitating* to have been created without one or more of the Dua Lipa team to have referenced the master recording of, *Wiggle*[ ] and/or *Don Diablo*." (Calello Report 1, 4 (internal quotation marks omitted)). Those statements "cross[ ] the line provided by Rule 704" because they usurp the role of the factfinder in applying the law to the facts before it. *Hygh*, 961 F.2d at 364; *see also Laureyssens*, 964 F.2d at 140. Accordingly, the Court excludes those portions of the Salani Report and the Calello Report.

**B.    The Court Grants Defendants' Motion for Summary Judgment**

       **1.    Applicable Law**

To succeed on a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(a), a litigant must "show[ ] that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 322 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law," and is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Jeffreys* v. *City of New York*, 426 F.3d 549, 553 (2d Cir. 2005).

"To prevail on a motion for summary judgment[ in a copyright infringement case], the defendants must demonstrate the absence of material evidence supporting an essential element of [the plaintiff's] copyright infringement claim." *Jorgensen* v. *Epic/Sony Recs.*, 351 F.3d 46, 50 (2d Cir. 2003). The elements of a copyright infringement claim are "[i] ownership of a valid copyright; and [ii] unauthorized copying of the copyrighted work." *Id.* at 51 (citing *Feist Publ'ns, Inc.* v. *Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)). To satisfy the "unauthorized copying" element of an infringement claim, a plaintiff must show that (i) "[the] defendant has actually copied the plaintiff's work" and (ii) "the copying is illegal because a substantial similarity exists between the defendant's work and the protectable elements of plaintiff's." *Ritani, LLC* v. *Aghjayan*, 880 F. Supp. 2d 425, 441-42 (S.D.N.Y. 2012). "Because direct evidence of copying is seldom available, a plaintiff may establish copying circumstantially by demonstrating that the person who composed the defendant's work had access to the copyrighted material, and that there are similarities between the two works that are probative of copying."

23

*Jorgensen*, 351 F.3d at 51 (internal quotation marks and citations omitted).

"[T]he stronger the proof of similarity, the less the proof of access is required."

*Id.* at 56 (internal quotation marks omitted).  Indeed, a plaintiff may forgo

showing access entirely and establish actual copying by proving that the works

at issue are "'so strikingly similar as to preclude the possibility of independent

creation.'"  *Id.* (quoting *Lipton* v. *Nature Co.*, 71 F.3d 464, 471 (2d Cir. 1995));

*see also Gal* v. *Viacom Int'l, Inc.*, 518 F. Supp. 2d 526, 543 (S.D.N.Y. 2007)

("The mere existence of multiple similarities is insufficient to meet the test.  The

works must be so strikingly similar that copying is the only realistic basis for

them." (internal citations omitted)).[9]

In the Second Circuit, "[t]he standard test for substantial similarity

between two items is whether an 'ordinary observer, unless he set out to detect

the disparities, would be disposed to overlook them, and regard [the] aesthetic

appeal as the same.'"  *Peter F. Gaito Architecture, LLC* v. *Simone Dev. Corp.*, 602

F.3d 57, 66 (2d Cir. 2010) (quoting *Yurman Design, Inc.* v. *PAJ, Inc.*, 262 F.3d

101, 111 (2d Cir. 2001)).  In applying this "ordinary observer test," courts

consider whether "an average lay observer would recognize the alleged copy as

having been appropriated from the copyrighted work."  *Id.* (quoting *Knitwaves,*

*Inc.* v. *Lollytogs Ltd. (Inc.)*, 71 F.3d 996, 1002 (2d Cir. 1995)).  But where, as

here, the works at issue "have both protectible and unprotectible elements, [the

court's] analysis must be more discerning," and the court "must attempt to

---

[9]     In this case, Plaintiffs must prove striking similarity to establish actual copying,
because the Court determined at the motion to dismiss stage that Plaintiffs had not
plausibly alleged access.

extract the unprotectible elements from [its] consideration and ask whether the protectible elements, standing alone, are substantially similar." *Id.* (internal quotation marks omitted); *accord Lee* v. *Warner Media, LLC*, No. 23-8067, 2025 WL 516933, at *1-2 (2d Cir. Feb. 18, 2025) (summary order).

At the same time, courts are not "required to dissect [the works] into their separate components, and compare only those elements which are in themselves copyrightable." *Peter F. Gaito*, 602 F.3d at 66. Rather, courts are to be "principally guided 'by comparing the contested design's 'total concept and overall feel' with that of the allegedly infringed work.'" *Id.* (quoting *Tufenkian Imp./Exp. Ventures, Inc.* v. *Einstein Moomjy, Inc.*, 338 F.3d 127, 133 (2d Cir. 2003)). That comparison is informed by a court's "good eyes and common sense." *Id.* (quoting *Hamil Am. Inc.* v. *GFI*, 193 F.3d 92, 102 (2d Cir. 1999)). Ultimately, the "inquiry necessarily focuses on whether the alleged infringer has misappropriated the original way in which the author has selected, coordinated, and arranged the elements of his or her work." *Id.* (internal quotation marks omitted).

The question of whether works are substantially similar "is frequently a fact issue for jury resolution." *Warner Bros. Inc.* v. *Am. Broad. Companies, Inc.*, 720 F.2d 231, 239-40 (2d Cir. 1983). But if [i] "the similarity between two works concerns only *non*-copyrightable elements of the plaintiff's work," or [ii] "no reasonable jury, properly instructed, could find that the two works are substantially similar," a court may determine, on a motion for summary judgment, that there has been no infringement as a matter of law. *Id.* (internal

25

quotation marks omitted); *see also Structured Asset Sales, LLC* v. *Sheeran*, 120
F.4th 1066, 1070 (2d Cir. 2024) (upholding decision to grant summary
judgment where the elements at issue were non-copyrightable).

> **2.    Plaintiffs' Copyright Infringement Claim Fails as a Matter of Law**

To review, Plaintiffs allege that Defendants' works *Levitating* and
*Levitating (Da Baby)* are substantially similar to Plaintiffs' works *Wiggle* and
*Don Diablo*, specifically identifying the "signature melody" in the songs.  (AC
¶¶ 84-93).  In their opposition to Defendants' motion for summary judgment,
they state that the "musical expression at issue in this case is reflected (but not
completely captured) in the following transcriptions adapted from
transcriptions in … the Ferrara Report" of the melodies of *Don Diablo*, *Wiggle*,
and *Levitating*.



(Pl. SJ Opp. 13).  According to Plaintiffs, the two measures pictured in those
transcriptions show that the first 20 notes of *Don Diablo* and *Levitating* are
identical in pitch, rhythmic duration, and metric placement.  (*Id.*).  Further,

notes 23-24 in *Don Diablo* are identical to notes 22-23 in *Levitating*, except that note 23 in *Don Diablo* differs in pitch from note 22 in *Levitating*.  (*Id.*).

Defendants argue, and Plaintiffs do not dispute, that this "musical phrase shared by *Levitating* and *Don Diablo*" amounts to "five groupings of repeated 16th notes descending on a B minor scale in *Levitating* but on a D major scale in *Don Diablo*."  (Def. SJ Br. 22; *see also id.* at 2 (referring to the challenged passage as a "stepwise descent down a minor scale, ending on the root '1' step" and a "musical phrase descending stepwise down a minor … scale on repeated 16th notes" (emphasis omitted); Def. 56.1 ¶¶ 31-33).  However, Plaintiffs rejoin that:

> importantly, the signature melody contains but is not limited to the descending scale extending actually to note 24 in *Don Diablo* and to note 23 in both *Wiggle* and *Levitating*.  And the addition of those notes to the earlier descending-scale motif creates a combination that is arguably protectable under Circuit precedent[.]

(Pl. SJ Opp. 14).  In other words, according to Plaintiffs, actionable copyright infringement in this case distills to one descending scale plus one additional identical note.

The Second Circuit has recently had occasion to consider the question of what is required for a musical phrase to be protectable.  In *Structured Asset Sales, LLC* v. *Sheeran*, the Court upheld the decision of the district court to grant summary judgment based in part on the determination that a chord progression and harmonic rhythm, in combination, could not constitute protectable expression under copyright law.  120 F.4th at 1070.  In conducting

its analysis, the Court recognized that "basic musical building blocks like notes, rhythms, and chords are generally not copyrightable," but that "a work consisting of unprotectable elements may still be protectable as an original 'selection and arrangement' of those elements." *Id.* at 1079 (first citing *Compendium of U.S. Copyright Office Practices* § 802.5(A) (3d ed. 2017) ("examples of common property musical material" include "chromatic scales"), and then quoting *Feist*, 499 U.S. at 348).

Ultimately, the Second Circuit found,

> [w]hether a selection and arrangement of otherwise unprotectable elements is original enough to merit copyright protection "is a function of (i) the total number of options available, (ii) external factors that limit the viability of certain options and render others non-creative, and (iii) prior uses that render certain selections 'garden variety.'"

120 F.4th at 1079 (quoting *Matthew Bender & Co.* v. *W. Pub. Co.*, 158 F.3d 674, 682-83 (2d Cir. 1998)). In *Sheeran*, that standard was not met because (i) the defendant's expert had shown that the same combination of elements was in other well-known songs, and the plaintiff did not provide any evidence to counter that analysis, and (ii) adopting the plaintiff's selection-and-arrangement claim would "risk[ ] granting a monopoly over a combination of two fundamental music building blocks." *Id.* at 1080-81; *see generally Gaste* v. *Kaiserman*, 863 F.2d 1061, 1068-69 (2d Cir. 1988) ("In assessing this evidence, we are mindful of the limited number of notes and chords available to composers and the resulting fact that common themes frequently reappear in various compositions, especially in popular music. Thus, striking similarity

28

between pieces of popular music must extend beyond themes that could have been derived from a common source or themes that are so trite as to be likely to reappear in many compositions." (internal citations omitted)); *Arnstein* v. *Edward B. Marks Music Corp.*, 82 F.2d 275, 277 (2d Cir. 1936) (Hand, L., *J.*) ("[T]he seven notes available [in a diatonic scale] do not admit of so many agreeable permutations that we need be amazed at the re-appearance of old themes, even though the identity extend through a sequence of twelve notes.").

Mapping the *Sheeran* analysis onto the instant case, the Court observes that if the only two elements at issue were the descending chord and the one additional note, Plaintiffs' claim would necessarily fail, because the Second Circuit has made clear that "the combination of two unprotectable elements is not sufficiently numerous or original to constitute an original work entitled to copyright protection under the selection and arrangement theory of liability." *Sheeran*, 120 F.4th at 1072 (internal quotation marks omitted);[10] *see also Hines* v. *BMG Rts. Mgmt. (US) LLC*, 694 F. Supp. 3d 341, 349 (S.D.N.Y. 2023) ("[C]ommon melodies are unprotectable elements under copyright law." (internal quotation marks omitted)), *reconsideration denied*, 711 F. Supp. 3d 200 (S.D.N.Y. 2024), and *appeal withdrawn sub nom. Hines* v. *Warner Chappell Music Inc.*, No. 24-442, 2024 WL 3895272 (2d Cir. July 25, 2024); *Intersong-*

---

[10]     *See also Skidmore as Tr. for Randy Craig Wolfe Tr.* v. *Led Zeppelin*, 952 F.3d 1051, 1074 (9th Cir. 2020) (*en banc*) ("We have extended copyright protection to a combination of unprotectable elements only if those elements are numerous enough and their selection and arrangement original enough that their combination constitutes an original work of authorship." (internal quotation marks and citations omitted)), *cited in Structured Asset Sales, LLC* v. *Sheeran*, 120 F.4th 1066, 1073 (2d Cir. 2024).

*USA* v. *CBS, Inc.*, 757 F. Supp. 274, 282 (S.D.N.Y. 1991) (finding that a "descending scale step motive … is a commonly used compositional device" and did not constitute protectible expression).  Plaintiffs' expert testimony, which focuses more on proffered substantial similarities, does nothing to alter the Court's protectability analysis.

In a last-ditch effort to salvage their claim, Plaintiffs argue that there are additional "elements, characteristics, and contexts," which they believe, in combination, make the two-component musical phrase at issue protectable. (Pl. SJ Opp. 14-15).  Specifically, Plaintiffs claim that (i) the notes are "sung (in patter style) and as played by specific instruments"; (ii) "in a particular musical style (pop with a disco feel)"; (iii) "in [a] particular tempo"; (iv) "in the contexts of particular harmonies and particular accompaniments" and (v) "in the structural (the signature melody appears in the verse of all three songs) and functional (entertainment and dancing as opposed to, say, the study of the piano) contexts of the songs."  (*Id.*).

It is not lost on the Court that Plaintiffs have advanced this "elements, characteristics, and contexts" argument for the first time only in their opposition to the motion for summary judgment.  (*See* Dkt. #51 at ¶¶ 84-93 (First Amended Complaint, where Plaintiffs claimed copyright infringement based on a substantially similar "signature melody," a "repetitive rhythm … consisting of a dotted eighth note followed by a sixteenth note tied to an eighth note … accompanied by a bass drum"); Dkt. #59 at 8 (Plaintiffs' opposition to Defendants' motion to dismiss, where Plaintiffs argued that the "side-by-side

music notation" of the songs at issue "demonstrates" that they are "nearly identical with regard to the 'signature melody'")). In their opposition to Defendants' motion for summary judgment, Plaintiffs avow that they "have not argued and *do not now argue* that [the] 20-note scale pattern, [the descending scale,] standing alone, is protectable, *or that it comprises the full extent of the musical expression at issue.*" (Pl. SJ Opp. 17 (emphases in original)). But the fact remains that nowhere in their previous submissions did Plaintiffs articulate this particular theory of protectability. Accordingly, the Court need not consider this theory because "[t]he law is clear that a party may not introduce a new theory in opposition to a motion for summary judgment." *Sols. Express Ltd.* v. *Ashley Furniture Indus.*, Inc., No. 20 Civ. 7843 (CS), 2023 WL 2393861, at *6 n.8 (S.D.N.Y. Mar. 7, 2023) (citing *Greenidge* v. *Allstate Ins. Co.*, 446 F.3d 356, 361 (2d Cir. 2006)).

But even considering Plaintiffs' newly-minted theory on the merits, the Court finds that it fails. Plaintiffs concede that the five additional elements "may individually be non-copyrightable." (Pl. SJ Opp. 15). This Court agrees and, further, finds that they "lack sufficient originality alone, or as combined" to be protectable under copyright law. *Nwosuocha* v. *Glover*, No. 21 Civ. 4047 (VM), 2023 WL 2632158, at *7 (S.D.N.Y. Mar. 24, 2023), *aff'd,* No. 23-703, 2024 WL 2105473 (2d Cir. May 10, 2024) (summary order).

To begin, several of these elements are compositional elements that are "not uncommon." *See Intersong-USA*, 757 F. Supp. at 281. For instance, Defendants put forth uncontested evidence that the "patter style" — which is

the "singing of rapid, often repeated, notes 'syllabically' (one syllable per note)" — has been used "for centuries," and, indeed, exists in operas by Mozart and Rossini and operettas by Gilbert and Sullivan.  (*See* Ferrara Report ¶¶ 6, 41-43, 58).  Rapid tempo, or performance speed, is also not uncommon.  (*See id.* ¶ 219 (explaining that the tempo of *Stayin' Alive* by the Bee Gees and *Levitating* are both 103 beats per minute, and, further, that *Don Diablo*'s tempo is a faster 108 beats per minute)); *see also Currin* v. *Arista Recs., Inc.*, 724 F. Supp. 2d 286, 294 (D. Conn. 2010) ("[E]ven if the plaintiffs are correct that the two songs have the same tempo, the speed of the song is not, by itself, a protectible element.").  More fundamentally, the Court finds that a musical style, defined by Plaintiffs as "pop with a disco feel," and a musical function, defined by Plaintiffs to include "entertainment and dancing," cannot possibly be protectable — alone or in tandem — because to hold otherwise would be to completely foreclose the further development of music in that genre or for that purpose.

The Court agrees with Plaintiffs that it is possible that a "layperson" could listen to portions of Plaintiffs' and Defendants' songs and hear similarities.  (*See* Pl. SJ Opp. 16).  But even considering the newly-presented combination of elements, the Court ultimately concludes that there can be no substantial similarity (and thus no copyright violation) as a matter of law, because "the similarity between [the] works concerns only non-copyrightable elements of the [P]laintiff[s'] work."  *Warner Bros. Inc.*, 720 F.2d at 239-40.  This decision is in line with other holdings by sister courts in this Circuit.  *See*

32

*Intersong-USA*, 757 F. Supp. at 282 (concluding that the common elements of a descending scale step motive, harmonic progression, and a recurring eighth-note rhythm are "common elements" that "are found in many other well-known songs," and therefore plaintiffs could not prove "substantial similarity of protectible expression"); *see also Nwosuocha*, 2023 WL 2632158, at *7 (stating that the "'distinct and unique vocal cadence, delivery, rhythm, timing, phrasing, meter and/or pattern' or 'flow' as well as the 'lyrical theme' and 'structure' of the chorus in [p]laintiff's [c]omposition" together or in combination did not merit copyright protection); *Tisi* v. *Patrick*, 97 F. Supp. 2d 539, 549 (S.D.N.Y. 2000) (concluding that the elements plaintiff alleged were copied, which included the key of A Major, a "I-IV" chord progression, a particular rhythm, an acoustic guitar introduction, and the so-called "adult contemporary" style of plaintiff's song, were not copyrightable). Accordingly, the Court dismisses Plaintiffs' claim for copyright infringement.

### 3. The Court Dismisses Plaintiffs' Derivative Claims for Declaratory Relief and Accounting

In addition to their copyright infringement claim, Plaintiffs asserted claims for declaratory relief (AC ¶¶ 126-128) and an accounting (*id.* ¶¶ 129-130). Plaintiffs acknowledge in their sur-reply that "[i]f the Court were to grant Defendants' summary judgment motion on the issue of protectible expression, [their] claims for declaratory relief and an accounting as derivative claims … would indeed be rendered moot." (Pl. SJ Sur-Reply 2). Having so granted summary judgment in favor of Defendants, the Court dismisses the claims for declaratory relief and an accounting. *See U.S. Bank Nat. Ass'n ex rel. Lima*

*Acquisition LP* v. *PHL Variable Ins. Co.*, No. 12 Civ. 6811 (CM) (JCF), 2014 WL 998358, at *9 (S.D.N.Y. Mar. 14, 2014) (dismissing claim for declaratory relief where it was duplicative in that it sought "no relief ... not implicitly sought in the other causes of action); *Weber* v. *Geffen Recs., Inc.*, 63 F. Supp. 2d 458, 463 (S.D.N.Y. 1999) (dismissing state-law claim as preempted by federal copyright law).

## CONCLUSION

For the foregoing reasons, Defendants' motion to exclude is DENIED IN PART and GRANTED IN PART and Defendants' motion for summary judgment is GRANTED IN FULL. The Clerk of Court is directed to terminate all pending motions, adjourn all remaining dates, and close this case.

SO ORDERED.

Dated:    March 27, 2025
          New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge

34